UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GARY WATSON, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:10-cv-00986** |
| | § | |
| **KONICA MINOLTA BUSINESS** | § | **JURY TRIAL DEMANDED** |
| **SOLUTIONS U.S.A., INC.** | § | |
| | § | |
| **Defendant.** | § | |

---

## PLAINTIFFS' MOTION FOR NOTICE TO POTENTIAL CLASS MEMBERS

---

Filed by:

Galvin B. Kennedy
*Attorney-in-Charge for Plaintiffs*
State Bar No. 00796870
S.D. Tex. No. 20791
KENNEDY HODGES, LLP
3701 Kirby Drive, Suite 400
Houston, Texas 77098
Telephone: 713-523-0001
Facsimile: 713-523-1116
gkennedy@kennedyhodgs.com

Of counsel:

Don J. Foty
State Bar No. 24050022
S.D. Tex. No. 711552
KENNEDY HODGES, LLP
3701 Kirby Drive, Suite 400
Houston, Texas 77098
Telephone: 713-523-0001
Facsimile: 713-523-1116
dfoty@kennedyhodges.com

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................iv

TABLE OF EXHIBITS .......................................................................................................vi

I.      Issue to be Ruled upon by the Court and Standard of Review...........................................1

II.     Summary of FLSA Violation: Konica does not pay its technicians for (A) time spent on
        web based training courses and (B) time spent traveling on weekends to Konica's training
        campuses around the country and time spent at hotels doing assigned homework at such
        seminars. ....................................................................................................................1

     A.   Konica does not pay technicians for web based training time. ............................................1

     B.   Konica does not compensate technicians for travel time to its national training campuses
          or for the time they spend in the evening at hotels completing assigned homework..........2

III.    The California class action lawsuit against Konica provides context for this Motion
        because it shows other technicians are similarly situated and have a propensity to
        participate in a collective action. ...............................................................................3

IV.     The analytical framework for using class notice.................................................................5

     A.   Conditional certification is the preferred methodology.....................................................5

     B.   The Standard for Notice is a "Lenient" One. ...................................................................6

     C.   Key issue is whether employees are similarly situated. .....................................................7

     D.   Courts do not engage in a merit based analysis during the notice stage...........................9

     E.   Defendant has the right to move to decertify later. .......................................................10

V.      The court should authorize notice in this case because Plaintiffs clearly meet the lenient
        similarly situated standard. ......................................................................................10

     A.   There are thousands of aggrieved individuals who are similarly situated to Plaintiffs
          because Konica's web based training program applies to all field technicians. ...............10

     B.   Thousands of aggrieved individuals exist with respect to the weekend travel time to
          Konica's instructor-lead training seminars and time spent completing mandatory
          homework after normal business hours during such seminars. ......................................15

     C.   There are other similarly situated employees who desire to opt in, as demonstrated by the
          record and the declarations submitted by Plaintiffs. ....................................................18

     D.   The quantum of evidence presented here substantially exceeds the evidence found
          sufficient to warrant pre-discovery notice by courts in the Southern District of Texas and
          other courts...............................................................................................................19

VI.     Notice should be expedited due to the running of the statute of limitations....................20

VII.   The proposed notice is fair and adequate, and should be sent via regular mail and via email. ...................................................................................................................21

VIII.  The proposed limited discovery is essential to ensure timely notice. .............................22

IX.    Conclusion ...............................................................................................................23

<u>TABLE OF AUTHORITIES</u>

## CASES

*Adkins v. Labor Realty, Inc.*, 185 F. Supp. 2d 628 (S.D. W.Va. 2001) .....................................15

*Aguayo v. Oldenkamp Trucking*, No. CV F 04-6279 ASI LJO, 2005 WL 2436477 (E.D. Cal. Oct 3, 2005)...................................................................................................................................19

*Alba v. Madden Bolt Corporation*, Civil Action No. H-02-1503, 2002 WL 32639827 (S.D. Tex. June 5, 2002)....................................................................................................................19, 22

*Albanil v. Coast 2 Coast, Inc.*, No. Civ. A. H-08-486, 2008 WL 4937565 (S.D.Tex. Nov.17, 2008)........................................................................................................................................8

*Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442-45 (N.D. Ill. 1982)......................................19

*Ballaris v. Wacker Silttronic Corp.*, No. 00-1627-KI, 2001 WL 1335809 (D. Or. 2001)...........19

*Beall v. Tyler Technologies, Inc.*, No. Civ. A. 2-08-CV-422 (TJW), 2009 WL 3064689 (E.D.Tex. 2009)....................................................................................................................................21, 22

*Blake v. Colonial Savings, F.A.* No. Civ. A. H-04-0944, 2004 WL 1925535 (S.D.Tex., Aug. 16, 2004).........................................................................................................................................9

*Brooks v. Bellsouth Telecomms.*, 164 F.R.D. 561 (N.D. Ala. 1995) ............................................9

*Brown v. Money Tree Mortg. Inc.*, 222 F.R.D. 264 (D. Kan. 2004)............................................19

*Camper v. Home Quality Mgmt, Inc.*, 200 F.R.D. 516 (D. Md. 2000) ........................................19

*Cantu v. Vitol, Inc.*, No. Civ. A. H-09-0576, 2009 WL 5195918 (S.D.Tex. December 21, 2009).6

*Cf. Baum v. Shoney's Inc.*, 1998 U.S. Dist. LEXIS 21484 Wage & Hour Cases 2d (BNA) 127 (M.D. Fla. 1998) .....................................................................................................................20

*Clarke v. Convergys Customer Management Group, Inc.*, 370 F.Supp.2d 601 (S.D.Tex. 2005)..6, 11

*Davis v. Westgate Planet Hollywood Las Vegas, LLC.*, No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. 2009)........................................................................................................21, 22

*De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660 (E.D. Pa. 2001)......................................19

*Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528 (S.D.Tex.2008)..................................................11

*Foraker v. Highpoint Southwest Services, L.P.*, No. Civ. A. H-06-1856, 2006 WL 2585047 (S.D.Tex. Sept 7, 2006)...............................................................................................................6

*Gardner v. Associates Commercial Corp. & Assocs. Coprs. Of N. Am.*, H-00-3889, Dkt. 12 (S.D.Tex. Dec.20, 2000)........................................................................................................9, 19

*Garner v. G.D. Searle*, 802 F. Supp. 418 (M.D. Ala. 1991) ..................................................6, 22

*Gordon v. Kaleida Health*, No. 08-CV-378S, 2008 WL 5114217 (W.D.N.Y. 2008)...................15

*Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996), *cert. denied*, 117 S.Ct. 435 (1996)..7, 8, 9, 21

*Guzman v. Varco Intern., Inc.*, No. Civ. A. H-01-4000, 2002 WL 32639237 (S.D.Tex. May 30, 2002).........................................................................................................................................6

*Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D.Ala. 1999)............................................8, 9

*Hinterberger v. Catholic Health*, No. 08-CV-380S, 2008 WL 5114258 (W.D.N.Y. 2008).........15

*Hipp. v. Liberty Nat'l Life Ins. Co.*, 252 F. 3d 1208 (11th Cir. 2001) .........................................5

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482 (1989). ............... 10, 12, 21, 22

*Johnson v. TGF Precision Haircutters, Inc.*, 319 F.Supp.2d (S.D.Tex. 2004) .........................6, 7

*Kerce v. West Telemarketing Corp.*, 575 F.Supp. 2d 1354 (S.D. Ga 2008)................................15

*King v. GE Co.*, 960 F.2d 617 (7th Cir. 1992)..............................................................................5

*Krueger v. New York Tel. Co.*, Nos. 93 CIV. 0178, 1993 WL 276058 (S.D.N.Y. July 21, 1993)..9

*Marchan v. Taqmex, Inc.*, Civil Action No. H-02-4167 (S.D. Tex. December 17, 2002)............19

*Maynor v. Dow Chemical Co.*, 671 F. Supp. 2d 902 (S.D. Tex 2009) ......................................15

*Maynor v. Dow Chemical Co.*, No. Civ. A. G-07-0504, 2008WL 2220394 (S.D.Tex. May 28, 2008)............................................................................................................. 5, 6, 7, 8, 15

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995). ............................ 1, 5, 6, 7, 8, 9, 10

*Ortiz v. Rain King, Inc.*, Civil Action No. H-02-4012, 2003 WL 23741409 (S.D. Tex. March 10, 2003)......................................................................................................................19, 22

*Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714 (S.D.Tex. Nov.19, 2007)...................................................................................................................................8

*Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623 (D. Colo. 2002).................................................19

*Reich v. Davis*, 50 F.3d 962 (11th Cir. 1995)..........................................................................21

*Schwartz v. MCI Telecomms. Corp.*, Civil Action No. H-98-1574 (S.D. Tex. February 19, 1999) ............................................................................................................................................19

*Schwed v. GE*, 159 F.R.D. 373 (N.D.N.Y. 1995) ......................................................................10

*Shaffner v. Cash Register Sales & Service of Houston, Inc.*, No. Civ. A. H-05-2064, 2006 WL 1007542 (S.D.Tex. April 17, 2006) .......................................................................................6

*Shain v. Armour & Co.*, 40 F. Supp. 488 (W.D. Ky. 1941). ......................................................7

*Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008 (S.D.Tex. Jan.24, 2007)......8

*Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392 (D.N.J. Jan. 5, 1988). ....................6, 9, 10

*Theissen v. GE Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001)..................................................5

*Tolentino v. C&J Spec-Rent Services, Inc.*, No. Civ. A. C-09-326, 2010 WL 2196261 (S.D.Tex. May 26, 2010) .............................................................................................................................8

*Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941 (M.D. Fla. 1994). ...........................................7

*Vargas v. The Richardson Konica Co.*, 2010 WL 730115 (S.D. Tex. Feb. 22, 2010) .............6, 11

*Villatoro v. Kim Son Restaurant*, 286 F. Supp. 2d 807 (S.D. Tex. 2003). ...........................5, 19

*Williams v. Sprint/United Mgmt Co.*, 222 F.R.D. 483 (D. Kan. 2004)......................................19

*Yaklin v. W-H Energy Servs., Inc.*, No. Civ. A. C-07-422, 2008 WL 1989795 (S.D.Tex. May 2, 2008).................................................................................................................................12

*Zhao v. Benihana, Inc.*, No. 01 Civ. 1297(KMW), 2001 WL 845000 (S.D.N.Y. May 7, 2001)..19

## STATUTES

29 U.S.C § 216(b) ..................................................................................................................4, 7

29 U.S.C. § 215(a)(3)................................................................................................................21

29 U.S.C. § 256(a) ...................................................................................................................20

FED. R. CIV. P. 20(a).................................................................................................................8

FED. R. CIV. P. 23 ...................................................................................................................5, 8

## OTHER AUTHORITIES

W-H Opin. Ltr. 1970 WL 26443 (Sept. 9, 1070).......................................................................16

W-H Opin. Ltr. FLSA 2009-15, 2009 WL 649017 (Jan. 15, 2009) .................................2, 3, 16

## REGULATIONS

29 C.F.R. § 790, 21(b)(2)..........................................................................................................20

29 C.F.R. §§ 785.27 - 785.32 ................................................................................................2, 3, 16

29 C.F.R. §§ 785.39 ...............................................................................................................2, 15

## TABLE OF EXHIBITS

**Tab No.**        **Exhibit Name**

**Exhibit 1.**     Konica's new policy effective November 1, 2009 regarding payment for travel time and web based training.

**Exhibit 2.**     Plaintiff's Second Amended Complaint from prior class action suit against Konica in California; *Hanson and Krenek, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, Cause Number: 07CC01320 in the Superior Court of California, Orange County.

**Exhibit 3.**     Declaration of John Glass, former Konica technician.

**Exhibit 4.**     John Glass Achievement Report.

**Exhibit 5.**     Declaration of Gary Watson, former Konica technician.

**Exhibit 6.**     Declaration of Laura Garza, former Konica technician.

**Exhibit 7.**     Declaration of Mark Mingo, former manager in training at Konica.

**Exhibit 8.**     Declaration of Grady Glass, current Konica technician.

**Exhibit 9.**     Grady Glass Achievement Report.

**Exhibit 10.**    Declaration of Nathan Kabue, former Konica technician.

**Exhibit 11.**    Deposition transcript of Jonathan P. Krenek from California lawsuit.

**Exhibit 12.**    Konica Branch Office Locations

**Exhibit 13.**    Technical Service Awards for 2008.

**Exhibit 14.**    Konica web slides regarding number of courses completed and students trained.

**Exhibit 15.**    Konica "FOCUS" Newsletters.

**Exhibit 16.**    Konica Technical Education Summary

**Exhibit 17.**    Konica "Outward" Technical Certification summary

**Exhibit 18.**    Declaration of David Idumah, former Konica technician.

**Exhibit 19.**    Proposed Notice to Class Members; and

**Exhibit 20.**    Proposed Notice of Consent ("Opt In Form")

**Exhibit 21.**    Authority relied up on cited in federal reporters:

    A.  *Aguayo v. Oldenkamp Trucking*, No. CV F 04-6279 ASI LJO, 2005 WL 2436477 (E.D. Cal. Oct 3, 2005).

    B.  *Alba v. Madden Bolt Corporation*, Civil Action No. H-02-1503, 2002 WL 32639827 (S.D. Tex. June 5, 2002).

    C.  *Albanil v. Coast 2 Coast, Inc.*, No. Civ. A. H-08-486, 2008 WL 4937565, at *3 (S.D.Tex. Nov.17, 2008).

    D.  *Ballaris v. Wacker Silttronic Corp.*, No. 00-1627-KI, 2001 WL 1335809 at *3-*5 (D. Or. 2001).

    E.  *Beall v. Tyler Technologies, Inc.*, No. Civ. A. 2-08-CV-422 (TJW), 2009 WL 3064689 (E.D.Tex. 2009)

    F.  *Blake v. Colonial Savings, F.A.* No. Civ. A. H-04-0944, 2004 WL 1925535 (S.D.Tex., Aug. 16, 2004)

    G.  *Cantu v. Vitol, Inc.*, No. Civ. A. H-09-0576, 2009 WL 5195918 (S.D.Tex. December 21, 2009)

    H.  *Davis v. Westgate Planet Hollywood Las Vegas, LLC.*, No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. 2009)

I.   *Foraker v. Highpoint Southwest Services, L.P.*, No. Civ. A. H-06-1856, 2006 WL 2585047 (S.D.Tex. Sept 7, 2006)

J.   *Gardner v. Associates Commercial Corp. & Assocs. Coprs. Of N. Am.*, H-00-3889, Dkt. 12 (S.D.Tex. Dec.20, 2000)

K.   *Gordon v. Kaleida Health,* No. 08-CV-378S, 2008 WL 5114217 (W.D.N.Y. 2008)

L.   *Guzman v. Varco Intern., Inc.*, No. Civ. A. H-01-4000, 2002 WL 32639237 (S.D.Tex. May 30, 2002)

M.   *Hinterberger v. Catholic Health,* No. 08-CV-380S, 2008 WL 5114258 (W.D.N.Y. 2008)

N.   *Marchan v. Taqmex, Inc.*, Civil Action No. H-02-4167 (S.D. Tex. December 17, 2002)

O.   *Maynor v. Dow Chemical Co.*, No. Civ. A. G-07-0504, 2008WL 2220394 (S.D.Tex. May 28, 2008).

P.   *Ortiz v. Rain King, Inc.,* Civil Action No. H-02-4012, 2003 WL 23741409 (S.D. Tex. March 10, 2003)

Q.   *Prater v. Commerce Equities Mgmt. Co.,* No. H-07-2349, 2007 WL 4146714 (S.D.Tex. Nov.19, 2007)

R.   *Shaffner v. Cash Register Sales & Service of Houston, Inc.*, No. Civ. A. H-05-2064, 2006 WL 1007542 (S.D.Tex. April 17, 2006)

S.   *Simmons v. T-Mobile USA, Inc.,* No. H-06-1820, 2007 WL 210008 (S.D.Tex. Jan.24, 2007)

T.   *Tolentino v. C&J Spec-Rent Services, Inc.*, No. Civ. A. C-09-326, 2010 WL 2196261 (S.D.Tex. May 26, 2010)

U.   *Vargas v. The Richardson Konica Co.*, 2010 WL 730115 (S.D. Tex. Feb. 22, 2010)

V.   *Yaklin v. W-H Energy Servs., Inc.*, No. Civ. A. C-07-422, 2008 WL 1989795 (S.D.Tex. May 2, 2008)

W.   *Zhao v. Benihana, Inc.*, No. 01 Civ. 1297(KMW), 2001 WL 845000 (S.D.N.Y. May 7, 2001)

X.   W-H Opin. Ltr. 1970 WL 26443 (Sept. 9, 1970)

Y.   W-H Opin. Ltr. FLSA 2009-15, 2009 WL 649017 (Jan. 15, 2009)

**I.      Issue to be Ruled upon by the Court and Standard of Review.**

The only issue before the court is whether Plaintiffs are entitled to send notice to other similarly situated technicians who were denied compensation.  Plaintiffs do not seek a decision on the merits. At this time, Plaintiffs do not seek notice to employees who are similarly situated to the "managers in training," which is identified as a subclass in Plaintiffs' current pleading. The applicable standard of appellate review for this court's decision is abuse of discretion. *Mooney v. Aramco Servs. Co.*, 54 F.3rd 1207, 1213-16 (5th Cir. 1995).

**II.     Summary of FLSA Violation: Konica does not pay its technicians for (A) time spent on web based training courses and (B) time spent traveling on weekends to Konica's training campuses around the country and time spent at hotels doing assigned homework at such seminars.**

Konica Minolta Business Solutions U.S.A., Inc., ("Konica") sells sophisticated copy, scanner and facsimile machines to large and small companies throughout the United States. The machines need constant service and maintenance. Konica employs thousands of technical support workers across the country, such as Plaintiffs, to repair and maintain its machines. Konica pays these workers on an hourly basis and has classified them as non-exempt from overtime laws.   They regularly work more than 40 hours per week.  The payroll practices below apply to Plaintiffs and class members.

**A.  Konica does not pay technicians for web based training time.**

Konica requires its technicians to take training courses throughout the year using Konica's web based training classroom, which the company refers to as "The Learning Place." The Learning Place makes available hundreds of courses directly related to the technicians' jobs. In 2008 alone, "There have been over 97,000 completions for our web based courses."[1]

---

[1] *See* Ex. 14, web slides showing courses completed.

Technicians perform their field responsibilities (servicing copy machines at customer sites) during normal working hours, 8:00 a.m. to 5:00 p.m. Consequently, technicians must take the web based training courses once they arrive home in the evenings or on weekends.

However, Konica does not pay its technicians for the time spent in these required courses. Instead, Konica requires its technicians to take these web based courses "off-the-clock" on their personal time from their homes.  Konica's practice of not treating training time as compensable work time violates the Fair Labor Standards Act.[2]

This practice is widespread. Konica admits in its Answer that more than 100 Konica workers from Texas and more than 100 works from outside of Texas have taken advantage of training opportunities offered by KMBS on an intranet site."[3] Konica also admits "at least one worker from 10 different states has taken training courses through a KMBS intranet based site."[4]

### B. Konica does not compensate technicians for travel time to its national training campuses or for the time they spend in the evening at hotels completing assigned homework.

Konica has multiple campuses around the country where it routinely sends its technicians to attend mandatory, job related courses that include three to ten days of classroom, instructor-lead classes. To arrive at the campuses, Konica typically arranges for its workers to fly on weekends during normal business hours so they may attend class starting on Monday mornings at 8:00 a.m.  However, Konica violates the FLSA by not compensating the technicians for the time they spend traveling on the weekends.[5]

---

[2] *See* 29 C.F.R. §§ 785.27 - 785.32; *see also* W-H Opin. Ltr. FLSA 2009-15, 2009 WL 649017 (Jan. 15, 2009).
[3] *See* Doc. # 18, Konica's Answer, ¶¶ 28 and 29).
[4] *See* Doc. # 18, Konica's Answer, ¶¶ 40 and 41).
[5] *See* 29 C.F.R. §§ 785.39 ("Travel that keeps an employee away from home overnight is travel away from home. . . . Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days.")

At these training seminars, technicians attended classroom training all day during normal business hours.  Instructors assign homework and materials to review regarding the day's lessons and the following day's subjects.  Technicians complete their homework in the evenings after the classroom instruction.  While Konica does compensate the technicians for time spent in the classroom, the company does not compensate them for the two to four hours of time spent each night afterwards doing homework at their hotels.  This policy and practice violates the FLSA.[6]

This practice is widespread.  Konica boasts in a tutorial slide from its website that, with respect to instructor-led training, "Our highly qualified instructors have successfully certified over 5,000 students in 2008."[7]

### III.   The California class action lawsuit against Konica provides context for this Motion because it shows other technicians are similarly situated and have a propensity to participate in a collective action.

On July 12, 2007, two Konica technicians filed a class action lawsuit in California against Konica for, among other things, failing to pay its technicians for training time, travel time and other time spent working "off the clock"[8]  Notably, that class action lawsuit was **specifically limited to California residents,** probably due to the unique state law claims that were made by the Plaintiffs.  The class included hundreds of technicians.  In the wake of that case and its $6 million settlement, Konica issued a new written policy regarding compensation for travel time and time spent taking web based courses.  In that new policy, Konica acknowledges both that its technicians take web based training outside of their normal work hours and that it is required to pay its technicians for such time.[9]  It further acknowledges both that its technicians travel on

---

[6] *See* 29 C.F.R. §§ 785.27 - 785.32; *see also* W-H Opin. Ltr. FLSA 2009-15, 2009 WL 649017 (Jan. 15, 2009) ("When completion of homework is a requirement of a compensable training class, however, time spent completing assignments for such training is compensable.")
[7] *See* Ex. 14, Slide from Konica's website.
[8] *See* Ex. 2, Plaintiff's Second Amended Complaint from Konica class action in California, ¶ 24.
[9] *See* Ex.1, Konica's New Policy on Travel and Training time, p. 4.

weekends during normal business hours to attend seminars and that such time is compensable under the FLSA.[10]  That policy became effective on November 1, 2009.

As a result of that California lawsuit, the Konica technicians in *California* received some compensation for performing many of the job related activities described above in this lawsuit. **However, Konica never compensated its technicians outside of California for the same time worked during the previous three years.**  This lawsuit seeks redress on behalf of the thousands of other technicians outside of California who suffered similar wage and hour violations.

The California class action is important to this Motion because it demonstrates Konica's wage and hour violations go beyond Houston and beyond Texas, spanning the entire country, and it constitutes evidence that other technicians desire to join an action to recover their wages owed.[11]  The California suit was also the ostensible impetus behind Konica's company-wide, *new* policy that effectively acknowledges many of its prior FLSA violations. Astonishingly, it also illustrates Konica's continuation of other practices that violate the FLSA.

Given the clarity of the overtime violation, the number of employees affected, Konica's implicit acknowledgement of its violation, the demonstrable interest in pursuing the compensation owed in the microcosm California suit, Plaintiffs respectfully ask this Court to conditionally certify this case as a collective action under 29 U.S.C § 216(b) and to authorize notice to class members.

---

[10] *See Id.*, pp. 2-4.
[11] Plaintiffs do not contend the California technicians may join this collective action, nor do they seek to certify a class that includes them.  However, the allegations in the pleadings and the deposition testimony from that suit are evidence that technicians are similarly situated across the company with respect to the wage and hour violations alleged here. Although they may not join this suit, the fact that technicians even filed such a suit, and masses of others elected to remain part of that suit, informs the Court that a national, collective action to resolve the remaining technicians' overtime grievances is warranted and appropriate.  Indeed, the California suit serves as a microcosm of Konica's national wage violations and the overwhelming interest by the technicians to recover their wages via a class-based legal structure.

IV.     **The analytical framework for using class notice.**

A.     **Conditional certification is the preferred methodology.**

As this Court is aware, some courts have previously suggested the use of FED. R. CIV. P. 23 in making the determination of whether to certify a proposed collective action, rather than making use of the two-stage class certification procedure.   The Fifth Circuit suggested determination of "methodology" would be reviewed *de novo*, but the Fifth Circuit expressly declined to decide which method was appropriate for use in *collective* actions.   *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995).  However, "most courts use the 'two-step *ad hoc* approach' as the preferred method for the similarly-situated analysis rather than the Rule 23 requirements. *Maynor v. Dow Chemical Co.*, No. Civ. A. G-07-0504, 2008WL 2220394, at *4 (S.D.Tex. May 28, 2008).

Many judges in this district—including Judges Harmon, Atlas, Gilmore, Hughes, Lake, Rainey, Rosenthal, Miller, and Werlein—have primarily utilized the two-stage procedure. Moreover, the practice employed by the Southern District of Texas has been expressly adopted by every federal appellate court that addressed the issue—both prior to and following *Mooney*. *See, e.g., Theissen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Hipp. v. Liberty Nat'l Life Ins. Co.*, 252 F. 3d 1208, 1219 (11th Cir. 2001); *King v. GE Co.*, 960 F.2d 617, 621 (7th Cir. 1992); *see also Villatoro v. Kim Son Restaurant*, 286 F. Supp. 2d 807, 809-10 (S.D. Tex. 2003). (discussing appellate decisions regarding the proper approach to creating a collective action). Therefore, Plaintiffs will address only the methodology preferred by the Southern District of Texas in this motion.

**B.     The Standard for Notice is a "Lenient" One.**

Because the first step takes place prior to the completion of discovery, the standard for notice "is a lenient one." *Mooney*, 54 F.3d at 1214. Courts in the Southern District of Texas apply this lenient standard in evaluating motions for conditional certification collective actions. *See, e.g., Vargas v. The Richardson Trident Co.*, 2010 WL 730115, at *7 (S.D. Tex. Feb. 22, 2010)(Harmon, J.)(noting the certification of collective actions is subject to a two step process with a lenient standard that typically results in conditional certification of a representative class)*; Cantu v. Vitol, Inc.*, No. Civ. A. H-09-0576, 2009 WL 5195918 (S.D.Tex. December 21, 2009) (Rosenthal) (same)*; Maynor v. Dow Chemical Co.*, No. Civ. A. G-07-0504, 2008 WL 2220394, at 5 (S.D. Tex. May 28, 2008) (Rosenthal)(*same); Foraker v. Highpoint Southwest Services, L.P.*, No. Civ. A. H-06-1856, 2006 WL 2585047, at *3 (S.D.Tex. Sept 7, 2006) (Atlas, J.) (same); *Shaffner v. Cash Register Sales & Service of Houston, Inc.*, No. Civ. A. H-05-2064, 2006 WL 1007542, at *1 (S.D.Tex. April 17, 2006) (Ellison, J.)(same);   *Clarke v. Convergys Customer Management Group, Inc.*, 370 F.Supp.2d 601, 604 (S.D.Tex. 2005)(Harmon, J.)(same); *Johnson v. TGF Precision Haircutters, Inc.*, 319 F.Supp.2d 753 (S.D.Tex. 2004) (Werlein, J.) (same); *Guzman v. Varco Intern., Inc.*, No. Civ. A. H-01-4000, 2002 WL 32639237, at *3 (S.D.Tex. May 30, 2002) (Gilmore, J.)(same).

To impose a strict standard of proof at the notice stage would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA. *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. Jan. 5, 1988). ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.'"). Only at the second stage, at the close of

discovery, does the Court make a "factual determination" as to whether the class members are similarly situated. *Mooney*, 54 F.3d at 1214. As the court noted in *Dow Chemical*:

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class' that provides potential class members with notice and the opportunity to opt-in.

*Dow Chemical Co.*, No. Civ. A. G-07-0504, 2008 WL 2220394, at *5 (*citing Mooney*, at 1214 n. 8.); *see also TGF Precision*, 319 F. Supp. 2d 753, 755 (S.D. Tex. 2004) (The lenient standard applicable at the first stage "usually results in 'conditional certification' of a representative class, to whom notice is sent and who receive an opportunity to 'opt in.')

### C.    Key issue is whether employees are similarly situated.

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *Mooney*, 54 F.3d at 1216. "The evident purpose of the Act [FLSA] is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other." *Shain v. Armour & Co.*, 40 F. Supp. 488, 490 (W.D. Ky. 1941).

For an opt-in class to be created under 29 U.S.C. § 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Mooney*, 54 F.3d at 1213-14; *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied*, 117 S.Ct. 435 (1996). Plaintiffs' claims and positions need not be identical to the potential opt-ins', they need only be similar.  *Grayson*, 79 F.3d at 1096; *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994).  Plaintiffs need to only demonstrate "a

reasonable basis" for the allegation that a class of similarly situated persons exists. *Grayson*, 79

F.3d at 1097.  Two months ago, in a case granting class notice, a Texas court held:

> "However, the court need not find uniformity in each and every aspect of employment to determine [that] a class of employees is similarly situated. The remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively."

*Tolentino v. C&J Spec-Rent Services, Inc.*, No. Civ. A. C-09-326, 2010 WL 2196261 (S.D.Tex.

May 26, 2010) *citing Albanil v. Coast 2 Coast, Inc.*, No. Civ. A. H-08-486, 2008 WL 4937565,

at *3 (S.D.Tex. Nov.17, 2008) (internal quotation marks and citations omitted).

 "At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable

basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals

are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted;

and (3) those individuals want to opt in to the lawsuit."[12]  However, similarity in job duties is

less important where, as here, there is not a dispute over the putative class members' non-exempt

status.  *See, e.g., Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 364 (M.D.Ala. 1999) ("[T]he

present case does not involve a question of the applicability of the professional exemption to the

overtime provision of the FLSA.   The job requirements of the Plaintiffs' and the putative

Plaintiff class members' employment positions, therefore, are not in issue.").

The standard for collective action notice is thus a "***lenient one***." *Mooney*, 54 F.3d at

1213-14 (emphasis added).  "It is considerably 'less stringent' than the proof required pursuant

to FED. R. CIV. P. 20(a) for a joinder or FED. F. CIV. P. 23 for class certification." *Grayson*, 79

F.3d at 1096. As this Court noted in *Blake v. Colonial Savings, F.A.* No. Civ. A. H-04-0944,

---

[12] *Maynor v. Dow Chemical*, No. Civ. A. G-07-0504, 2008 WL 2220394 (S.D.Tex. May 28, 2008)(Atlas, J.) *(citing Prater v. Commerce Equities Mgmt. Co.,* No. H-07-2349, 2007 WL 4146714, at *4 (S.D.Tex. Nov.19, 2007); *Simmons v. T-Mobile USA, Inc.,* No. H-06-1820, 2007 WL 210008, at *5 (S.D.Tex. Jan.24, 2007)

2004 WL 1925535, at *2 (S.D. Tex., Aug. 16, 2004) (J. Harmon):

> At the notice stage, "the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members." Because the court has minimal evidence, "this determination is usually made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.

*See also, Mooney,* 54 F.3d at 1213-14; *Gardner v. Associates Commercial Corp. & Assocs. Coprs. Of N. Am.,* H-00-3889, Dkt. 12 *5 (S.D.Tex. Dec. 20, 2000) (J. Harmon); *Brooks v. Bellsouth Telecomms.,* 164 F.R.D. 561, 568 (N.D. Ala. 1995); *Sperling v. Hoffmann-Laroche, Inc.,* 118 F.R.D. 392, 406-07 (D.N.J. 1988), *aff'd* 493 U.S. 165, 110 S.Ct. 482 (1989). A defendant's rebuttal evidence does not bar section 216(b) notice; the Plaintiffs' substantial allegations need only successfully engage the employer's Declarations to the contrary. *Grayson,* 79 F.3d at 1099 n.17.

### D.    Courts do not engage in a merit based analysis during the notice stage.

Some employers attempt to defeat class notice by arguing the merits of the underlying FLSA violation instead of focusing on the common policy or plan that applies to the employees. Such attacks are flawed. "[E]ven if Plaintiffs' claims turn out to be meritless or, in fact all Plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case." *See Krueger v. New York Tel. Co.,* Nos. 93 CIV. 0178, 1993 WL 276058 at *2 (S.D.N.Y. July 21, 1993); *see also Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 365 (M.D. Ala. 1999) ("subsequent discovery may reinforce or undermine" the preliminary finding of similarly situated).

**E.      Defendant has the right to move to decertify later.**

Once the Court makes the preliminary determination that the potential plaintiffs are similarly situated, the case proceeds as a collective action throughout discovery. *Mooney*, 54 F.3d at 1214 n. 7. Discovery is relevant thereafter both as to the merits of the case and for the second step in the collective action procedure where the court evaluates conflicting evidence developed in discovery to test the validity of the preliminary decision made at the notice stage. *See Schwed v. GE,* 159 F.R.D. 373, 375 (N.D.N.Y. 1995) ("[E]ven where later discovery proves the putative class members to be dissimilarly situated, notice…prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA].");

Indeed, allowing early notice and full participation by the opt-ins "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling*, 118 F.R.D. at 406. Once the notice and opt-in period is complete, the Court will have the benefit of knowing the actual makeup of the collective action.  Thus, early notice will help the court to manage the case because it can "ascertain the contours of the action at the outset." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172, 110 S.Ct. 482, 487 (1989).

**V.      The court should authorize notice in this case because Plaintiffs clearly meet the lenient similarly situated standard.**

**A.      There are thousands of aggrieved individuals who are similarly situated to Plaintiffs because Konica's web based training program applies to *all* field technicians.**

The training program for field technicians such as plaintiffs and class members is not only national in nature, but international, as stated by Konica's own description of its plan:

> "Outward is Konica Minolta's Technical Certificate Program.  This worldwide tech program is targeted at field technicians and technical support staff of Konica Minolta, our subsidiaries, and channel partners which include distributors, dealers and authorized service providers. . . . The term "Outward" reflects our worldwide initiative to develop training materials that are "outside of the box."

*See* Ex. 17, Konica's "Outward" Technical Certification Summary, p. 1.

Konica's program is administered from the web precisely because all technicians are required to take the courses regardless of whether they work only in Chicago, Illinois, are supervised by a manger in Dallas, Texas or whether they are certified on a particular family of machines in Ft. Myers, Florida. *See* Exs. 3, 5, 6, 7, 8, 10, and 18, at ¶ 5 of each Dec. for John Glass, Gary Watson, Laura Garza, Mark Mingo, Grady Glass, Nathan Kabue and David Idumah, respectively; *see also* Ex. 11, Depo. of Jonathan Krenek, pp. 305-308. This uniformity of Konica's policy across geographical regions, branch managers, and product specialization makes this case particularly suitable for collective treatment. Indeed, Konica informs the Court in its Answer to Plaintiffs' First Amended Original Complaint that "at least one worker from 10 different states has taken training courses through a KMBS intranet based site." (*See* Doc. # 18, Konica's Answer, ¶ 41). It further admits that "more than 100 KMBS workers from outside of Texas have taken advantage of training opportunities offered by KMBS on an intranet site." (*See* Doc. # 18, Konica's Answer, ¶ 29).

Konica's admissions that the practice extends to employees in ten or more states underscores the "factual nexus binding the named plaintiffs and the potential members as victims of the same policy or practices."[13] "Geographic commonality is not necessary to satisfy the FLSA collective action's 'similarly situated' requirement."[14] However, when such uniformity does exist, the Court should favor class notice.

---

[13] *Clarke v. Convergys Customer Management Group, Inc.*, 370 F.Supp.2d 601, 605 (S.D.Tex. 2005).
[14] *Vargas v. Richardson Trident Co.*, 2010 WL 730155, at *6 (S.D.Tex. 2010). *See also Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 539-40 (S.D.Tex.2008) (finding Plaintiffs were "similarly situated" because they were subject to the same FLSA violation, even though they were store managers working in various locations under supervision of different individuals).

The web based training continues throughout the technicians' tenure with the company because Konica constantly releases new products and makes modifications to its older ones. Hence the overtime violation stretches back more than three years since the filing of this action. The Court need look no further than Konica's quarterly newsletter to its technicians called "Focus," which discusses current topics regarding training:

> "Welcome to the 7th issue of focus! Since the last issue, there have been several new product launches including C360, 1200/1051, and C452!  Of course, new product launches means new training requirements which have been highlighted in this issue."

*See* Ex. 15, "Focus" Newsletter, Issue # 7, October 2009, p. 1.  Konica also has a company-wide policy of requiring all of its branch managers to proactively register technicians for web-based courses:

> Training is important for people to be able to do their jobs, and to perform well under moments of stress, such as when troubleshooting difficult problems in the field. In Technical Education, we're stepping up our efforts to increase hands-on activities, troubleshooting, and practice exercises in all classes, so techs will have more field-like situations to practice.  While our refocused efforts lead to more effective techs, it all starts with your leadership in sending them to class.

*See* Ex. 15, "Focus" Newsletter, Issue # 8, March 2010, p. 4.

The sheer volume of courses taken online (97,000 web based courses completed in 2008 alone)[15] also makes this case suitable for certification because of the judicial economies and efficiencies that can be achieved through collective treatment.[16]

---

[15] *See* Ex. 14, Konica web slides.

[16] *See Tolentino v. C & J Spec-Rent Services Inc.*, No. Civ. A. C-09-326, 2010 WL 2196261, at *2 (S.D.Tex. 2010) ("FLSA collective actions 'are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding common issues of law and fact arising from the same alleged ... activity.' *See also Yaklin v. W-H Energy Servs., Inc.*, No. Civ. A. C-07-422, 2008 WL 1989795, at *1 (S.D.Tex. May 2, 2008) (citing *Hoffmann-La Roche Inc.*, 493 U.S. at 170).

Of those 97,000 courses completed in 2008, a small but representative portion of them were taken by the lead plaintiffs in this case. For example, John Glass completed at least eight courses via Konica's web based training program in 2008, as shown by his "Achievement Record." *See* Ex. 4, John Glass Achievement Record.  Konica did not compensate Glass for the time spent taking those courses.  *See* Ex. 3, Dec. of John Glass, ¶ 9. Gary Watson completed approximately 15 to 30 courses during his time at Konica and was not compensated for those hours worked.  *See* Ex. 5, Dec. of Gary Watson, ¶ 5. Laura Garza completed at least 20 courses during the relevant time period and was not compensated for those hours worked.  *See* Ex. 6, Dec. of Laura Garza, ¶ 5. Grady Glass completed more than 20 courses during the relevant time period, as stated in his Achievement Report, and was not compensated for such time.  *See* Exs. 8 and 9, Dec. of Grady Glass ¶ 5, and Grady Glass Achievement Report p. 1-4, respectively. Nathan Kabue completed between 20 and 30 courses during his time with Konica and was not compensated for such time.  *See* Ex. 10, Dec. of Nathan Kabue, ¶ 5 and 9.  These Plaintiffs regularly worked 40 or more hours per week servicing Konica's customers' machines. *See* Exs. 3, 5, 6, 8, 10 and 18, at ¶ 3 of each Dec. of John Glass, Gary Watson, Laura Garza, Grady Glass, Nathan Kabue and David Idumah, respectively.  Therefore, such uncompensated hours worked by Plaintiffs should have been compensated at their overtime rates.

Moreover, John Glass has specific personal knowledge that other workers both in Texas and outside of Texas were subject to the policy.  *See* Ex. 3, Dec. of John Glass, ¶ 5.  Likewise, Laura Garza knows that other technicians were subject to the same policy and practice.  *See* Ex. 6, Dec. of Laura Garza, ¶ 5.  Gary Watson also has specific personal knowledge that other workers both in Texas and outside of Texas were subject to the policy.  *See* Ex. 5, Dec. of Gary

Watson, ¶ 5.  The Petition filed in California likewise demonstrates this practice applies to all technicians.  *See* Ex. 2, Second Amended Petition from California, ¶ 24.

Perhaps the most compelling evidence of both the existence of this illicit practice and its scope is Konica's new company-wide policy attempting to correct its prior violations. *See* Ex. 1, Konica's new policy on travel and training time.  The new policy provides:

## II. JOB REQUIRED WEB BASED TRAINING COURSES

### A. Branch Service Manager's Responsibility

> Branch Service Managers are expected to approve non-exempt employee job required web base training courses.   Employees approved for WBT courses are to be allowed to complete the course **during normal working hours if possible**.  If customer requirements determine that the WBT courses be completed after hours, the employee's training time may qualify for pay if total time for the work day exceeds 8 hours.  Nonexempt employees performing online training at home are responsible for keeping accurate records of all time spent performing online training.  Normal overtime rules apply.

*See* Ex. 1, Konica's new policy on travel and training time, p. 4.   The policy clearly acknowledges (1) the courses are required, (2) they are job related, (3) job demands force technicians to take the courses outside of normal work hours, (4) time spent in the class is compensable, and (5) the practice applies to all Konica technicians.   Despite its knowledge, Konica has not paid its technicians for years and years of time spent taking web based training.

The abundant evidence submitted leaves no doubt that the web-based training program applies to all technicians, regardless of tenure, specialization, geographical region, or branch manager.   The lead plaintiffs are representative of that class of technicians because they took such courses and were not compensated for such time. The evidence adduced, even prior to **any** formal discovery being conducted, meets the "lenient" standard by proving "that there is (1) a reasonable basis for crediting the assertion that aggrieved individuals exist" and (2) those "aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims

and defenses asserted." *Maynor v. Dow Chemical*, G-07-0504, 2008 WL 2220394, at *6 (S.D.

Tex. May 28, 2008)(Atlas, J.).

Moreover, courts routinely allow class notice for unpaid training time in particular. *See*

*Maynor*, 2008 WL 2220394 at *1 (granting class notice for unpaid training time); *see also*,

*Maynor v. Dow Chemical Co.*, 671 F. Supp. 2d 902 (S.D. Tex 2009) (denying decertification of

a class based on argument that inconsistencies in reporting the amount of time each individual

Plaintiff spent doing mandatory training.).[17]

### B. Thousands of aggrieved individuals exist with respect to the weekend travel time to Konica's instructor-lead training seminars and time spent completing mandatory homework after normal business hours during such seminars.

Just as wide-reaching and uniform is Konica's practice of not compensating technicians

when they fly on weekends to attend mandatory training seminars. *See* Exs. 3, 5, 6, 7, 10 and 18,

at ¶ 9 of each Dec. of John Glass, Gary Watson, Laura Garza, Mark Mingo, Nathan Kabue and

David Idumah, respectively. Plaintiffs and class members attended numerous one and two-week

long training seminars that started on Monday mornings. To make sure they arrived on time to

attend class, Konica scheduled them to fly on Sundays. However, Konica did not compensate

them for such travel time, a black and white violation of the FLSA.[18]

The classroom instruction lasted from approximately 8:00 a.m. to 5:00 p.m. Instructors

assigned the students quizzes, reading assignments and other homework that was required to be

---

[17] *See also, e.g., Kerce v. West Telemarketing Corp.*, 575 F.Supp. 2d 1354 (S.D. Ga 2008) (The issue of whether home agents of a telemarketing service were entitled to compensation for training time, could be resolved on classwide basis after discovery had concluded); *Adkins v. Labor Realty, Inc.*, 185 F. Supp. 2d 628 (S.D. W.Va. 2001) (Employee brought class action to recover for unpaid training. Court sent the case to arbitration but allowed class standing); *Gordon v. Kaleida Health*, No. 08-CV-378S, 2008 WL 5114217 (W.D.N.Y. 2008) (Class of employees were granted overtime compensation for their attendance at training sessions held by the employer). *Hinterberger v. Catholic Health*, No. 08-CV-380S, 2008 WL 5114258 (W.D.N.Y. 2008) (Class of hospital employees were given overtime compensation for attending training sessions).

[18] *See id.; see also*, 29 C.F.R. §§ 785.39 ("Travel that keeps an employee away from home overnight is travel away from home ... Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days.")

completed once the technicians returned to their hotels.  The technicians routinely spent between two and four hours doing this post-classroom homework each day of the training seminars.  *See* Exs. 3, 5, 6, 7, 10 and 18, at ¶ 7 of each Dec. of John Glass, Gary Watson, Laura Garza, Mark Mingo, Nathan Kabue, and David Idumah, respectively.   Gary Watson sat next to other technicians from all regions of the country at the seminars and gained personal knowledge that the other technicians from those regions also flew on Sundays without pay and completed their required homework outside of the classroom without pay.  *See* Ex. 5, Dec. of Gary Watson, ¶ 6-9.  Other Plaintiffs have declared the same for the courses they took.  *See* Exs. 3, 6, 7, 10 and 18, at ¶ 6 of each Dec. of John Glass, Laura Garza, Mark Mingo, Nathan Kabue and David Idumah. Indeed, Konica's list of technicians who received gold and silver awards for high exam scores shows they hail from at least 23 different states *for the first quarter of 2008 alone*.[19]

Konica's failure to compensate Plaintiffs and class members for this travel and study time violates the FLSA.  *See* 29 C.F.R. §§ 785.27 through 785.32; *see also* W-H Opin. Ltr. FLSA 2009-15, 2009 WL 649017 (Jan. 15, 2009); W-H Opin. Ltr. 1970 WL 26443 (Sept. 9, 1070).

Konica's website conclusively establishes that in 2008 alone, more than 5,000 certificates were issued through its instructor-lead courses at its many campuses around the country.[20]   On November 2, 2009, Konica issued its new policy regarding the company's intent to *prospectively* comply with the FLSA regarding travel time on the weekends to attend training seminars.[21]  This change in policy acknowledges Konica's company-wide practice prior to its effective date.

---

[19] *See* Ex. 13, Konica Technical Service Awards for First Quarter 2008, p. 2-7.
[20] "Our highly qualified instructors have successfully certified over 5,000 students in 2008." (*See* Ex. 14, Konica Web Slides).
[21] *See* Ex. 1, Konica's new policy on travel and training time.

These two pieces of evidence alone make the FLSA violation obvious and its scope uniform across the country.

Moreover, the lead plaintiffs have demonstrated that they attended such seminars and were not compensated for weekend travel time.[22]  For example, the Achievement Report shows that in 2008 John Glass attended Konica's ten day course for "bizhub C6500/C5500/C500 10-day Classroom."[23]  John Glass also attended a meeting with his branch manager and all Houston-area technicians in late 2009 where his managers informed him that Konica's human resource department had issued a company-wide policy that "there will no longer be any travel done on the weekends without compensation." *See* Ex. 3, Dec. of John Glass, ¶ 13; *see also* Ex. 1, Konica's new policy regarding travel time and web based training.

The illicit nature of this practice and its uniformity across all technicians cannot be in doubt, especially given Konica's attempt to prospectively correct it:

### C.  Travel on Nonworking Days

Travel time on nonworking days is also considered work time if conducted during normal work hours.  If normal work hours are 8:30 a.m. to 5:00 p.m., then travel time between those hours would be paid.

Example:

Non-exempt employee leaves their home at 1:00 p.m. on Sunday and arrives at the training center's hotel at 7:00 p.m.  The four hours between 1:00 p.m. and 5:00 p.m. will qualify as paid time but the two hours of travel between 5:00 p.m. to 7:00 p.m. does not qualify for pay.  However, travel the day before or after a class should be scheduled for arrival by the end of the employee's normal work hours, if possible.

Ex. 1, Konica's new policy regarding travel and web based training time, pp. 4-5.  Notably, this policy on page one state that its effective dates in November 1, 2009 and "Replaces the following policy: None."  *See* Ex. 1, p. 1.   Prior thereto, Konica apparently did not have a

---

[22] *See* Ex. 4, John Glass Achievement Report and Ex. 3, Glass Dec. par.
[23] *See* Ex.3, Dec. of John Glass.

written policy on compensating technicians for the Sunday travel time, however, in practice Konica did not compensate them. *See* Exs. 3, 5, 6, 7, 10, and 18 at ¶ 10 on each Dec. of John Glass, Gary Watson, Laura Garza, Mark Mingo, Nathan Kabue, and David Idumah, respectively.

Clearly Konica reviewed its national payroll practice in light of the California class action and realized this practice was so prevalent as to require corrective action across the entire company. While Konica wrote a new policy and provided some compensation to its California technicians, Konica did not compensate technicians outside of California for years and years of prior violations. Moreover, Konica notably did not change its policy regarding refusing to compensate technicians for hours spent doing homework after class at their hotels. *See Id.*

**C.    There are other similarly situated employees who desire to opt in, as demonstrated by the record and the declarations submitted by Plaintiffs.**

In addition to Gary Watson and Laura Garza, the original Plaintiffs, many additional current and former employees have already expressed their interest in joining this suit by filing an opt-in form with the court, namely Mark Mingo, Habib Memon, John Glass, Grady Glass and Nathan Kabue. *See* Doc #s 5, 15, and 19, consent forms. These employees, in turn, are aware of yet other employees who are similarly situated and who have expressed an interest in joining the suit. *See* Exs. 3, 5, 6, 7, 8, 10, at ¶ 11 of each Dec. of John Glass, Gary Watson, Laura Garza, Mark Mingo, Grady Glass and Nathan Kabue respectively. Combined, the current plaintiffs have identified eight other technicians by name (Tuan Nguyen, Pat Simonds, Roland Koenecke, Billy Mack, Ray Sayler, Mike Palm, Robert Flores, Randy Frazier) who they know were subject to the same policies and practices and are interested in joining this suit. *See id.* The number of employees already appearing as named and opt-in Plaintiffs, and the current state of the record makes it evident that there are other employees who desire to opt-in to this collective action.

### D. The quantum of evidence presented here substantially exceeds the evidence found sufficient to warrant pre-discovery notice by courts in the Southern District of Texas and other courts.

Other courts weighing evidence and allegations have granted class notice with far less evidence than Plaintiffs have presented in this motion. *See, e.g., Ortiz v. Rain King, Inc.*, Civil Action No. H-02-4012, 2003 WL 23741409 (S.D. Tex. March 10, 2003) (J. Lake) (one Declaration and the Complaint sufficient); *Alba v. Madden Bolt Corporation*, Civil Action No. H-02-1503, 2002 WL 32639827 (S.D. Tex. June 5, 2002) (J. Hoyt) (one Declaration sufficient); *Villatoro*, 286 F. Supp.2d at 810-11 (J. Atlas) (one Declaration plus employer documents sufficient); *Gardner*, Civil Action No. H-00-3889 (S.D. Tex. December 20, 2000) (J. Harmon) (detailed allegation sufficient).[24]

By comparison, Plaintiffs here have submitted the following evidence:

1) Seven Declarations from current and former technicians detailing the violations, their uniformity across the company and that other technicians desire to join this suit;

2) Pleadings from another case against Konica alleging many of the same violations in California, which shows the scope of the policies in question;

3) Deposition testimony from a technician who describes the same policies and procedures as identified by Plaintiffs in this case;

---

[24] *See also e.g., Marchan v. Taqmex, Inc.*, Civil Action No. H-02-4167 (S.D. Tex. December 17, 2002) (J. Hughes) (one Declaration sufficient); *Schwartz v. MCI Telecomms. Corp.*, Civil Action No. H-98-1574 (S.D. Tex. February 19, 1999) (J. Werlein) (one Declaration sufficient); *see also, Zhao v. Benihana, Inc.*, No. 01 Civ. 1297(KMW), 2001 WL 845000 (S.D.N.Y. May 7, 2001) (one Declaration based on the employee's "best knowledge" sufficient); *Brown v. Money Tree Mortg. Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004)(two affidavits); *Williams v. Sprint/United Mgmt Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004) (allegations in complaint were "more than sufficient to support provisional certification"); *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 628 (D. Colo. 2002) (allegations in complaint); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) (allegations in complaint sufficient); *Ballaris v. Wacker Silttronic Corp.*, No. 00-1627-KI, 2001 WL 1335809 at *3-*5 (D. Or. 2001) (two affidavits); *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001), *rev'd on other grounds*, 342 F.3d 301 (four affidavits); *Camper v. Home Quality Mgmt, Inc.*, 200 F.R.D. 516, 519-21 (D. Md. 2000) (sworn testimony from two deponents and two declarations); *Aguayo v. Oldenkamp Trucking*, No. CV F 04-6279 ASI LJO, 2005 WL 2436477 (E.D. Cal. Oct 3, 2005)(allegations in complaint and declaration of the plaintiff demonstrate plaintiff and other class members are similarly situated).

4) Konica's admissions in its Answer regarding the number of states where technicians have taken web based training and that hundreds in fact have done so;

5) Konica's November 1, 2009 new company-wide policy acknowledging (1) the courses are required, (2) they are job related, (3) job demands force technicians to take the courses outside of normal work hours, (4) time spent in the class is compensable, and (5) the practice applies to all Konica technicians;

6) Konica's website identifying 5,000 training certificates issued and over 97,000 web based training courses taken in 2008 alone;

7) Konica's list of award recipients for technicians who took the courses from at least 23 states; and

8) Konica's Newsletters to its technicians describing the mandatory nature of the courses.

Plaintiffs have shown that Konica's company-wide policy compelled employees to work overtime and that Konica refused to compensate these overtime hours worked at the required rate of one and one-half times their regular rate. The evidence demonstrates that these employees are similarly situated and subject to a uniform payroll policy.  Accordingly, Plaintiffs' evidence more than justifies conditional certification of a collective action and issuance of notice to Konica's technicians during the last three years. *Cf. Baum v. Shoney's Inc.*, 1998 U.S. Dist. LEXIS 21484, *3, 5 Wage & Hour Cases 2d (BNA) 127 (M.D. Fla. 1998) (while plaintiff need not show putative class members were victimized by single decision, policy, or plan, such a showing is probative in determining whether potential class members are similarly situated).

**VI.   Notice should be expedited due to the running of the statute of limitations.**

Notice to the class should be expedited in this action in order to prevent the wasting of the employees' claims.  The employees' claims are governed by a two year statue of limitations or, in the case of a "willful violation," a three year statute of limitations. *See* 29 U.S.C. § 256(a). The statute of limitations is generally not tolled for any individual class member until that individual has filed with the Court a written consent to join the lawsuit. *See* 29 C.F.R. § 790,

21(b)(2); *Grayson*, 79 F.3d at 1105-06.  Consequently, the statute of limitations is diminishing the value of these employees' claims with each passing day.

## VII.   The proposed notice is fair and adequate, and should be sent via regular mail and via email.

Plaintiffs' proposed court-approved notice (Ex. 19) to the potential opt-ins is "timely, accurate, and informative," as required. *Hoffmann-LaRoche*, 493 U.S. at 172, 110 S.Ct. at 487. It provides notice of the pendency of the action and of the opportunity to opt in.  Plaintiffs' legal claims are accurately described.  It advises potential opt-ins they are not required to participate. The notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in the FLSA action.  *See* 29 U.S.C. § 215(a)(3); *Reich v. Davis*, 50 F.3d 962, 964 (11th Cir. 1995).

Plaintiffs propose that the notice and consent forms be mailed by first class mail **and by electronic mail** to all potential opt-ins for the entire three-year period before this lawsuit was filed.  Plaintiffs' counsel will oversee the mailing (both regular mail and electronic mail) of such notices and incur the charges for same (postage, copying, etc.).  Konica has a digital list of all emails for currently employed class members.[25] Class notice to class members is appropriate via email.  *Beall v. Tyler Technologies, Inc.*, No. Civ. A. 2-08-CV-422 (TJW), 2009 WL 3064689, at *1 (E.D.Tex. 2009) (court granted class notice via email and later compelled the employer to produce all email addresses, both personal and work); *see also Davis v. Westgate Planet Hollywood Las Vegas, LLC.*, No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735, at * 15 (D. Nev. 2009) (where court granted circulation of class notice via both U.S. mail and email).

---

[25] Konica admitted, in pertinent part, paragraph 65 of Plaintiffs' First Amended Complaint which states, "Konica maintains in digital format the email addresses for a majority of its technical support workers." *See* Doc. #s 16 and 18, Plaintiffs' First Amended Petition and Defendant's Original Answer.

Those class members interested in participating would be required to file their consents with the Court within 60 days of the mailing. This is consistent with established practice under the FLSA.[26]

## VIII.   The proposed limited discovery is essential to ensure timely notice.

Discovery of a mailing list and contact information for class members in a computer readable format is a routine component of notice in collective actions. *See, e.g., Rain King, Inc.*, No. Civ. A. H-02-4012, 2003 WL 23741409, at *1 (granting class notice and ordering Defendant to produce the names, addresses and phone numbers of class employees in a readable computer format); *Alba v. Madden Bolt Corp.*, Civil action H-02-1503, 2002 WL 32639827 (S.D. Tex. June 5, 2002) (J. Hoyt) (Court ordered Defendant to produce "the full name, last known address, telephone numbers, dates and location of employment for three years); *Hoffmann-LaRoche*, 493 U.S. at 170, 110 S.Ct. at 486 ("District Court was correct to permit discovery of the names and addresses…").

Konica should therefore be ordered to produce the last known addresses, all phone numbers (home, mobile, etc.), dates of birth, all known email addresses (work and personal), and dates of employment for all the class members employed within three years preceding the filing of this action to the present, *i.e.* March 25, 2007 to the present.[27] All of the requested information is necessary, including dates of birth, to allow Plaintiffs sufficient information to confirm current addresses and/or to locate those persons who may have moved from their last known addresses. Production of all known personal and business email addresses is particularly important because

---

[26] *Hoffmann-LaRoche*, 493 U.S. at 172, 110 S.Ct. at 487; *Garner*, 802 F. Supp. at 422 (cut off date expedites resolution of action).

[27] *See Beall v. Tyler Technologies, Inc.*, No. Civ. A. 2-08-CV-422 (TJW), 2009 WL 3064689, at *1 (E.D. Tex. 2009)(court ordered Defendants to provide "Plaintiffs' counsel with names, job titles, addresses, telephone numbers, and Social Security numbers of the potential class members."); *see also Davis v. Westgate Planet Hollywood Las Vegas, LLC.*, No. 2:08-cv-00722-RCJ-PAL, 2009 WL 102735, at *15 (D. Nev. 2009) (where court ordered production of names, addresses, phone numbers, and email addresses of class members).

such contact information does not change when a person moves.  Without this information, the notices are more likely to be returned due to outdated or inaccurate addresses.  This in turn will result in Plaintiffs requesting an extension of the opt-in period to accommodate those class members, thereby delaying the timely resolution of this matter.  In addition, providing phone numbers allows Plaintiffs to verify the accuracy of the list by contacting former employees to determine if they are aware of anyone who was subject to the same payroll practice but whose name was omitted from the list.

## IX.    Conclusion

The Court should grant Plaintiffs' Motion to and provide the following relief to Plaintiffs:

(1)      Conditionally certify this case a collective action under 29 U.S.C. § 216(b) with respect to a class of technical support workers outside of California at Konica Minolta Business Solutions USA, Inc. who were paid on an hourly basis during any week between March 25, 2007 and the present that includes "Customer Technicians," "Customer Specialists," "Customer Imaging Technicians," "Customer Service Technicians," "Customer Imaging Specialists," "Black and White Production Print Specialists," "Color Production Print Specialists," "Color Imaging Technicians," "Product Print Specialist Black and White," "Product Print Specialist Black and White and Color," "Senior Network Imaging Technician," "Shop Technicians," and other all titles/positions with the primary job of servicing Defendant's machines.

(2)      Authorize mailing of the proposed notice and consent forms (Exs. 19 and 20) to all Konica technicians; and

(3)      require Defendant to produce the names and all known addresses, phone numbers, dates of birth, and email addresses for all class members so that notice may be implemented.

Respectfully submitted,

KENNEDY HODGES, L.L.P.

By:   /s/_____
        Galvin B. Kennedy
        *Attorney-in-Charge for Plaintiffs*
        State Bar No. 00796870
        S.D. Tex. No. 20791
        KENNEDY HODGES, LLP
        3701 Kirby Drive, Suite 400
        Houston, Texas 77098
        Telephone: 713-523-0001
        Facsimile:  713-523-1116
        gkennedy@kennedyhodgs.com

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules of Civil Procedure 7.1(D) and Section 5(C) of this Honorable Court's procedures, I certify I attempted in good faith to confer with opposing counsel concerning this motion and defense counsel is opposed to this motion.

_____/s/_____
Galvin B. Kennedy

## CERTIFICATE OF SERVICE

This is to certify that on July 9, 2010 a copy of the foregoing instrument was served upon all parties via the Court's electronic case filing system.

_____/s/_____
Galvin B. Kennedy

24