## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **GARY WATSON and LAURA GARZA on behalf of themselves and on behalf of all others similarly situated,** | § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. 4:10-cv-00986** |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.** | § § § § | |
| **Defendant.** | § | |

## SECOND AMENDED COMPLAINT—COLLECTIVE ACTION

## I.  SUMMARY

1.      Defendant requires and/or permits various employees to work in excess of forty (40) hours per week, but refuses to compensate them for such hours.

2.      Consequently, Defendant's conduct violates the Fair Labor Standards Act (FLSA), which requires non-exempt employees to be compensated for their overtime work.  *See* 29 U.S.C. § 207(a).

3.      Plaintiffs Gary Watson, Laura Garza, John Glass, and Mark Mingo are workers that were formerly employed with Defendant.  Defendant has and continues to violate the FLSA by failing to compensate Plaintiffs for all hours over forty at the FLSA mandated rate of time and one half their regular rate of pay.  Plaintiffs bring this collective action to recover unpaid overtime compensation owed to them and on behalf of all other similarly situated employees, current and former, of Defendant (hereinafter referred to as "Class Members").

## II.   SUBJECT MATTER JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.      Venue is proper in the Southern District of Texas because a substantial portion of the events forming the basis of this suit occurred in this District.

## III.   PARTIES AND PERSONAL JURISDICTION

6.      Plaintiff, Gary Watson, is an individual residing in Harris County, Texas.  Said Plaintiff's written consent form has been previously filed with the Court.

7.      Plaintiff, Laura Garza, is an individual residing in Harris County, Texas.  Said Plaintiff's written consent form has been previously filed with the Court.

8.      Plaintiff, John Glass, is an individual residing in Harris County, Texas.  Said Plaintiff's written consent form has been filed with the Court.

9.      Plaintiff, Mark Mingo, is an individual residing in Harris County, Texas.  Said Plaintiff's written consent form has been previously filed with the Court.

10.     The Class Members are all of Defendant's current and former technical support employees, including "Customer Technicians," "Customer Specialists," "Customer Imaging Technicians," "Customer Service Technicians," "Customer Imaging Specialists," "Black and White Production Print Specialists," "Color Production Print Specialists," "Color Imaging Technicians," "Product Print Specialist Black and White," "Product Print Specialist Black and White and Color," "Senior Network Imaging Technician," "Managers-in-Training," and other job titles/positions with similar job duties and responsibilities, employed by Defendant at any time from three (3) years prior to the filing of this lawsuit up to and including the time class certification is granted.

11.     The Class Members are also all of Defendant's current and former employees that are employed during the training period to become managers and/or supervisors.  Such Class Members include those employees with the job title "Mangers-in-Training" and all other job

titles/positions with similar job duties and responsibilities, employed by Defendant at any time from three (3) years prior to the filing of this lawsuit up to and including the time class certification is granted.

12.     Defendant, Konica Minolta Business Solutions U.S.A., Inc., (hereafter referred to as "Konica") is a foreign for-profit corporation doing business in Texas and throughout the United States.  Konica has made an appearance in this case.

## IV.   COVERAGE

13.     At all material times, Konica has been an employer within the meaning of 3(d) of the FLSA.  29 U.S.C. § 203(d).

14.     At all material times, Konica has been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

15.     At all material times, Konica has been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because it has had employees engaged in commerce.  29 U.S.C. § 203(s)(1).

16.     At all material times, Plaintiffs were employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 206-207.

## V.   FACTS

17.     Konica provides printing, digital imaging, and scanning machines and services to various businesses located throughout the United States of America.

18.     Konica employs technical support workers, known as "Customer Technicians," "Customer Specialists," "Customer Imaging Technicians," "Customer Service Technicians," "Customer Imaging Specialists," "Black and White Production Print Specialists," "Color Production Print Specialists," "Color Imaging Technicians," "Product Print Specialist Black and White," "Product Print Specialist Black and White and Color," "Senior Network Imaging

Technician," "Managers-in-Training," and other job titles/positions with similar job duties and responsibilities.

19.     These technical support workers are classified by Konica as hourly, non-exempt employees.

20.     These technical support workers typically work more than forty (40) hours in a workweek.

21.     Konica's technical support workers perform maintenance and repair work on digital and mechanical products sold by Konica.

22.     Konica periodically releases new products and new software for its existing line of products.

23.     In order to perform their job, Konica's technical support workers must keep up to date regarding the latest software and hardware sold by the company.

24.     Konica, as part of its company-wide policy, requires its technical support workers to attend online training sessions.

25.     Konica's managers routinely send out emails and other communication to its technical support workers informing them of the classes that are available on line through Konica's Internet-based training classes.

26.     Technical support workers access Konica's website on the Internet.

27.     Technical support workers from Texas can access this Internet based training system.

28.     More than one-hundred (100) technical support workers from Texas have used this Internet based training system.

29.     More than one-hundred (100) technical support workers from outside of Texas have used this Internet based training system.

30.     Technical support workers who access the Internet based training system are not compensated for such training time.

31.     Other technical support workers located throughout the United States of America were subject to the same payroll practice.

4

32.     Konica uses a nationwide network of sales offices, dealers and authorized resellers to sell, support and service its products.

33.     Konica has employees in every State in the United States of America.

34.     During the last three years, Konica has employed over 3,000 technical support workers in the United States of America.

35.     Konica has technical support workers in most major cities in the United States of America.

36.     Konica employs technical support workers in every State in the United States of America.

37.     Konica's technical support workers in every State in the United States have access to Konica's Internet based training system.

38.     At least one technical support worker in every State in the United States has access Konica's Internet based training system.

39.     At least one technical support worker in every State in the United States has used Konica's Internet based training system.

40.     At least one technical support worker from ten different States in the United States have access to Konica's Internet based training system.

41.     At least one technical support worker from ten different States in the United States have used Konica's Internet based training system.

42.     At least one technical support worker from three different States in the United States have access to Konica's Internet based training system.

43.     At least one technical support worker from three different States in the United States have used Konica's Internet based training system.

44.     At least one technical support worker from two different States in the United States have access to Konica's Internet based training system.

45.     At least one technical support worker from two different States in the United States have used Konica's Internet based training system.

46.     Konica maintains a record of the classes taken by its technical support workers on Konica's Internet based training system.

47.     Konica's website allows access to a record of the classes taken by its technical support workers on Konica's Internet based training system.

48.     Konica's technical support workers in every State in the United States can access their training record using Konica's Internet based training system.

49.     Konica's technical support workers in every State in the United States have accessed their training records using Konica's Internet based training system.

50.     At least one technical support worker in every State in the United States can access their training records using Konica's Internet based training system.

51.     At least one technical support worker in every State in the United States has accessed their training records using Konica's Internet based training system.

52.     At least one technical support worker from ten different States in the United States can access their training records using Konica's Internet based training system.

53.     At least one technical support worker from ten different States in the United States have accessed their training records using Konica's Internet based training system.

54.     At least one technical support worker from three different States in the United States can access their training records using Konica's Internet based training system.

55.     At least one technical support worker from three different States in the United States have accessed their training records using Konica's Internet based training system.

56.     At least one technical support worker from two different States in the United States can access their training records using Konica's Internet based training system.

57.     At least one technical support worker from two different States in the United States have accessed their training records using Konica's Internet based training system.

58.     The Internet based training sessions are required of all of Konica's technical support workers.

59.     The Internet based training sessions are related to equipment and machinery that Konica sells or leases.

60.     The Internet based training sessions are tailored to Konica's equipment and machinery.

61.     The Internet based training sessions do not involve equipment or machinery sold by an entity other than Konica.

62.     The Internet based training sessions are not voluntary.

63.     Konica's managers and supervisors have lead the technical support workers, including Plaintiffs and Class Members, to believe that their present working conditions would be adversely affected if they did not complete the online training sessions.

64.     The Internet based training sessions are directly related to the work of the technical support workers, including Plaintiffs and Class Members.

65.     Konica maintains in digital format the email addresses for a majority of its technical support workers.

66.     However, Konica refuses to compensate any of its technical support workers for the time spent completing the training sessions.

67.     Additionally, Konica refuses to compensate any of its technical support workers for the time spent completing additional activities that are directly related to their job, such as performing a mandatory inventory and attending required training outside their home State.

68.     Further, the technical support workers perform significant amounts of work that is directly related to their jobs for Konica, but for which they receive no compensation all.

69.     For example, prior to arriving at their first jobsite, technical support workers log into Konica's website while at home and perform required work on the website.

70.     After performing such work at home, the technical support workers travel to their first job site and are not compensated for such travel time.

71.     Konica begins compensating technical support workers after the technical support worker reaches his first jobsite.

72.    Konica does not compensate technical support workers for the time spent working at home or for the drive time to their first site.

73.    Upon completion of the last job for the day, technical support workers routinely log back onto their computers and access the Konica website to perform additional required work. This is done with the knowledge, permission, and/or acquiescence of Konica.

74.    The technical support workers are not compensated for the time spent performing necessary and required work at home after their last job or for the travel time back home to perform such work.

75.    Additionally, Konica requires its technical support workers to travel to offsite training locations on working and non-working days.

76.    Such travel to offsite training locations occurs during the normal work hours for Konica.

77.    Technical support workers were not and are not compensated for this travel time.

78.    Also, Konica requires its technical support workers to perform significant amounts of homework after classroom work hours while at the offsite training locations, but refuses to compensate the technical support workers for such time.

79.    Although Konica's technical support workers frequently worked more than forty (40) hours per week, they were not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) hours.

80.    Further, for a Konica employee to become a manager or supervisor over other technical support workers, the employees are required to undergo a prolonged course of training by Konica.

81.    The employees are given job titles, such as "Manger-in-Training," during the required training period.

82.    The training period for those employees seeking to become managers and/or supervisors typically lasts at least one month.

83.    The training period for those employees seeking to become managers and/or supervisors typically lasts at least two months.

84.     In the alternative, the training period for those employees seeking to become managers and/or supervisors typically lasts at least six months.

85.     In the alternative, the training period for those employees seeking to become managers and/or supervisors typically lasts at least twelve months.

86.     During the training period, the employees seeking to become managers and/or supervisors are paid a flat salary regardless of the number of hours that they worked.

87.     Konica has a company-wide policy that during the training period, the employees seeking to become managers and/or supervisors are paid a flat salary regardless of the number of hours that they worked.

88.     Konica's policy, that during the training period, the employees seeking to become managers and/or supervisors are paid a flat salary regardless of the number of hours that they worked, exists in Texas.

89.      Konica's policy, that during the training period, the employees seeking to become managers and/or supervisors are paid a flat salary regardless of the number of hours that they worked, exists in Texas and at least one State other than Texas.

90.     Konica's policy, that during the training period, the employees seeking to become managers and/or supervisors are paid a flat salary regardless of the number of hours that they worked, exists in Texas, California, and at least one State other than Texas and California.

91.     The employees undergoing training to become managers and/or supervisors do not have the primary duty of managing an enterprise, department, or subdivision of a department of Konica.

92.     The employees undergoing training to become managers and/or supervisors do not customarily and regularly direct the work of two or more full time employees.

93.     The employees undergoing training to become managers and/or supervisors do not have authority to hire or fire other employees.

94.     The employees undergoing training to become managers and/or supervisors do not make suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees.

95.     To the extent that the employees undergoing training to become managers and/or supervisors do make suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees, such suggestions and recommendations are not given particular weight.

96.     The employees undergoing training to become managers and/or supervisors do not have the primary duty of performing office or non-manual work directly related to the management or general business operations of Konica or Konica's customers.

97.     The employees undergoing training to become managers and/or supervisors do not exercise discretion and independent judgment with respect to matters of significance.

98.     The employees undergoing training to become managers and/or supervisors do not perform work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

99.     The employees undergoing training to become managers and/or supervisors do not perform work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

100.    The employees undergoing training to become managers and/or supervisors do not perform work requiring advanced knowledge.

101.    The employees undergoing training to become managers and/or supervisors do not perform work requiring advanced knowledge in a field of science or learning.

102.    The employees undergoing training to become managers and/or supervisors do not perform work requiring advanced knowledge that is customarily acquired by a prolonged course of specialized intellectual instruction.

103.    Although Konica's employees that undergo training to become managers and/or supervisors frequently work over 40 hours per week, they were not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) hours.

104.    Konica's method of paying Plaintiffs and Class Members was willful and was not based on a good faith and reasonable belief that its conduct did not violate the FLSA.

## VI.    COLLECTIVE ACTION ALLEGATIONS

105.    Plaintiffs have actual knowledge that Class Members have also been denied overtime pay for hours worked over forty (40) in a week and want to join this collective action.

106.    Other employees completed online training sessions, but were not paid for such time.

107.    Other employees worked over forty (40) hours per week during the time period that they received training to become managers and/or supervisors.

108.    Other employees worked over forty (40) hours per week.

109.    Other employees were not paid overtime at the rate of one and one-half times their regular rate when those hours exceeded 40 in a workweek.

110.    Consequently, Konica has denied Class Members full compensation for their hours worked over forty (40).

111.    The Class Members perform or have performed the same or similar work as Plaintiffs.

112.    Class Members are not exempt from receiving overtime under the FLSA.

113.    As such, Class Members are similarly situated to Plaintiffs in terms of work similarities, pay structure and/or the denial of overtime.

114.    Konica's failure to pay overtime compensation at the rates required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Class Members.

115.    Plaintiffs' experiences, with respect to their pay, are typical of the experience of the Class Members.

116.    The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment.

117.    All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

118.    Although the issue of damages may be individual in character, there remains a common nucleus of liability facts.

119.    As such, the classes of similarly situated plaintiffs is properly defined in the following two classes:

**CLASS A (Technical Support Workers):**

> **The Class Members are all of Defendant's current and former technical support employees, including "Customer Technicians," "Customer Specialists," "Customer Imaging Technicians," "Customer Service Technicians," "Customer Imaging Specialists," "Black and White Production Print Specialists," "Color Production Print Specialists," "Color Imaging Technicians," "Product Print Specialist Black and White," "Product Print Specialist Black and White and Color," "Senior Network Imaging Technician," "Shop Technicians," "Managers-in-Training" and other job titles/positions with similar job duties and responsibilities, employed by Defendant at any time from three (3) years prior to the filing of this lawsuit up to and including the time class certification is granted.**

**CLASS B (Employees Training to be Managers):**

> **The Class Members are all of Defendant's current and former employees who were employed during the training period to become managers and/or supervisors. Such Class Members include those employees with the job title "Manger-in-Training" and all other job titles/positions with similar job duties and responsibilities, employed by Defendant at any time from three (3) years prior to the filing of this lawsuit up to and including the time class certification is granted.**

## VII.  <u>PLAINTIFFS' OVERTIME WAGE CLAIM</u>

120.    Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

121.    Konica's practice of failing to pay Plaintiffs for all hours violates the FLSA. 29 U.S.C. § 207.

122.    None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Konica or Plaintiffs.

## VIII.    VIOLATION OF 29 U.S.C § 211(c)

123.    Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

124.    Defendant failed to keep adequate records of Plaintiffs' and Class Members work hours in violation of section 211(c) of the Fair Labor Standards Act. *See* 29 U.S.C. § 211(c).

125.    Defendant failed to keep records showing the amount of time Plaintiffs and Class Members spent performing online training, inventory, out of state training, and other tasks that are directly related to their work for Defendant.

126.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

(i)    time of day and day of week on which the employee's work week begins;

(ii)    (1) regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

(2) explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis; and

(3) the amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate."

(iii)    hours worked each workday and total hours worked each workweek;

(iv)    total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

(v)    total premium for overtime hours.  This amount excludes the straight-time earnings for overtime hours recorded under this section;

(vi)    total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

(vii)   Also, in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions;

(viii)  total wages paid each pay period; and

(ix)    date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

127.    Defendant has not complied with federal law and has failed to maintain such records with respect to Plaintiffs.

128.    Because Defendant's records are inaccurate and/or inadequate, Plaintiffs can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946).

## IX.     ANTI-RETALIATION PROVISIONS OF THE FAIR LABOR STANDARDS ACT

129.    Konica is aware that Section 15(a)(3) of the FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."  29 U.S.C. § 215(a)(3).

130.    John Glass was employed by Konica at the time Plaintiffs filed this lawsuit.

131.    John Glass had worked for Konica for over ten years prior to the filing of this lawsuit.

132.    John Glass was one of two current employees that filed consent forms to join this lawsuit.

133.    John Glass was the only current employee to be named a Class Representative.

134.    Within days of Plaintiffs filing their First Amended Complaint naming John Glass as a

Class Representative, Konica took adverse employment action against him.

135.   Konica suspended John Glass and later terminated him.

136.   Federal law makes it unlawful to terminate an employee that has filed a complaint to recover unpaid wages under the Fair Labor Standards Act. *See* 29 U.S.C. § 215(a)(3).

137.   Konica's act of terminating John Glass is an act of retaliation prohibited by Federal law.

138.   Konica's discharge of John Glass was done with a retaliatory motive despite the fact that John Glass engaged in statutorily protected conduct under sections 207 and 215(a)(3) of the Fair Labor Standards Act.

139.   John Glass has suffered as a result of Konica's retaliation.

140.   John Glass has lost wages that he would have earned and has suffered mental anguish, distress, and anxiety.

141.   A causal link exists between the filing of this lawsuit and Konica's discharge of John Glass.

## IX.   DAMAGES SOUGHT

142.   Plaintiffs are entitled to recover their unpaid overtime compensation.

143.   Plaintiffs are entitled to an amount equal to all of their unpaid wages as liquidated damages.  29 U.S.C. § 216(b).

144.   Plaintiffs are entitled to recover attorney's fees and costs as required by the FLSA.  29 U.S.C. § 216(b).

145.   Plaintiff John Glass is entitled to all lost wages and benefits in the past and future as a result of the violation of Defendant's acts of retaliation.

146.    Plaintiff John Glass is entitled to mental anguish damages as a result of Defendant's acts of retaliation.  *See* 29 U.S.C. § 215(a)(3); *Travis v. Gary Community Mental Health Center*, 921 F.2d 108 (7th Cir. 1990).

147.    Plaintiff John Glass is also entitled to reinstatement to the same position that he held prior to Defendant's acts of retaliation.

148.    Plaintiff John Glass seeks the recovery of punitive damages against Defendant for the acts of retaliation. *See* 29 U.S.C. § 215(a)(3); *Travis v. Gary Community Mental Health Center*, 921 F.2d 108 (7th Cir. 1990).

## X.    JURY DEMAND

149.    Plaintiffs hereby demand trial by jury.

## XI.    PRAYER

150.    For these reasons, Plaintiffs respectfully request judgment to be entered in their favor awarding them and the Class Members:

A.    overtime compensation for all unpaid hours worked in excess of forty (40) at the rate of one and one-half times their regular rates;

B.    an equal amount as liquidated damages as allowed under the FLSA;

C.    reasonable attorney's fees, costs and expenses of this action as provided by the FLSA;

D.    mental anguish damages for John Glass in the past and future as a result of Defendant's acts of retaliation;

E.    punitive damages for John Glass as a result of Defendant's acts of retaliation;

F.    lost wages and benefits in the past and future for John Glass as a result of Defendant's acts of retaliation;

G.    reinstatement for Plaintiff John Glass;

H.    pre-judgment and post judgment interest at the highest rates allowed by law on all damages;  and

I.      and such other relief to which Plaintiffs may be entitled.

Respectfully submitted,

KENNEDY HODGES, L.L.P.


By: /s/ _____
        Galvin B. Kennedy
        State Bar No. 00796870
        Federal Bar No. 20791
        3701 Kirby Drive, Suite 400
        Houston, Texas 77098
        Telephone: 713-523-0001
        Facsimile:  713-523-1116

ATTORNEY IN CHARGE FOR PLAINTIFFS


OF COUNSEL:

David W. Hodges
State Bar No. 00796870
Federal Bar No. 20460
Don J. Foty
State Bar No. 24050022
Federal Id No. 711552
KENNEDY HODGES, L.L.P.
3701 Kirby Drive, Suite 400
Houston, Texas 77098
Telephone: 713-523-0001
Facsimile:  713-523-1116


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all opposing parties by and through their attorney(s) of record via the Southern District's CM/ECF system on August 31, 2010.


/s/ _____
Galvin B. Kennedy