IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARY WATSON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 10-986 |
| | § | |
| KONICA MINOLTA BUSINESS | § | |
| SOLUTIONS U.S.A., INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] is Plaintiff's Motion for Notice to Potential Class Members (Docket Entry No. 22) and Plaintiffs' Objections to Defendant's Declarations (Docket Entry No. 37).

The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's Motion for Notice to Potential Class Members (Docket Entry No. 22) be **GRANTED IN PART, DENIED IN PART**. The court also **OVERRULES** Plaintiffs' Objections to Defendant's Declarations (Docket Entry No. 37) at this time.

## I.   Background

### A.   Procedural History

Plaintiffs Gary Watson, Laura Garza, John Glass, and Mark Mingo (collectively, "Plaintiffs") initiated this action on March 25, 2010, asserting on behalf of themselves and all others

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 24.

similarly situated that defendant Konica Minolta Business Solutions U.S.A., Inc., ("Defendant" or "Konica") violated the Fair Labor Standards Act[2] ("FLSA").[3]  Plaintiffs seek to certify a class of all of Defendant's current and former technical support employees[4] who at any time between March 25, 2007, and the present worked more than forty hours per week in one or more weeks and did not receive payment for their hours worked in excess of forty at one-and-a-half times their regular rate of pay.[5]

In their present motion, Plaintiffs ask the court: (1) to conditionally certify this suit as a collective action; (2) to authorize Plaintiffs to send an approved notice of this action and a consent form to putative class members; and (3) to order production of names, all known mailing addresses, all telephone numbers, e-mail addresses, and dates of birth of putative class members.[6]

**B.   Factual History**

---

[2]   29 U.S.C. §§ 201-219.

[3]   Original Complaint, Docket Entry No. 1.  Plaintiffs have also filed some individual claims, not relevant to this motion.  See Second Amended Complaint, Docket Entry No. 29.

[4]   In its complaint, Plaintiffs also sought a class titled "Employees Training to be Managers."  Second Amended Complaint, Docket Entry No. 29, ¶ 119.  However, its present motion only seeks certification of a class titled "Technical Support Workers."  See Plaintiff's Motion for Notice to Potential Class Members ("Plaintiff's Motion"), Docket Entry No. 22, p. 1 ("At this time, Plaintiffs do not seek notice to employees who are similarly situated to the 'managers in training,' which is identified as a subclass in Plaintiffs' current pleading.").

[5]   Second Amended Complaint, Docket Entry No. 29, ¶¶ 3, 10-11.

[6]   Plaintiff's Motion, Docket Entry No. 22, p. 23.

Since March 2007, Defendant has employed about 2,350 individual technicians, with approximately 1,950 individuals working as of September 2010.[7] Each technician is assigned to one of about 110 branch offices located throughout thirty-nine states.[8] Each technician reports to one of about 140 managers located in the branch offices, and each manager reports to an area or regional vice president of service.[9] Managers supervise technicians by "implementing and enforcing policies and procedures, scheduling and approving training, scheduling time off, setting performance goals and evaluating technician performance in relation to these goals."[10]

Defendant trains its technicians through both computer-based training ("CBT") and instructor-led training ("ILT").[11] More than 465 CBT courses are offered through an intranet website.[12] ILT courses are offered at five locations in the United States: Huntington Beach, California; Windsor, Connecticut; Duluth, Georgia; Wood Dale, Illinois; and Carrollton, Texas.[13] Technicians

---

[7]    Docket Entry No. 34, Docket Entry No. 1, Declaration of Calcinari, ¶ 3.

[8]    Id.

[9]    Id. ¶ 4.

[10]   Id. ¶ 5.

[11]   Id. ¶ 6.

[12]   Id.

[13]   Id.

are responsible for reporting on biweekly time sheets their compensable training time.[14]

Each technician's manager decides which of Defendant's products that particular technician should service.[15] Training decisions depend upon the types and numbers of products used in the geographic area served by each branch office, the number of technicians in each branch office already servicing a particular product, and expected future business and customer needs.[16]

### 1.   CBT Courses

Prior to November 1, 2009, Defendant had a basic policy to pay its technicians for all compensable hours.[17] Defendant expected technicians to complete their CBT training during regular work hours, and, thus, it built training time of up to eighty hours per year into each technician's anticipated work time.[18]

On November 1, 2009, Defendant implemented its Technical Training and Travel Policy.[19] This new policy required technicians to complete their CBT training during normal business hours unless

---

[14]   Id. at Ex. 2, Declaration of Porras, ¶ 8.

[15]   Id. at Ex. 1, Declaration of Calcinari, ¶ 9.

[16]   Id.

[17]   Id. ¶ 12.

[18]   Id. ¶ 10.

[19]   Id. ¶ 6 & Ex B.

their managers approved completion of the training outside of normal business hours and compensated them accordingly.[20]

Technicians were free to voluntarily take CBT courses or sales courses that were not directly related to the products they currently serviced.[21]  They were permitted to do this so they could, for example, better position themselves for career advancement opportunities.[22]

### 2.   ILT Courses

Defendant claims that it has never had a policy or practice of denying technicians compensation for time spent traveling to ILT courses outside of normal work hours.[23]   Rather, for those technicians who spent time outside of normal work hours to travel to ILT courses and who thereafter reported that time, Defendant says they were properly compensated.[24]

Defendant also claims that technicians were paid for any overtime spent on reading and reviewing ILT course materials and studying for exams, if they reported the overtime.[25]   Defendant stresses that it was the responsibility of each technician to

---

[20]   <u>Id.</u>

[21]   <u>Id.</u> Ex. 1, Declaration of Calcinari, ¶ 7.

[22]   <u>Id.</u>

[23]   <u>Id.</u> at Ex. 4, Declaration of Werth, ¶ 7.

[24]   <u>See, e.g.</u>, <u>id.</u> at Ex. 5, Declaration of Pachiano, ¶ 12.

[25]   <u>Id.</u> at Ex. 1, Declaration of Calcinari, ¶ 30.

report his overtime.[26]  After June 2009, however, Defendant states that it changed its ILT courses so that they no longer required any self-study.[27]

## II.  **Plaintiffs' Objections to Defendant's Declarations**

Because the court does not rely upon any of the portions of Defendant's declarations to which Plaintiffs object for the purposes of deciding this motion, the court **OVERRULES** all of Plaintiffs' objections at this time.  Plaintiffs may renew their objections to these declarations if Defendant uses them in support of future briefing.

## III.  **Legal Standard**

### A.  **Class Action Certification Under the FLSA**

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours.  29 U.S.C. § 207(a).  It allows employees to bring an action against their employers for violation of its hour and wage provisions.  See 29 U.S.C. §§ 215-216.  An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated.  No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  Courts have the authority to

---

[26]    Id. at Ex. 2, Declaration of Porras, ¶ 8.

[27]    Id. at Ex. 1, Declaration of Calcinari, ¶ 31.

6

implement the representative action process by facilitating notice to potential plaintiffs, i.e., to persons alleged to be "similarly situated" to the named plaintiff(s).  Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are "similarly situated" is generally made by using one of two analyses: (1) the two-step analysis described in Lusardi v. Xerox Corporation, 118 F.R.D. 351, 359 (D.N.J. 1987), or (2) the "spurious class action" analysis described in Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990).  See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of the two analyses is appropriate).[28]

Under the Lusardi approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class."  Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010) (citing Mooney, 54 F.3d at 1213-14).  The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  Mooney, 54 F.3d at 1214 & n.8.  If the court determines

---

[28]     Mooney v. Aramco Services Co. was an action under the Age Discrimination in Employment Act ("ADEA"), but it applies here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees.  See Mooney, 54 F.3d at 1212.

that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit.  Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1214).  Next, once discovery has largely been completed, and, thus, more information on the case made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action.  Id.

According to the Fifth Circuit, the Shushan approach, known as the "spurious class action" analysis, is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

> Shushan espouses the view that [29 U.S.C. § 216(b) ("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23].  Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . . [the FLSA].  In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification.  In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified.  Under this methodology, the primary distinction between a . . . [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the . . . [FLSA] representative action are not bound by its results.  In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results.

Mooney, 54 F.3d at 1214.

The Fifth Circuit has not ruled which method the courts should use to determine whether plaintiffs are sufficiently "similarly situated" to advance their claims together in a single action under Section 216(b).  Acevedo, 600 F.3d at 518-19.  Although it has stated that not all class action standards are applicable to Section 216(b) actions, it has explicitly left open the question of whether the Lusardi approach, the Shushan approach, or some third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action.  Id. (citing Mooney, 54 F.3d at 1216; LaChapelle v. Owens-Ill., Inc., 513 F.2d 286, 288 (5th Cir. 1975)).

However, most courts in this district follow the Lusardi approach in suits under Section 216(b).  See, e.g., Tolentino v. C & J Spec-Rent Servs., Inc., No. C-09-326, 2010 WL 2196261, at *3 (S.D. Tex. May 26, 2010) (collecting cases).  The Lusardi approach is consistent with Fifth Circuit dicta, stating that the two-step approach is the typical manner in which these collective actions proceed.  Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 n.2 (5th Cir. 2008).  The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class action described by [Rule 23] and that provided for by [Section 216(b)]," i.e., the "opt out" procedure for class members under Rule 23 as opposed to the "opt in" procedure under Section 216(b).  LaChapelle, 513 F.2d at 288; see also Donovan v. Univ. of Tex. at

El Paso, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures.").  This court, therefore, will analyze Plaintiff's claims using the Lusardi method.

**B.   Lusardi**

The present case is at the "notice stage" of the Lusardi analysis.  At this stage, the court's decision is "made using a fairly lenient standard;" plaintiffs need only make a minimum showing to guide the court's determination whether to issue notice to potential class members.  Mooney, F.3d at 1214.

In lieu of Fifth Circuit guidance on the appropriate test to use at the notice stage of the Lusardi analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification.  Some courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. See, e.g., Cantu v. Vitol, Inc., No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); Tolentino, 2010 WL 2196261, at *8-9.  Other courts, however, have rejected the third, non-statutory element.  See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc., No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex.

Dec. 11, 2008) (unpublished); Heckler v. DK Funding, LLC, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007).

The court agrees that plaintiffs need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit. There are several reasons for this. First, as already stated, this element is not a statutory requirement at this stage. See 29 U.S.C. § 216(b). Second, this element has not been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited. Rather, the Fifth Circuit's discussion of the Lusardi approach only requires, at the first stage, that "putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." See Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1213-14). Third, unlike under Rule 23, there is no numerosity requirement in a FLSA class action lawsuit under the Lusardi approach. See, e.g., Badgett v. Tex. Taco Cabana, L.P., No. Civ.A.H 05-3624, 2006 WL 367872, at *2 (S.D. Tex. Feb. 14, 2006) (Lake, J.) (unpublished) (citing Mooney, 54 F.3d at 1214 & n.8) (stating that "at the notice stage [in a FLSA action using the Lusardi approach], courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" (internal quotations omitted)). Fourth, this element, requiring

11

evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes. See Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985). Liberally construing the FLSA to effect its purposes, the court finds that it is enough for plaintiffs to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually intend to join the lawsuit.

Therefore, based on these considerations, the court finds that it need not determine whether Plaintiffs have alleged sufficient information that aggrieved individuals are actually willing to opt in to this lawsuit. The court will now proceed to look at the other elements of the test.

## IV.  __Analysis__

Defendant urges the court should reject Plaintiffs' request for a conditional class action certification. It argues that Plaintiffs are not similarly situated to one another or to potential class members[29] because: (1) they have not been subjected to any company-wide policies or practices that violate the FLSA, and (2) individualized analysis of both liability and damages

---

[29]   Defendant does not argue that there is not a reasonable basis for crediting the assertion that aggrieved individuals exist, see, e.g., Tolentino, 2010 WL 2196261, at *8-9, and thus the court only addresses whether Plaintiffs and putative class members are similarly situated.

issues will be required to determine whether any FLSA violations have occurred.[30]

## A.   Company-wide Policies or Practices

Averring that a single decision, policy, or plan on its part is required before the court can conditionally certify a class action under the FLSA, Defendant submits numerous declarations and documentation supporting its assertion that no company-wide policy existed that required employees, without compensation and outside of regular work hours: (1) to take CBT courses, or (2) to travel on weekends to, and do homework for, ILT courses.[31]

As Defendant recognizes, not all courts require a single policy or practice affecting all class members if the proposed collective action will promote judicial economy and efficiency.[32] As one court stated:

> While the presence of a single decision, policy, or plan is often good evidence that employees are similarly situated, it should not be a requirement.  If it were, then subgroups of employees who share the same duties would be denied collective action treatment as long as their employer makes decisions, policies, and plans for only the larger groups of which they are a part.  The remedial purpose of the FLSA's collective action mechanism should not be so easily evaded.  As long as plaintiffs are able to show that other employees are "similarly situated," the lack of a common decision, policy, or plan should not be fatal.

---

[30]   Defendant's Response, Docket Entry No. 34, pp. 11-16.

[31]   Id. at 13.

[32]   Id.

Dreyer, 2008 WL 5204149, at *3.  Similarly, the court also notes
that an employer making separate decisions, policies, or plans for
subgroups of employees, even if they elicit the same substantive
outcomes, would also be denied collective action treatment if a
single decision, policy, or plan were required.

     The court agrees that a single policy or plan is not vital to
conditional class action certification under the FLSA.  There are
several reasons for this.  First, this element is not a statutory
requirement.  See 29 U.S.C. § 216(b).  Second, this element has not
been required by the Fifth Circuit, which has only footnoted in its
discussion of the Lusardi approach that some "courts appear to
require" a single decision, policy, or plan.  Mooney, 54 F.3d at
1214 n.8.  Lusardi itself only requires, at the first stage, that
"putative class members' claims are sufficiently similar to merit
sending notice of the action to possible members of the class."
See Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1213-14).
Third, requiring a single decision, policy, or plan, before an
appropriate class is even determined, is dissonant with the Supreme
Court's directive that the FLSA be liberally construed to effect
its purposes.  See Tony & Susan Alamo Found., 471 U.S. at 296.
Therefore, liberally construing the FLSA to effect its purposes,
the court finds that a single decision, policy, or plan may be used
as evidence in support of the similarly-situated requirement, but

14

that a single decision, policy, or plan is not itself a separate prerequisite to conditional class action certification.

Accordingly, the court recommends that Defendant's argument, that Plaintiffs be required to show that a single decision, policy, or plan was involved, should be overruled.

## B.   Individualized Analysis of Issues

The legal issues, as opposed to the factual bases, for which Plaintiffs seek conditional class action are simply stated: (1) whether, under the FLSA, Defendant was required to compensate its technicians for overtime spent on web-based training courses; (2) whether, under the FLSA, Defendant was required to compensate its technicians for travel time to its national training campuses; and (3) whether, under the FLSA, Defendant was required to compensate its technicians for time spent outside of normal work hours completing homework assigned in conjunction with the live training courses.[33]

However, Defendant argues that, in spite of the apparent simplistic nature of these legal issues, complex and highly individualized factual inquiries must be made with respect to the circumstances surrounding any alleged overtime worked by each technician.   Therefore, Defendant argues, class action certification is not appropriate in this case.

---

[33]       See, e.g., Plaintiffs' Motion, Docket Entry No. 22, pp. 1-3.

Defendant first argues that Plaintiffs' "claims concerning training will implicate variances among the various branch offices and even among managers within the same branch office, and not only within a single state but throughout the country."[34]  In court in Basco v. Wal-mart Stores Inc., No. Civ.A. 00-3184, 2004 WL 1497709, at *8 (E.D. La. July 2, 2004) (unpublished), noted that variances in pressures and sales dynamics between the defendant's stores would vary across the state and even within the same city, thus weighing against class certification.  Here, however, Defendant fails to discuss or even list any variances that may be material to the present case.  The court declines to perform Defendant's work for it and imagine what such variances might be and how they would affect this lawsuit.  Accordingly, this argument should be overruled.

Defendant also argues that not all training is compensable, and that it would therefore be impossible to adjudicate these claims without conducting a detailed analysis of each technician's particular employment circumstances.  The court partially agrees.

The FLSA mandates compensation for training time that is required or "if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance."  29 C.F.R. § 785.28.  Because required training does not involve a

---

[34]   Defendant's Response, Docket Entry No. 34, p. 14.

detailed analysis of each technician's employment circumstances, Defendant's argument should fail with respect to required training.

Voluntary training, though, involves a more detailed analysis. First, training time spent to make an employee more efficient at his present job must be compensated; however, training time spent preparing an employee for advancement by upgrading his skills is not mandatorily compensable. 29 C.F.R. § 785.29. Second, time spent at lectures, meetings, and training programs need not be compensated if four criteria are met: (1) "[a]ttendance is outside of the employee's regular working hours;" (2) "[a]ttendance is in fact voluntary;" (3) [t]he course, lecture, or meeting is not directly related to the employee's job;" and (4) "[t]he employee does not perform any productive work during such attendance." 29 C.F.R. § 785.27.

Therefore, under the FLSA, whether an individual should be compensated for voluntary training involves a factual inquiry into precisely when each training session occurred; the relation of the training session to that particular employee's job; and whether the employee did any productive work related to his job during the training session. Because each employee's job must be examined in relation to each voluntarily-taken training course before a legal determination can be made with respect to whether that employee should be compensated for that course, the court finds that individual issues prevail with respect to those courses.

17

Accordingly, the compensability of voluntary training courses is not suitable for a class action under the FLSA.

Defendant also argues that whether a technician has already been compensated for training time because he did not work more than forty hours when he took the course is an individualized issue requiring rejection of a class action. The court disagrees. The amount of damages, even if zero, that each class member may be owed is not relevant to whether a conditional certification should be granted. See, e.g., Maynor v. Dow Chem. Co., No. G-07-0504, 2008 WL 2220394, at *9 (S.D. Tex. May 28, 2008) (unpublished); Clarke v. Convergys Customer Mgmt. Grp., Inc., 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005). At this stage, the court is only looking at whether the putative class plaintiffs are similarly situated.

Finally, Defendant argues that individual issues dominate: (1) whether each training activity occurred during or outside of regular work hours; (2) whether any such activity occurring outside of regular work hours was compensable under the FLSA; (3) whether each employee has already received proper compensation for such training; and (4) whether each employee reported the time spent at training through Defendant's system.[35] Defendant's first and third issues revolve around the calculation of damages, and the court has already stated that such considerations are inappropriate at this stage. Defendant's second issue has already been discussed by the

---

[35]     Defendant's Response, Docket Entry No. 34, pp. 14-15.

court when determining what kind of training (required or voluntary) should be included in a class action suit. Defendant's fourth issue is partly a legal determination that can be made for all class members (whether each employee was required to report the time in Defendant's system in order to be compensated), and partly a damages calculation issue which goes to Plaintiffs' burden of proof in showing actual damages. Neither of these are appropriate considerations at the notice stage of the <u>Lusardi</u> analysis.

Accordingly, the court recommends that Defendant's argument here be sustained in part, overruled in part.

Therefore, having examined Plaintiffs' evidence and exhausted Defendant's arguments, the court finds that only those technical support employees who participated in required training outside of normal work hours and who, as a result, worked more than forty (40) hours in any given week and were not compensated at a rate of one-and-a-half times their regular pay may participate in this lawsuit. Accordingly, the court **RECOMMENDS** that Plaintiffs' motion to conditionally certify a class be **GRANTED IN PART, DENIED IN PART**.

## C.   Class Definition and Notice

The court finds that Plaintiffs have provided evidence demonstrating that they are similarly situated to other employees of Defendant with respect to the payroll practices in question. Therefore, the court **RECOMMENDS** that this matter be conditionally

certified as a collective action under 29 U.S.C. § 216(b) with respect to the following class:

> Technical support workers at Konica Minolta Business Solutions U.S.A., Inc., who were paid on an hourly basis during any week between March 25, 2007, and the present. The class shall include all of Defendant's current and former technical support employees, including "Customer Technicians," "Customer Specialists," "Customer Imaging Technicians," "Customer Service Technicians," "Customer Imaging Specialists," "Black and White Production Print Specialists," "Color Production Print Specialists," "Color Imaging Technicians," "Product Print Specialist Black and White," "Product Print Specialist Black and White and Color," "Senior Network Imaging Technician," "Shop Technicians," and all other titles/positions with the primary job of servicing Defendant's machines, who were employed by Defendant at any time from March 25, 2007, to the present, and who were not paid for hours spent in mandatory training in excess of forty (40) hours of overall work time in any given work week at one-and-a-half (1.5) times their regular rate. The class shall **NOT** include any California residents who opted into or could have opted into the class action lawsuit against Defendant that was filed on July 12, 2007.[36]

See <u>Baldridge v. SBC Commc'ns, Inc.</u>, 404 F.3d 930, 931-32 (5th Cir. 2005) (stating that the court has the power to limit the scope of a proposed class in a FLSA collective action).  If any current or former technical support employees, as defined in the class, wish to proceed on a claim for overtime compensation under the FLSA with respect to voluntary training sessions, they must file a separate lawsuit.

---

[36]   <u>See Hanson v. Konica Minolta Business Solutions, U.S.A., Inc.</u>, No. 07-CC-01320 (Cal. Super. Ct.), filed July 12, 2007 (class action lawsuit containing substantially similar claims against Defendant that was limited to California residents only); <u>see also</u> Plaintiffs' Motion, Docket Entry No. 22, pp. 3-4 (stating that Plaintiffs are not seeking to certify a class that includes the California technicians) and Ex. 2, Second Amended Complaint to California class action lawsuit.

Accordingly, if this Recommendation is adopted, Defendant shall provide counsel for Plaintiffs with the names, positions, dates of employment, current or last known addresses (work and home), current or last known telephone numbers (home, mobile, and work), and all work email addresses for current employees fitting the description of the conditionally certified class.  Defendant shall provide such information in a computer-readable format within fourteen (14) days of the date this Recommendation is adopted.

Having examined Plaintiffs' proposed notice and consent forms and considered Defendant's objections, the court finds that Plaintiffs' notice and consent forms[37] should issue to proposed class members, except that Plaintiff shall remove the phrase "and/or minimum wage" from paragraph one (1) of the Consent to Join form.  All other portions of these two forms shall remain unaltered except for the inclusion of appropriate dates.

Further, if this Recommendation is adopted, Plaintiffs' counsel shall mail a copy of the notice and consent forms attached to their motion, with the required changes, via regular United States mail and/or via electronic mail to all persons contained on the list within fourteen (14) days of receiving the list from Defendant.  Plaintiffs' counsel shall also include a self-addressed stamped envelope in the mailing.  The potential class members shall

---

[37]   See Plaintiffs' Motion for Notice to Potential Class Members ("Plaintiffs' Motion"), Docket Entry No. 22, Exs. 19 & 20.

21

have sixty (60) days from the date of the mailing of the notice to file their consent opting into this lawsuit as plaintiffs, unless good cause can be shown as to why the consent was not postmarked prior to the deadline.

Further, if this Recommendation is adopted, Defendant is hereby prohibited from communicating, directly or indirectly, with any current or former hourly employees about any matters which touch or concern the settlement of any outstanding wage claims, or other matters related to this suit, during the opt-in period. Defendant shall so instruct all of its branch managers.  This order shall not restrict Defendant from discussing with any current employee matters that arise in the normal course of business.

### V.  <u>Conclusion</u>

Accordingly, the court **RECOMMENDS** that Plaintiff's Motion for Notice to Potential Class Members (Docket Entry No. 22) be **GRANTED IN PART, DENIED IN PART**.  The court also **OVERRULES** Plaintiffs' Objections to Defendant's Declarations (Docket Entry No. 37) at this time.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen (14) days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

22

findings and legal conclusions on appeal.  The original of any written objections shall be filed with the United States District Clerk electronically.

**SIGNED** in Houston, Texas, this 22nd day of November, 2010.

_____
Nancy K. Johnson
United States Magistrate Judge