UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| GARY WATSON, et al., | ) )  Case No. 4:10-cv-00986 |
| Plaintiffs, | ) ) |
| v. | ) ) JOINT MOTION FOR ) APPROVAL OF SETTLEMENT ) AND CERTIFICATION OF ) SETTLEMENT CLASS |
| KONICA   MINOLTA   BUSINESS SOLUTIONS U.S.A., INC. | ) ) |
| Defendant. | ) ) ) |

Plaintiffs, on behalf of themselves and all others similarly situated, and Defendant have reached a settlement of this lawsuit ("Settlement"). Because it easily meets the applicable standard, the Plaintiffs and Defendant (together, the "Parties") respectfully move this Court for approval of the Settlement memorialized in the Settlement Agreement attached as Exhibit 1. At this preliminary stage of the settlement process, the Parties respectfully request that the Court:

(i) grant preliminary approval of the proposed Settlement;

(ii) certify a settlement class pursuant to the provisions of Fed. R. Civ. P. 23(b)(3);

(iii) schedule a fairness hearing to consider final approval;

(iv) direct that notice of the proposed settlement and hearing be provided in a manner consistent with the Settlement Agreement and the notice schedule; and

(v) enter the proposed Order for Preliminary Approval.

The Parties' proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under federal law and falls well within the range of reasonable

settlements of the claims at issue.  Accordingly, the Parties request that the Court grant the requested relief.

## I.    PROCEDURAL HISTORY

Plaintiffs filed this case in this Court on March 25, 2010, asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), arising out of alleged failure to pay overtime compensation for hours worked in excess of forty per workweek (Dkt. 1).    On May 18, 2010, Plaintiffs filed an Amended Complaint (Dkt. 16). Defendant filed an Answer denying liability on June 7, 2010 (Dkt. 18).  On July 9, 2010, Plaintiffs moved for conditional certification of a nationwide collective action pursuant to § 216(b) of the FLSA (Dkt. 22).  On November 22, 2010, Magistrate Judge Johnson recommended that notice be sent to "current and former technical support employees" who worked for Defendant from March 25, 2007 in all states other than California (Dkt. 42), and this Court adopted that recommendation on December 22, 2010 (Dkt. 50). Notice was sent to a conditionally certified class of approximately 2,300 current and former employees in positions responsible for servicing business equipment in the field, and approximately 250 filed consents to join the litigation.

Subsequently, Plaintiffs commenced a similar action before this Court.[1] Several class members also filed cases asserting state law claims based on the same underlying allegations in Illinois, New York, and Massachusetts (collectively, the "State Court Actions").[2]

---

[1] *Gary Watson, Laura Garza, and John Glass, et al., v. Konica Minolta Business Solutions U.S.A., Inc.*, U.S. District Court for the Southern District of Texas, Civil Action No. 10-cv-0986 ("*Glass*").

[2] *Green, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, U.S. District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 11-cv-3745 (filed on June 2, 2011 asserting claims for alleged violations of the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act);

Counsel for the parties prepared for and engaged in formal mediation, which involved pre-mediation conferences and a full-day mediation conference with Linda Singer, Esq. of JAMS, a respected mediator in complex-wage-and-hour-class-action litigation. The mediation covered all pending cases filed by Plaintiffs' counsel against Defendant.  Although the Parties did not settle that day (and, in fact, seemed quite far apart in their respective positions during that mediation), they continued their negotiations, ultimately reaching the Settlement addressed here.  During formal discovery and prior to the mediation, the Parties conducted written discovery and numerous depositions, and exchanged thousands of pages of documents, data, and information, including electronically stored information with hundreds of thousands or more entries related to the dates of employment, weeks and hours worked in the class period, work activities, and compensation data of Class Members.

In sum, Plaintiffs and their counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in this litigation. In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to the Class, Plaintiffs and their counsel believe that the Settlement is in the best interests of the Class and represents a fair resolution of the claims brought in this litigation.

---

*Allison, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, U.S. District Court for the Southern District of New York, Civil Action No. 11-cv-4192 (filed on June 20, 2011, asserting claims for alleged violations of the New York Labor Law); and *Lesniak, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, Hampden County Superior Court, Civil Action No. 2011-00873 (filed on October 17, 2011 asserting claims for alleged violations of Massachusetts laws pertaining to payment of wages and hours of work; removed by KMBS to U.S. District Court for the District of Massachusetts, Civil Action No. 11-cv-12100, on November 28, 2011).

14964519v.5

On February 15, 2013, Plaintiffs filed their Third Amended Complaint in this case, which asserts claims under the laws of Illinois, New York, and Massachusetts, in addition to FLSA claims.   Concurrently, Plaintiffs' counsel ("Class Counsel") filed notices of withdrawal with prejudice in the State Court Actions.

## II.   SUMMARY OF SETTLEMENT

The following summarizes the Settlement Agreement's terms:

### A.   The Settlement Classes

The Settlement includes two Settlement Classes, the "FLSA Class" and the "Rule 23 Class."  The FLSA Class includes individuals who filed consents to join the *Watson* or *Glass* Actions as of the date of the Settlement Agreement and who worked for KMBS in a "Covered Position,"[3] within the three (3) years prior to filing such consent.

The Rule 23 Class includes all individuals employed by KMBS in a Covered Position:

    i.      In Illinois at any time from April 1, 2004, through Preliminary
            Approval;

    ii.     In New York at any time from June 20, 2005, through Preliminary
            Approval; and

---

[3] "Covered Position" refers to any position responsible for servicing business equipment in the field, including without limitation job positions entitled BSC Tech II, BSC Tech IV, Color Imaging Specialist, Color Imaging Technician, Color Technician, Customer Imaging Integrator, Customer Imaging Specialist, Customer Imaging Specialist-GL, Customer Imaging Technician, Customer Technician, Digital Product Specialist, Doc Imaging Specialist, Field Tech, Imaging Integrator, Imaging Technician, Network Imaging Integrator, Network Integrator Specialist I, Production Imaging Print Specialist - Black &White, Production Imaging Print Specialist-Color/Black &White, Production Imaging Print Technician - BW, Production Imaging Print Spec-Color/BW-GL, Senior Customer Technician, Sr. Document Imaging Specialist, Sr. Color Imaging Specialist, Sr. Customer Imaging Specialist, Sr. Customer Imaging Specialist-GL, Sr. Network Imaging Integrator, System Integration Engineer, Systems Engineer, Tech Specialist I, Tech Specialist II, Office Services Associate 1, Office Services Associate 2, Office Systems Associate , Office Systems Associate 2, Office Systems Specialist, Office Systems Professional, Office Systems Expert, Solution Services Associate 1, Solution Services Associate 2, Solutions Specialist, Sr. Solutions Specialist, Solutions Integrator, Production Systems Technician, Production Systems Specialist, Production Systems Professional, Production Systems Expert , Shop Technician, In-House Technician, In-House Specialist, Sr. In-House Specialist , Service Team Lead, Manager-in-Training, and Technician.

iii.     In Massachusetts at any time from October 17, 2008, through Preliminary Approval.

The Parties seek certification of a class for purposes of settlement only.  The Parties' Settlement Agreement provides that the present request for certification of such class shall be null and void and shall not be used for any purpose, including any evidentiary purpose, if the Court does not approve the Settlement at any stage of the proceedings, including any denial of the parties requests for preliminary or final approval of the Settlement.

B.     Payments to Class Members

Defendant has agreed to establish a Settlement Fund of up to $4,350,000 to resolve the wage and hour claims of all Class Members. The Settlement Fund will be distributed to Class Members who have joined or will join this Settlement based on a detailed formula that accounts for the number of weeks each Class Member worked for Defendant during the class period in a covered position.  *See* Ex. 1 at § 12.

C.     Incentive Payments

The Settlement Agreement also contemplates incentive payments totaling $85,000 to the eleven Named Plaintiffs to acknowledge their service to the class.  The proposed incentive amounts are as follows: (1) Gary Watson $10,000; (2) John Glass $5,000; (4) Laura Garza $20,000; (5) Michael Green $7,500; (6) Shawn Kraft $7,500; (7) Fred Person $7,500; (8) James Outlaw $7,500; (9) Derwin Allison $5,000; (10) George Schiess $5,000; (11) Michael Johnson $5,000; and (12) Zbignew Lesniak $5,000.  Ex. 1 at § 6.  These payments would be in addition to any Settlement Payment that Plaintiffs receive as a Claimant in this matter.  In light of their efforts resulting in this settlement on behalf of the Settlement Classes, Plaintiffs are entitled to the Incentive Payment sought.

5

*See McClain v. Lufkin Ind., Inc.*, No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009).

      D.     <u>Settlement Administration and Notice</u>

The Parties have agreed to use Rust Consulting, Inc. as the Settlement Administrator in this matter. The duties of the Settlement Administrator are set forth in Sections 8 through 13 of the Settlement Agreement. The cost of administering the Settlement is capped at $40,000. KMBS agrees to cooperate with the Settlement Administrator to ensure that it has all of the information reasonably necessary to perform its tasks. The Parties will provide the Court with a declaration from the Settlement Administrator of due diligence and proof of mailing with regard to the mailing of the Notice Packet prior to the Final Approval Hearing.

The Parties' proposed notice and claims process provides that each Class Member would be informed of and given the opportunity to participate in this Settlement by receiving the following documents by first-class mail: (i) a Notice of Class Action Settlement which explains the terms and conditions of the Settlement, the proposed form of which is attached as Exhibit 1-A; (ii) a Claim Form which the Class Member may submit to participate in the Settlement, the proposed form of which is attached as Exhibit 1-B; and (iii) an envelope addressed to the Claims Administrator, which will assist the Class Member in returning the Claim Form to the Administrator.

The proposed notice and claim form include all essential information about the lawsuit required under Rule 23, including the persons affected, the class definition, the nature of the action, the possibility of, and method for, excluding him or herself from the

Settlement, and an explanation of how to obtain additional information relating to the Settlement from the Claims Administrator and Class Counsel.

      E.     <u>Attorneys' Fees and Costs</u>

The Settlement Agreement provides that Class Counsel will move the Court for an award of attorneys' fees and costs.  Under the Settlement Agreement, Class Counsel will seek attorneys' fees not to exceed thirty-two and 14434/100000 percent (32.14434%) of the Maximum Settlement Amount plus reimbursement of costs not to exceed $157,438.10.  Ex. 1 at § 5.  KMBS will not object to Class Counsel's request for fees and costs up to that amount.

      F.     <u>John Glass Retaliation Claim</u>

The Settlement Agreement provides for payment to John Glass of $106,721.23 in consideration for him releasing his claim for retaliation. Ex. 1 at § 6(d). Glass is the only class representative or class member who has a claim for retaliation.

## III.    PRELIMINARY SETTLEMENT APPROVAL

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *In re Chicken Antitrust Litigation American Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (noting "strong judicial policy favoring settlements" and "realization that compromise is the essence of settlement"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); 2 Herbert

B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992) (collecting cases). The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief they seek in a prompt and efficient manner.

For FLSA claims in particular, a court should approve a settlement that is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States, U.S. Dep't. of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982). If a settlement in an FLSA suit does reflect such "a reasonable compromise over issues," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. In this case, the Parties have reached a fair and reasonable resolution for the reasons explained below, and the Court thus should approve the settlement of the FLSA claims.

Approval of the settlement of plaintiffs' class-action-state-law claims should be considered pursuant to Fed. R. Civ. P. 23 in a three-step procedure:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Litigation (Fourth)* at §§ 21.632-34 (2004). This procedure, used by courts in this Circuit and endorsed by the leading class-action treatise, safeguards the due-process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22 *et seq.*

The decision to approve a proposed settlement is committed to the district court's sound discretion.  *See In re Chicken Antitrust Litigation American Poultry*, 669 F.2d at 238.  With this motion, the Parties request that the Court take the first step in the settlement-approval process by granting preliminary approval of the proposed Settlement.  The purpose of preliminary evaluation of proposed class-action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile.  2 Newberg & Conte, § 11.25 at 11-36, 11-37.  At the formal fairness hearing, class members may be heard and further evidence concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

A.       The Criteria for Preliminary Settlement Approval Are Satisfied.

A proposed class settlement should be preliminarily approved if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Parker v. Anderson*, 667 F.2d 1204 (5th Cir.1982); *see also  Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004).  To determine whether a settlement meets these criteria and should be preliminarily approved, courts in the Fifth Circuit use a six-factor test, in which they consider:

> (1) evidence that the settlement was obtained by fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the stage of the litigation and the amount of discovery completed;
> (4) the probability of plaintiffs' prevailing on the merits;
> (5) the range of possible recovery and certainty of damages; and
> (6) the opinions of class counsel, class representatives, and absent class members.

*See, e.g., Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir.1983); *In re Enron Corp. Securities, Derivative &*

*"ERISA" Litigation*,  228 F.R.D. 541, 554 (S.D. Tex. 2005).  The Parties' Settlement meets all of these criteria for the reasons explained below.

### 1.   The Settlement Is the Product of Bona Fide Negotiations.

There is no evidence of any collusion whatsoever between counsel for Plaintiffs and Defendant in this case.  To the contrary, counsel for each Party has vigorously advocated their respective positions.  The fact that a class-action settlement is reached after arms-length negotiations by experienced counsel generally gives rise to a presumption that the settlement is fair, reasonable, and adequate.  *See, e.g., In re: Trail Derailment Near Amite, La.*, 2006 WL 1561470 at *19 (E.D. La. May 24, 2006) (*citing Newberg on Class Actions, 3d ed.* (1992) § 11.41); *Manual for Complex Litigation¸* § 30.41 (1995)).  Settlement here was reached only after considerable litigation of the underlying cases including, as described further below, after the Parties engaged in substantial discovery.  The negotiation of this settlement was contentious and conducted at arms-length.  Counsel for both parties relied on their respective substantial litigation experiences in similar wage-and-hour class actions and thorough analysis of the legal and factual issues presented in this case.

The Parties prepared for and engaged in formal mediation in New York with experienced mediator Linda Singer, Esq. After the scheduled mediation, the Parties continued to negotiate, exchanging numerous post-mediation communications, including many with the mediator.  Since reaching a settlement in principle, the Parties' counsel have continued to engage in arms-length, informed negotiations regarding the terms of the settlement and the content of the Settlement Agreement, the proposed notice and claim forms, and this joint motion.

>        2.   *Continued Litigation Would Be Complex, Expensive, and Lengthy.*

The time and cost of further litigation in this case also favors settlement.  *See In re: Enron Corp. Securities, Derivative & ERISA Litigation*, 228 F.R.D. 541 at 565 (S.D. Tex. 2005 (approving class-action settlement because "the settlement avoids the risks and additional great expense inherent in these challenges in a vigorously litigated action"). This case is now over two years old and, with continued litigation, motion practice, and appeals, could easily last additional years.

Indeed, absent this settlement, the Parties would continue, as they have throughout, to vigorously litigate this case.  Continued litigation would require that the Parties engage in additional extensive and expensive discovery in three of the underlying actions, including numerous depositions.  Thereafter, the Parties would be required to undertake the burden and expense of briefing class certification and summary judgment and potentially of preparing for one or more complex trials.  Post-trial litigation, including appeals, would likely follow.  While additional litigation would inevitably be costly, it would not inevitably reduce the risks the litigation holds for the Class.  When balanced against the tremendous time and cost associated with continued litigation, the immediate recovery provided for with this Settlement favors a determination that the settlement is fair, reasonable and adequate.

>        3.   *Significant Discovery and Other Litigation Has Occurred.*

The significant amount of litigation and discovery conducted in the underlying cases prior to settlement being reached favors a finding that the settlement is fair.  This litigation has progressed to a stage where the parties are able to evaluate the merits of the case and the probable course for future litigation.  *See In re: Combustion, Inc.*, 968 F.

Supp. 116, 1127 (W.D. La. 1997) (holding that after years of motion practice and discovery, the parties "were in an excellent position to assess their respective positions"). As explained above, this complex class action was resolved only after more than two years of hard-fought litigation involving extensive research, analysis, discovery, and motion practice.   The Parties have exchanged documents and data and conducted numerous depositions.   Accordingly, the Parties have completed sufficient discovery to understand the strengths and weaknesses of their case before a settlement was reached.

### 4.   *The Settlement is Fair In Relation to the Strength of Plaintiffs' Case.*

Balancing the strength of Plaintiffs' case against the amount offered in settlement favors a finding that the proposed settlement is fair, reasonable and adequate.   When assessing this factor, "the district court's 'evaluation is not and cannot involve a trial on the merits,' because the policy of encouraging settlements is effected by 'the very uncertainty of the outcome of the litigation and the avoidance of wasteful litigation and expense.'"   *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*,  228 F.R.D. at 553 (citing *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195 (5th Cir. 1981)); *see also Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (court should avoid "try[ing] the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial.") (internal quotations and citations omitted).   Instead, the Court should consider "the various risks and costs that accompany continu[ed] litigation."   *Donovan v. Int'l Brd. Of Teamsters*, 778 F.2d 298, 309 (7th Cir. 1985).   As one court has explained,

> It is not necessary, nor expected, that plaintiffs obtain through settlement all that would have been realized through a victorious trial.   It is the intrinsic nature of a settlement that no party will completely fulfill its absolute goals, Fox v. Glickman Corp., 253 F. Supp. 1005, 1012 (S.D.N.Y. 1968), but rather that, after considering all the relevant

> circumstances, it is resolved by all involved that it is in their best interests to terminate the litigation on the basis of a fair and reasonable compromise.

*Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976).  This settlement is a fair and reasonable compromise.

Defendant vigorously asserts that Plaintiffs' claims are meritless, already filed a summary-judgment motion in the *Green* case, and intended to file similar motions and otherwise pursue its defenses in all of the related cases if a settlement in principle had not been reached.  Plaintiffs, of course, dispute Defendant's position, but recognize the legal and evidentiary risks they would face at a protracted trial.  To establish liability and damages for the allegations at issue here, individual testimony would be required concerning the particular circumstances of each employee.  This would boil down to testimony from individual employees and rebuttal testimony from Defendant's supervisors and managers.  Putting aside the significant time and expense of putting on possibly hundreds of witnesses, it is impossible to guarantee whose witnesses a jury would find more persuasive.  *See Parker v. Anderson*, 667 F.2d 1204, 1209-10 (5th Cir. 1982) (upholding settlement class and finding that district court properly considered conflicting testimony as risk to plaintiffs' chances of prevailing on merits); *In re Compustion*, 968 F. Supp. 116, 1128 (W.D. La. 1997) (recognizing that class settlement was proper where plaintiffs would face significant legal and evidentiary hurdles if case was not resolved).  The Settlement Agreement, by contrast, provides an immediate award to all Class Members.

Moreover, the terms of the settlement are fair to Class Members.  The consideration to be paid by Defendant to the Class Members is considerable and the plan of allocation is reasonable.  The Settlement provides for an amount of up to $4,350,000 to

be paid to and on behalf of Class Members.  The share of the settlement amount for each Class Member is proportionate to the total number of weeks worked by him or her during their employment with KMBS.

Ultimately, Class Counsel believes that the proposed settlement is fair, reasonable and adequate when balanced against the strength of their clients' case.  Defendant's Counsel does not dispute this determination.

### 5.   *The Range of Possible Recovery Supports the Settlement.*

Additionally, the range of recovery for Plaintiffs' action supports the Settlement. Courts consider "the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point that is fair to the plaintiff settlors." *Neff v. By Metropolitan Transit Auth.,* 179 F.R.D. 185, 210 (W.D. Tex. 1998) (quoting *In Re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 213 (5th Cir. 1981)).  "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.  In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Parker v. Anderson,* 667 F.2d 1204, 1210 n.6 (5th Cir.), *cert. denied*, 459 U.S. 828 (1982) (internal quotation omitted). As explained above, Plaintiffs and Class Members are not certain to recover any damages if this case is litigated further, whereas settlement provides an immediate award to all Class Members.  Moreover, the settlement amount of up to $4,350,000 represents a reasonable compromise based upon Class Counsel's assessment of the damages at issue.

6.   *Class Counsel and Class Representatives Support the Settlement.*

Class Counsel are very experienced in class-action litigation, and had a substantial amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the Settlement.   In Class Counsel's opinion, the Settlement is fair, reasonable, and adequate.   In appraising the fairness of a proposed settlement, the opinion of experienced counsel is entitled to great weight.   *See Cotton v. Hinton*, 559 F.2d 1236, 1330 (5th Cir. 1977) ("the trial judge, absent fraud, collusion or the like, should be hesitant to substitute its own judgment for that of counsel").   "Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or over-reaching."   *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Col. 1974); *accord Zerkle v. Cleveland Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971).   Such considerations support approval of the Settlement here.

At this preliminary stage, the Parties are unaware of any opposition to the Settlement.   Class Counsel and the named Plaintiffs believe that this settlement is fair, equitable, and reasonable to all members of the putative Class.   The Named Plaintiffs were kept informed of the settlement negotiations and have directed their counsel to settle the case in accordance with the terms in the Settlement Agreement.   After receiving Preliminary Approval from this Court, Notice is to be sent to the Class Members.   A further in-depth inquiry into this element may be conducted by the Parties and this Court after assessing the response of the Class to that Notice.

B.     The Parties' Proposed Notice and Claims Process Is Fair and Adequate.

The notice and claims process set forth in the Settlement Agreement provides proper notice to affected individuals.   "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed

15

settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

The Parties here propose to send each Class Member the Notice and Claim Form attached as Exhibits 1-A and 1-B by first class U.S. mail, with the Claims Administrator to take appropriate follow-up steps regarding notices that are returned as undeliverable. Rule 23 requires that a court facilitate the "best notice" to class members that conveys the needed information "clearly and concisely in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). The short but thorough notice proposed by the Parties is likely to be read by Class Members, and if it is read it is likely to be understood. In addition, if the Class Members have any questions regarding the case or the Settlement, they are provided and encouraged to use the contact information for both the Claims Administrator and Class Counsel. Accordingly, the Parties' proposed notice and claims procedure meets the requirements of Rule 23, and they request that this Court approve the attached forms.

C.     Scheduling a Final Approval Hearing Is Appropriate.

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence, objections, and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. In addition,

Class Members, or their independent counsel, may be heard in support of or in opposition to the Settlement.  The Court can determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e).  Pursuant to 28 U.S.C. § 1715, the Final Approval Hearing must occur not less than one hundred (100) days after the Court enters the Preliminary Approval Order.

D.       The Proposed Attorneys' Fees Are Reasonable.

The proposed attorneys' fees, which will be at most one-third of the maximum settlement amount, are fair and reasonable.  *See, e.g., In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403 (S.D. Tex. 1999) (awarding 35.1%).  Defendant has agreed not to object to such a request.  Class Counsel's support for the award of attorneys' fees and costs will be more fully set forth in their attorneys' fee application to the Court.

E.       The Proposed Incentive Payments Are Reasonable.

The proposed Incentive Payments are intended to recognize the named Plaintiffs' initiative and efforts on behalf of the Class, as well as their execution of general releases (as opposed to the limited releases executed by the remainder of the Class Members). Each named Plaintiff agreed to pursue litigation on behalf of the Class, and each participated in the investigation and prosecution of this matter.  Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incur during class action litigation. *See, e.g., McClain v. Lufkin Ind., Inc.,* No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009); Herr, Manual for Complex Litigation, §30.42 (West Group 2001).  Moreover, the proposed incentive payments to all 12 named Plaintiffs, which total $85,000, are reasonable.  *Camp v.*

*Progressive Corp.,* 2004 WL 2149079, at 7 (E.D. La. 2004) (authorizing payment of $102,000 as incentive awards to class representatives for work done benefiting the class and risks incurred for serving as class representatives) Plaintiffs were instrumental in assisting counsel in developing case strategies, reviewing evidence, gathering support from co-workers in support of class certification, attending vigorous and full-day depositions in many cases, reviewing pleadings and motions, keeping in contact with class counsel, running the risk of retaliation and generally championing the rights of the class members who did not actively participate in this contentious litigation over three years.

F.   The consideration paid to John Glass for his retaliation claim is reasonable

KMBS or its predecessor hired John Glass in approximately December 1999. Glass was the first technician to contact Plaintiffs' counsel to investigate potential claims against KMBS for violation of wage and hour laws.  Without his initial participation, no class member would have ever made recovery in this case.  He was instrumental in developing the case theories, gathering evidence to support those theories and gathering support from former co-workers.  Of the 12 class representatives, Glass was the only one who was a current employee at the time he became part of the lawsuit as a class representative.  He was the only class representative who ran the risk of retaliation by KMBS through termination, reduction in hours, reduction in pay, etc.

He became a class representative on May 18, 2010.  Six days later, on May 24, 2010, KMBS terminated his employment after having worked with the company for approximately 10 years.  Thereafter, Plaintiffs filed their Second Amended Complaint alleging John Glass was terminated in retaliation for exercising his rights under the

FLSA. KMBS vigorously disputes that its decision to terminate Glass was motivated in any way by his participation in this lawsuit as a class representative or otherwise. KMBS claims it terminated Glass for reasons wholly unrelated to his claim under the FLSA.

Shortly after his termination, Glass developed cancer and had to undergo chemical and radiation therapy. He did not have the benefits of the KMBS medical insurance plan and had to purchase his own policy, which had a substantially higher deductible and premium charges. He remained unemployed for the vast majority of the three-year period since his termination in May 2010. If Glass prevails on his claim, Plaintiffs contend he would be entitled to recover more than $200,000 in lost wages, lost benefits, attorneys' fees and liquidated damages.

As part of the settlement Agreement, KMBS has agreed to pay Glass $106,721.23 to resolve his retaliation claim and all other causes of action not covered by the class settlement. While all of the consideration is being paid by KMBS, Plaintiffs' counsel have agreed to reduce the maximum fee they may apply for from 33.33333% to 32.14434% (a 1.18899% or $51,721.23 reduction in attorney's fees) to make more funds available to Glass. That is, $51,721.23 of the $106,721.23 paid by KMBS to Glass for his retaliation claim is made available from a reduction in attorneys' fees paid to class counsel, and the balance is made available from the Maximum Settlement Class Payment Amount. Payment of the retaliation claim is fair to the class members because approximately half of the total consideration paid to Glass comes from a reduction in fees, instead of from a reduction from the funds available to the class. Indeed, case law supports having the entire consideration come from funds available to the class. *See Sand v. Greenberg*, 2011 WL 7842602, at 3 (S.D.N.Y. 2011) (approving incentive awards of

$10,000 each totaling 9.5% of total class action settlement fund as incentive awards and an additional $7,500 as compensation for retaliation claims and release of such claims by a class representative); *Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at 7-8 (S.D.N.Y. 2010) (approving $15,000 incentive award payments to each of the fifteen class representatives and a separate payment of $40,000 to two class representatives to resolve their retaliation claims, all of which came from the total settlement fund.)

## IV.  PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

The Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *See, e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 591 (1997); *In re Beef Industry Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979) ("tentative or temporary settlement classes are favored"); *In re: the Prudential Insurance Company of America Salespractices Litigation* ("*Prudential II*"), 148 F.3d 283 (3d Cir. 1998); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998);. Certification of a settlement class is warranted here because all the elements of a Rule 23 class are met with respect to the proposed settlement.

### A.  The Elements of Rule 23(a) are Satisfied in the Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, named plaintiffs must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also, e.g., Prudential II,* 148 F.3d at 308-09. Here, all four elements easily are satisfied.

      B.    <u>Numerosity Under Rule 23(a)(i)</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Plaintiffs "may demonstrate numerosity by some evidence of a reasonable estimate of the number of members of the putative class, but need not provide a precise number. *James v. City of Dallas, Tex.*, 254 F.3d 551, 570 (5th Cir. 2001) "Impracticability does not mean impossibility." Courts generally treat a proposed class of at least forty (40) members as meeting the numerosity requirement of Rule 23(a)(1). *See, e.g., Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed at level of forty class members). Numerosity is indisputable here, where the proposed class includes approximately 800 individuals.

      C.    <u>Commonality Under Rule 23(a)(2)</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality requirement is met if the putative class members share "at least one issue, the resolution of which would affect all or a substantial number of class members." *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 228 F.R.D. at 555 (internal citation omitted); *see also Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982) (rule requires only that resolution of common questions affect all or substantial number of class members). Rather than requiring that all questions of law or fact be

common, Rule 23 only requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See* Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10, at 3-50 (3d Ed. 1992); *accord In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 228 F.R.D. at 555. Certification is appropriate where the class claims arise "from a 'common nucleus of operative fact' regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *In re Asbestos Sch. Litig,,* 104 F.R.D. at 429. Here, commonality is met inasmuch as the claims of the Class Representatives and all Class Members are predicated on the core common issue of whether KMBS paid them all wages owed. This is the paradigm, particularly in a settlement context, of a common issue sufficient to meet the 23(a)(2) standard.

D.    Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiffs' claims be "typical" of those of other class members. The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.l3 (1982). The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative. *Id.*; *Prudential II,* 148 F.3d at 311. "Typicality refers to similarity, but not complete identity, between plaintiffs" legal and remedial theories and those of the class members; it does not require identity of claims, but only that the class representatives claims share

essentially the same characteristics as those of the class members." *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*,  228 F.R.D. at 555; *see also Jenkins v. Raymark Industries, Inc.*,  782 F.2d 468, 472 (5th Cir. 1986) (typicality "focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims"). "Where the claims arise from the same course of conduct and are brought under the same legal theory, factual differences are inconsequential." *Id*. (citing *James*, 254 F.3d at 571).  Here, too, this requirement is met by the proposed Settlement Class inasmuch as the claims present all arise from a common alleged course of conduct by Defendant.

E.     Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class."  "Adequacy is weighed by examining" two factors: "the zeal and competence of representative plaintiffs' counsel and the willingness and ability of the class representatives to take an active and controlling role in the litigation to protect the absent class members, who will be conclusively bound by a judgment in the class action." *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*,  228 F.R.D. at 556 (citing *Berger v. Compaq Computer Corp*., 257 F.3d 475, 479 (5th Cir. 2001)). The class representatives "are inadequate only if the differences between them and the putative class members create conflicts between the plaintiffs' interests and the class members' interests." *Id*. (citing *James*, 254 F.3d at 571).  These two components are designed to ensure that absentee class members' interests are fully pursued.  The existence of the elements of  adequate representation are presumed in the absence of evidence to the

23

contrary. *See, e.g., In re Asbestos Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984) (citing *Lewis v. Curtis,* 671 F.2d 779 (3d Cir. 1982)); *Cook v. Rockwell Int'l Corp.,* 151 F.RD. 378, 386 (D. Colo. 1993). Adequacy is easily met here. Plaintiffs' attorneys, the proposed Class Counsel, are experienced and competent in complex litigation and have an established track record in employment law, including, specifically, wage-and-hour cases. In turn, the class representatives have no interests that are antagonistic to the class and they have fully demonstrated their allegiance to this litigation through their testimony and responses to discovery.

      F.      <u>The Requirements of Rule 23(b)(3) Are Met in the Settlement Context</u>

In this Motion, the parties seek certification of classes for settlement purposes only. The requirements for a certifying a settlement class under (b)(3) are lessened compared to a litigation class. *See Borcea v. Carnival Corp.*, 2006 WL 3458174 (S.D. Fla. 2006) ("because a settlement class action obviates a trial, the [trial] court judge deciding whether to certify a settlement class action 'need not inquire whether the case, if tried, would present intractable management problems'") (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The Parties' Settlement Agreement expressly provides that the class certification sought by this motion shall be of no effect if the Court does not ultimately approve the settlement, and no party will rely on the Court's provisional certification of classes for settlement purposes if any part of the case survives.

Even if the Court were to analyze the proposed settlement classes under Rule 23(b), it is clear that the proposed settlement classes meet the requirements of Rule 23(b)(3). Under 23(b)(3), a class action may be maintained if:

> the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U. S. at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *In re Sugar Industry Antitrust Litig.,* 73 F.RD. 322, 344 (E.D. Pa. 1976). The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339 (N.D. Ill. 1978); *Dietrich, 192* F.R.D. 119 (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. *See In re Telectronics Pacing Sys.,* 172 F.RD. 271, 287-88 (S.D. Ohio 1997). In this regard, courts generally focus on the liability issues and if these issues are common to the class, common questions are held to predominate over individual questions. *See id.*

For purposes of the Settlement, common questions of law and fact predominate. The Settlement relates to alleged corporate-wide compensation practices pursuant to which employees in positions responsible for servicing business equipment in the field have not been paid for all hours worked. Moreover, the merits of Defendant's defense

that it has fully compensated all such employees is not relevant to the disposition of this motion because the Parties' Settlement will provide compensation to all individuals.  This presents common operative facts and common questions of law which predominate over any factual variations in the hours worked and application of Defendant's policies to individual Class Members.

The Rule 23(b)(3) superiority requirement is also met because this Settlement will resolve the pending off-the-clock lawsuits against Defendant in a single, consolidated proceeding, thereby obviating the need for multiple, parallel lawsuits. Given the commonality of claims relating to an alleged standard policy of Defendant, there would be little or no interest for each Class Member to proceed with their own case.  Indeed, the plan for distribution of the settlement proceeds treats all equitably by providing payments based upon weeks of employment.  Accordingly, there is no danger that individual variations, type or magnitude of damage suffered by individual class members will affect predominance, as the Class Representatives claim to have suffered the same type of damages — and seek the same type of relief — as members of the proposed classes. Moreover, the settlement provides Class Members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the injured plaintiff will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials, including trials in each of the lawsuits being settled herein.

Accordingly, in the settlement posture in which the case now stands, the matter should be conditionally certified for settlement purposes.

**Conclusion**

For the foregoing reasons, the parties respectfully request that this Court enter an

Order: (1) conditionally certifying a class action for purposes of settlement pursuant to

Fed. R. Civ. P. 23(b)(3); (2) preliminarily approving the parties' proposed settlement; (3)

directing notice to class members regarding settlement on a final and complete basis; and

(4) scheduling a final fairness hearing for the purpose of determining final approval of the

Respectfully submitted,

KENNEDY HODGES, L.L.P.

By: /s/ *Galvin B. Kennedy*
    Galvin B. Kennedy
    Federal Bar No. 00796870
    Don J. Foty
    Federal Bar No. 24050022
    711 W. Alabama St.
    Houston, Texas 77006
    Telephone: 713-523-0001
    Facsimile: 713-523-1116

*Lead Counsel for Plaintiffs and* **Class Members**

And

SEYFARTH SHAW LLP

By: /s/ *Loren Gesinsky*
    Loren Gesinsky
    620 Eighth Avenue
    New York, NY 10018
    Telephone: 212-218-5500
    Facsimile: 212-218-5526

*Lead Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all opposing parties pursuant to the Federal Rules of Civil Procedure on April 4, 2013.

*Via ECF*
Loren Gesinsky
SEYFARTH SHAW L.L.P.
620 Eighth Ave., 32nd Fl
New York, NY 10018
*Attorney for Defendant*

*Via ECF*
Timothy M. Watson
SEYFARTH SHAW L.L.P.
700 Loiusuana St., Ste. 3700
Houston, TX 77002
*Attorney for Defendant*

/s/ *Galvin B. Kennedy*
Galvin B. Kennedy

14964519v.5