# SETTLEMENT AGREEMENT, RELEASE, AND WAIVER

*Watson, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*
U.S. District Court for the Southern District of Texas
Civil Action No. 10-cv-0986

*Glass, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*
U.S. District Court for the Southern District of Texas
Civil Action No. 11-cv-02172

*Green, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*
U.S. District Court for the Northern District of Illinois, Eastern Division
Civil Action No. 11-cv-3745

*Allison, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*
U.S. District Court for the Southern District of New York
Civil Action No. 11-cv-4192

*Lesniak, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*
U.S. District Court for the District of Massachusetts
Civil Action No. 11-cv-12100

This Settlement Agreement, Release, and Waiver ("Agreement") is made between Defendant Konica Minolta Business Solutions U.S.A., Inc. ("KMBS") and the Named Plaintiffs in the above-referenced matters, Gary Watson, Laura Garza, John Glass, Michael Green, Frederick Person, James Outlaw, Shawn Kraft, Derwin Allison, Michael Johnson, George Schiess, and Zbignew Lesniak (the "Settlement Class Representatives"), on behalf of themselves, the "Settlement Classes" defined below, and each of their agents, representatives, assignees, heirs, executors, beneficiaries, and trustees. KMBS and the Settlement Class Representatives are collectively referenced herein as the "Parties."

## RECITALS

WHEREAS, Plaintiffs Gary Watson and Laura Garza commenced litigation in the U.S. District Court for the Southern District of Texas (the "Court") captioned *Watson, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, Civil Action No. 10-cv-0986 (the "Action"), in which they asserted claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), arising out of alleged failure to pay overtime compensation for hours worked in excess of forty per workweek; and

WHEREAS, the Court conditionally certified the Action as a collective action for a limited purpose and directed that notice of the pendency of the Action be directed to members of the conditionally certified class; and

WHEREAS, Gary Watson, Laura Garza, and John Glass subsequently commenced a similar action in the U.S. District Court for the Southern District of Texas, Civil Action No. 10-cv-0986 ("*Glass*"); and

WHEREAS approximately 250 individuals filed consents to join the Action and/or *Glass* as parties plaintiff asserting FLSA claims against KMBS; and

EXHIBIT 1

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

WHEREAS, Class Counsel filed putative class action complaints (collectively, the "State Law Cases") captioned:

*Green, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, U.S. District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 11-cv-3745 (filed on June 2, 2011 asserting claims for alleged violations of the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act); and

*Allison, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, U.S. District Court for the Southern District of New York, Civil Action No. 11-cv-4192 (filed on June 20, 2011, asserting claims for alleged violations of the New York Labor Law); and

*Lesniak, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, Hampden County Superior Court, Civil Action No. 2011-00873 (filed on October 17, 2011 asserting claims for alleged violations of Massachusetts laws pertaining to payment of wages and hours of work; removed by KMBS to U.S. District Court for the District of Massachusetts, Civil Action No. 11-cv-12100, on November 28, 2011); and

WHEREAS, KMBS denies that it has committed any wrongdoing or violated any state or federal law pertaining to payment of wages or hours of work and has vigorously defended the claims asserted in the Action, *Glass*, and the State Law Cases; and

WHEREAS, in order to avoid the expense and burden of further litigation, the Parties desire to resolve (i) any and all claims that were or could have been asserted under the FLSA on behalf of individuals in Covered Positions, as defined below, who submitted written consents to join the Action and/or *Glass* prior to the Parties' settlement; and (ii) any and all claims that were or could have been asserted based on the allegations against KMBS under state laws relating to the payment of wages, including without limitation overtime pay claims, on behalf of any and all individuals who worked for KMBS in Covered Positions in the states of Illinois, New York, and Massachusetts during the applicable statute of limitations period in each state (collectively, "Overtime Pay Claims");

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

<u>**DEFINITIONS**</u>

(a) "Administrative Costs" means the amount, not to exceed $40,000, to be paid to third-party settlement administrator Rust Consulting, Inc. ("Rust") for all costs in connection with consummating the terms of this Agreement as set forth in Sections 8 through 13. If the Administrative Costs exceed $40,000, KMBS shall be responsible for such costs which shall be in addition to the Maximum Settlement Amount. The Parties shall instruct Rust to prepare a binding estimate of fees and costs for all services to be provided in conjunction with the Parties' settlement and this Agreement prior to the filing of the Joint Motion.

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 3

(b)  The "Administrator" is charged with administering this Agreement, in concert with the Parties and their counsel.  The Parties have selected Rust to act as Administrator, pursuant to the agreement attached hereto as Exhibit 1 (the "Administrator Agreement"). The Parties agree that the Administrator shall act as the agent for Defendant in holding and disbursing funds from the Settlement Account.

(c)  "Attorneys' Fees and Costs" means the amount paid to Class Counsel from the Class Settlement Fund pursuant to Section 5.

(d)  "Claim" means (a) a properly completed and timely submitted Claim Form from a Rule 23 Class Member to the Administrator, or (b) a properly completed and filed Opt-In Form from an FLSA Class Member, as such terms are hereinafter defined.

(e)  A "Claim Form" means the form, attached hereto as Exhibit 2(C), if approved by the Court, or such other similar form approved by the Court, by which a Rule 23 Class Member may submit a Claim to the Administrator.  The Claim Form shall be mailed to the last known address of each member of the Rule 23 Classes by the Administrator. Each Class Member who returns a Claim Form shall be deemed to have consented to join this Action pursuant to 29 U.S.C. § 216(b) and to consent to all releases of claims described in Section 15.

(f)  A "Claimant" means a Class Member who submits a properly completed and timely Claim Form, who filed a properly completed Opt-In Form, or who is a Named Plaintiff. In no event will a Class Member other than a Claimant or a Named Plaintiff be entitled to payment under the terms of this Agreement.

(g)  The "Claim Deadline" means the date sixty (60) calendar days after the mailing date of the  Notice Packet, and shall be the last date by which any of the following must occur in order such action to be timely and effective: (i) a Rule 23 Class Member must file (*i.e.*, the Claim Form at issue must be postmarked) a Claim Form with the Administrator; (ii) a Rule 23 Class Member who wishes to be excluded from the Settlement Class must file (*i.e.*, the Claim Form at issue must be postmarked) a Request for Exclusion with the Administrator; and (iii) a Class Member who wishes to object to the Settlement must submit a written objection to the Settlement.

(h)  "Claims Made Settlement Fund" means the total amount of the Settlement Payments to be made to all Claimants, calculated as described in Section 12.  This amount does not include Incentive Payments.

(i)  The "Class Period" means the following:

(a)  For individuals employed in Covered Positions who opted into this Action or *Glass* prior to the date of this Agreement, the period from three years prior to the earliest date on which such individual has filed a consent to join this Action or *Glass* though Preliminary Approval;

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

    (b)    For individuals employed in Covered Positions in Illinois, April 1, 2004, through Preliminary Approval;

    (c)    For individuals employed in Covered Positions in New York, June 20, 2005, through Preliminary Approval; and

    (d)    For individuals employed in Covered Positions in Massachusetts, October 17, 2008, through Preliminary Approval.

(j)    "Class Counsel" or "Plaintiffs' Counsel" refers to Bruckner Burch PLLC and Kennedy Hodges PLLC.

(k)    "Class Member" or "Class Members" refers to FLSA Class Members and Rule 23 Class Members.

(l)    "Class Settlement Fund" means amount to be deposited into the Settlement Account by KMBS and is the total of the following sums: (i) Claims Made Settlement Fund, (ii) Incentive Payments, (iii) Administrative Costs, and (iv) Attorneys' Fees and Costs.

(m)    "FLSA Class Member" means an individual who has filed a consent to join the *Watson* or *Glass* Actions as of the date of this Agreement and who worked for KMBS in a Covered Position within the three (3) years prior to filing such consent.

(n)    "Rule 23 Class Member" means all individuals employed by KMBS in a Covered Position:

        i.    In Illinois at any time from April 1, 2004, through Preliminary Approval;

        ii.    In New York at any time from June 20, 2005, through Preliminary Approval; and

        iii.    In Massachusetts at any time from October 17, 2008, through Preliminary Approval.

The Rule 23 Class Members are collectively referred to as the "Rule 23 Class."

(o)    The "Class Notice" refers to the document titled "Notice of Class Action Settlement, Proposed Settlement Agreement, and Hearing Date," to be sent to the Rule 23 Class Members to inform them of the terms of this Settlement Agreement and their rights and options related thereto, which is attached hereto as Exhibit 2(B).

(p)    The "Court" refers to the United States District Court for the Southern District of Texas.

(q)    "Covered Position" refers to any position responsible for servicing business equipment in the field, including without limitation job positions entitled BSC Tech II, BSC Tech IV, Color Imaging Specialist, Color Imaging Technician, Color Technician, Customer Imaging Integrator, Customer Imaging Specialist, Customer Imaging Specialist-GL,

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Customer Imaging Technician, Customer Technician, Digital Product Specialist, Doc Imaging Specialist, Field Tech, Imaging Integrator, Imaging Technician, Network Imaging Integrator, Network Integrator Specialist I, Production Imaging Print Specialist - Black &White, Production Imaging Print Specialist-Color/Black &White, Production Imaging Print Technician - BW, Production Imaging Print Spec-Color/BW-GL, Senior Customer Technician, Sr. Document Imaging Specialist, Sr. Color Imaging Specialist, Sr. Customer Imaging Specialist, Sr. Customer Imaging Specialist-GL, Sr. Network Imaging Integrator, System Integration Engineer, Systems Engineer, Tech Specialist I, Tech Specialist II, Office Services Associate 1, Office Services Associate 2, Office Systems Associate, Office Systems Associate 2, Office Systems Specialist, Office Systems Professional, Office Systems Expert, Solution Services Associate 1, Solution Services Associate 2, Solutions Specialist, Sr. Solutions Specialist, Solutions Integrator, Production Systems Technician, Production Systems Specialist, Production Systems Professional, Production Systems Expert, Shop Technician, In-House Technician, In-House Specialist, Sr. In-House Specialist, Service Team Lead, Manager-in-Training, Technician  and  other job titles/positions with similar job duties and responsibilities.

(r)     "Defendant" or "KMBS" refers to Konica Minolta Business Solutions U.S.A., Inc.

(s)     The "Effective Date" means the date that is thirty-five (35) calendar days after the entry of the Final Approval Order and dismissal of the case with prejudice (and, in case of an appeal, five (5) calendar days after the exhaustion of appeals).  The Parties, other than any absent class member who makes an objection, agree to waive all rights to appeal upon entry of a Final Approval Order and dismissal of the case with prejudice.  The Parties further agree that the Excluded Class Members, as such term is hereinafter defined, shall not be bound by any terms of the Settlement, including, but not limited to, any release of claims against Defendant.

(t)     "Incentive Payments" refer to the payments from the Settlement Account, as such term is defined herein, as part of the Class Settlement Fund, of $85,000 for the Settlement Class Representatives' service to the Class, subject to Court approval.

(u)     The "Fairness and Final Approval Hearing" means the hearing at which the parties will request that the Court finally approve the Settlement and make such other final rulings as are contemplated by this Agreement.

(v)     "Final Approval Order" means an order that unconditionally grants final approval of the Settlement, grants final certification of the Rule 23 Classes for settlement purposes only, authorizes payments to the Class Members, the Administrator, and Class Counsel as provided in this Agreement, and fully and finally extinguishes the claims of Class Members as set forth herein.

(w)     The "Maximum Settlement Class Payment Amount" means the Maximum Settlement Amount minus: (a) the Incentive Payments; (b) Attorneys' Fees and Costs; (c)  the Administrative Costs; and (d) the Consideration Paid for Glass' Retaliation Claim.

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

(x)    The "Notice Packet" means the collection of documents that shall be sent by first class mail to each Rule 23 Class Member, consisting of the Notice of Class Action Settlement, the Claim Form, and an Administrator-addressed envelope.

(y)    The "Opt-Out Period" refers to the period during which Rule 23 Class Members may exclude themselves from the Settlement, the conclusion of which coincides with the Claim Deadline. "Excluded Class Members" refers to those Class Members who timely elect to exclude themselves from the Settlement by submitting a Request for Exclusion, as such term is hereinafter defined, pursuant to Section 10(e) herein.

(z)    The "Preliminary Approval Date" is the date on which the Court issues the Preliminary Approval Order.

(aa)    The "Preliminary Approval Order" means the Order of the granting preliminary approval of this Agreement.

(bb)    The "Request for Exclusion" means a request that a Rule 23 Class Member timely and properly submits to the Administrator to be excluded from the Settlement.

(cc)    The "Maximum Settlement Amount" is Four Million Three Hundred and Fifty Thousand Dollars ($4,350,000.00), which is the maximum total amount that Defendant shall potentially be required to pay under the terms of this Agreement. This amount includes the settlement allocations to all Plaintiffs and Class Members, Attorneys' Fees and Costs, and Administrative Costs, such that Defendant's settlement liability, other than the share of payroll taxes that Defendant bears, shall not exceed $4,350,000.00.

(dd)    The "Settlement Account" means the interest-bearing account controlled by the Administrator at a federally-insured bank, mutually acceptable to the Parties and to the Administrator, into which the Settlement Amount is or will be deposited. No other funds shall be commingled within the Settlement Account.

(ee)    "Settlement Class" means all Class Members except the Excluded Class Members.

(ff)    "Settlement Class Representatives" means Named Plaintiffs Gary Watson, Laura Garza, John Glass, Michael Green, Frederick Person, James Outlaw, Shawn Kraft, Derwin Allison, Michael Johnson, George Schiess, and Zbignew Lesniak.

(gg)    A "Settlement Payment" means a Claimant's portion of the Class Settlement Fund to which that Claimant is entitled pursuant to the terms of the Agreement. Settlement Payments shall be made pursuant to the allocation(s) set forth in Section 13 below.

(hh)    "Spreadsheet" means the electronic spreadsheet that includes the name, employee identification number, social security number, state of employment, last known address, and the number of weeks worked for Defendant while in a Covered Position from the start of the applicable limitations period for each Class Member through Preliminary Approval.

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

## NO ADMISSION OF LIABILITY

1.  KMBS expressly denies any wrongdoing or any violation of federal or state law as alleged in the Action, *Glass* and in the State Law Cases.  Nothing contained in this Agreement shall be construed as an admission of any liability by any party, and all parties agree not to offer this Agreement as evidence or otherwise use it in any judicial or administrative proceeding, except that this Agreement may be introduced in any proceeding for the sole purpose of enforcing its terms.

## SETTLEMENT APPROVAL PROCEDURES

2.  **Contingency of Agreement.**  This Agreement will become final and effective only upon the occurrence of all of the following events: (a) this Agreement is executed by Named Plaintiffs, Defendant, and Class Counsel; (b) the Court approves the material terms of the Settlement as set forth in this Agreement and enters, without material change, the Preliminary Approval Order attached as Exhibit 2(A); (c) the Notice Packet is sent to the Class Members by the Administrator; (d) Class Members are afforded the opportunity to exclude themselves from the Settlement by submission of a Request for Exclusion or to file written objections; and (e) the Court holds the Fairness and Final Approval Hearing and enters, without material change, the Final Approval Order attached as Exhibit 3.

3.  **Preliminary Approval.**

    (a)  The Parties and their counsel agree that they will, contemporaneously with their execution of this Agreement, execute a copy of the Joint Motion for Approval of Settlement attached as Exhibit 2 (the "Joint Motion"), seeking Preliminary Approval of their proposed settlement.  Plaintiffs' counsel agree that they will file the Joint Motion with the Court within seven (7) days after all Parties have executed this Agreement and the Joint Motion.

    (b)  For purposes of this Agreement, "Preliminary Approval" shall be deemed to occur upon the issuance of a Court order:

        (i)    preliminarily approving the Settlement Agreement, subject only to the objections of Class Members and final review by the Court;

        (ii)   certifying for settlement purposes only the Rule 23 Classes specified in Section (n) for purposes of providing notice to the affected individuals as described in Section 10.

        (iii)  approving as to form and content the "Notice of Class Action Settlement" attached as Exhibit 2(B);

        (iv)   approving as to form and content the proposed Claim Form attached as Exhibit 2(C);

(v)    directing the mailing of the Notice Packet by first class mail to Class Members; and

(vi)    enjoining Class Members from filing or prosecuting any claims, suits or administrative proceedings regarding claims released by the Settlement unless and until such Class Members have filed valid Request for Exclusions with the Administrator and the time for filing claims with the Administrator has elapsed.

(c)    KMBS does not waive, and instead expressly reserves, its right to challenge the propriety of class certification for any purpose, as if this Agreement had not been entered into by the Parties, in the event that the Court does not certify the Rule 23 Classes for settlement purposes only.

(d)    The Parties agree to cooperate and take all steps necessary and appropriate to obtain Preliminary Approval and Final Approval of their settlement, to effectuate all aspects of this Agreement, and to dismiss the Action and the State Law Cases with prejudice.

(e)    The Parties agree that if the Court does not approve any material term in the Parties' Joint Motion or requires as a condition to granting the Joint Motion any term that effects a material change in this Agreement, then this Agreement may be voided at either Party's option. The Parties further agree that KMBS being required to pay any amount greater than the amount specified in Section (f) shall be deemed a material change. The Parties further agree that any ruling that the Court may make regarding Class Counsel's motion or petition for Attorneys' Fees and Costs pursuant to Section 3 shall not constitute a material change in this Agreement, unless such award has the effect of increasing the total amount KMBS must pay in complete settlement of all claims addressed by this Agreement.

(f)    In conjunction with the filing of the Joint Motion, the Parties will jointly request that the Court schedule the Fairness and Final Approval Hearing regarding the Parties' request for approval of their proposed settlement not less than one hundred (100) days after the Court enters the Preliminary Approval Order. Counsel for the Parties will communicate with the Clerk of the Court and make any further filings necessary to secure the approval of their request.

4.    **Amendment to Complaint and Dismissal of State Law Cases.**

(a)    Amendment to Complaint.

(i)    Within five (5) business days after the execution of this Agreement, Class Counsel shall file pursuant to Fed. R. Civ. P. 15(a)(2) and with KMBS's written consent a Third Amended Complaint in the Action in the form attached as Exhibit 4. The Parties acknowledge that the Third Amended

Complaint is intended to be identical in substance to the Second Amended Complaint filed in the Action, except that it shall add all claims asserted in the State Law Cases and *Glass* on a putative class and collective action basis in the same manner that such claims are asserted in the State Law Cases and *Glass*.

(ii)     The Parties hereby stipulate and agree that KMBS shall not be required to serve or file a responsive pleading in response to the Amended Complaint until after the Court makes a final ruling on the Parties' Joint Motion.  If, for any reason, (i) the Court denies the Parties' request for Preliminary Approval, or (ii) the Parties' settlement does not receive Final Approval within one hundred twenty (120) days after Preliminary Approval or another date stipulated by the Parties and/or set by the Court in connection with the Parties' request for settlement approval, Class Counsel shall withdraw the Amended Complaint without prejudice.  In the event that Class Counsel withdraws the Amended Complaint pursuant to this paragraph, no Party shall argue that KMBS's consent to the filing of the Amended Complaint or Class Counsel's withdrawal of the Amended Complaint has any bearing on the merits of any subsequent motion or effort to amend the operative complaint in the Action.

(b)     Dismissal of Actions.

(i)     Within five (5) business days of the execution of this Agreement, Class Counsel shall file notices of dismissal without prejudice of each of the State Law Cases and the *Glass* case, with KMBS's written consent to the extent required by the governing procedural rules.

(ii)     Within five (5) business days of Final Approval, Class Counsel shall file notices of dismissal with prejudice of the State Law Cases and the *Glass* case with KMBS's written consent pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  The dismissal of the State Law Cases and the *Glass* case shall be with prejudice and without costs, waiving all rights of appeal.

(iii)     If for whatever reason the Court does not issue a Final Approval Order, all applicable statutes of limitations for all Class Members in any dismissed case shall be tolled from the day the dismissals are filed until 30 days after the court denies approval of the Settlement Agreement or a party exercises its right to terminate this Settlement Agreement.

5.     **Attorneys' Fees and Costs**.

(a)     Class Counsel may petition the Court for an award of attorneys' fees and costs in conjunction with the Parties' settlement.  Any such petition shall be filed with the Parties' Joint Motion.

*KMBS Wage and Hour Litigation*
**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

(b)  Any attorneys' fees and costs awarded in conjunction with the Parties' settlement shall be paid from the Maximum Settlement Amount and shall reduce the Maximum Settlement Class Payment Amount.  KMBS will not oppose any request by Class Counsel for an award of fees that does not exceed 32.14434% of the Maximum Settlement Amount, which amounts to $1,398,278.77, and costs that do not exceed $157,438.10.

6.  **Incentive Payments to Named Plaintiffs and John Glass Retaliation Claim**.

(a)  Subject to Court Approval, each of the Named Plaintiffs will receive an incentive payment in Section 6(c).  These incentive payments are being sought in recognition of the time that the Named Plaintiffs spent, the risk they undertook in prosecuting the Action and the State Law Cases, executing general release of all claims including claims for retaliation, and their service to the Class Members.

(b)  The Incentive Payments shall be paid from the Maximum Settlement Amount and shall reduce the quantity of the Maximum Settlement Class Payment Amount payable to other Claimants pursuant to Section 13.  Any Incentive Payments awarded to the Named Plaintiffs shall be in addition to the Settlement Payments from the Claims Made Settlement Fund that Named Plaintiffs will receive pursuant to Section 13.  Any such service payments awarded by the Court shall be distributed by the Administrator in separate checks mailed contemporaneously with the mailing of Settlement Payments pursuant to Section 13 and shall be reported to state and federal taxing authorities as non-wage income on IRS Form 1099.

(c)  Defendant agrees not to oppose any request for Incentive Payments up to the following amounts:

(i)  Gary Watson:  $10,000

(ii)  John Glass:  $5,000

(iii)  Laura Garza:  $20,000

(iv)  Michael Green:  $7,500

(v)  Shawn Kraft:  $7,500

(vi)  Frederick Person:  $7,500

(vii)  James Outlaw:  $7,500

(viii)  Derwin Allison:  $5,000

(ix)  George Schiess:  $5,000

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

        (x)     Michael Johnson:  $5,000

        (xi)    Zbignew Lesniak:  $5,000

(d)    **Retaliation Claim of John Glass**.  In consideration for the release of any and all claims of retaliation under both state and federal law asserted by John Glass, who is the only Named Plaintiff or Class Member to have asserted any retaliation claim,  Defendant agrees to pay $106,721.23.  Plaintiffs' counsel agrees not to charge any fee on the consideration paid to John Glass for the waiver and release of his retaliation claim.  Plaintiffs' counsel further agrees to resolve the outstanding medical bills of John Glass with the Oakbend Medical Center and St. Joseph Regional Health Center.

7.    **Final Approval**. No later than seven (7) calendar days in advance of the final approval hearing, or by such other date as the Court may direct: (1) Class Counsel shall file and serve a motion for final approval of the Settlement; and (2) the Parties shall file a proposed order granting final approval of the Settlement, along with a proposed judgment that conforms with Fed. R. Civ. P. 58.

<u>**NOTICE AND CLAIMS PROCEDURES**</u>

8.    **Settlement Administrator**.

(a)    The Parties shall jointly retain the Administrator to serve as the administrator of the settlement and perform services including without limitation dissemination of notices to eligible class members, distribution of awards from the Settlement Account to eligible class members, tax reporting related to settlement, and providing notices of the Parties' settlement to governmental authorities as required by law.

(b)    The Parties shall authorize Rust to disburse the amount of the Administrative Costs to itself from the monies on deposit in the Settlement Account as defined in Section 11 upon Final Approval.

9.    **Notices Mandated by Statute**.

(a)    Within ten (10) days of the Preliminary Approval Date, the Parties will instruct the Administrator to mail notices of the Parties' proposed settlement to an "Appropriate Federal Official" and "Appropriate State Officials" (collectively, "Government Officials") as required by 28 U.S.C. § 1715.

(b)    KMBS shall assist the Administrator in preparing the notices referenced in the preceding Section, which shall include as exhibits the Joint Motion, this Agreement, and all Complaints filed in the Action.  Such mailings shall also include information regarding the portion of the Maximum Settlement Amount

that the Parties anticipate would be distributed to individuals living in each state upon Final Approval of the Parties' settlement.

10. **Notice of Settlement and Claims Process**.

   (a) <u>Provision of Spreadsheet</u>. No later than seven (7) calendar days following the Preliminary Approval Date, KMBS will provide the Spreadsheet to Class Counsel and the Administrator. Class Counsel and the Administrator will keep this data confidential and use it only for purposes of performing their respective duties to the Class Members.

   (b) <u>Mailing of Notices</u>. Within fourteen (14) days after the Preliminary Approval Date, the Parties shall instruct the Administrator to compile and mail to members of the Rule 23 Classes packets containing a notice of the Parties' proposed settlement in the form attached as Exhibit 2(B) and a Claim Form in the form attached as Exhibit 2(C). The Administrator shall send such packets by First Class U.S. Mail to each member of each of the Rule 23 Classes at such individuals' last known address as provided by KMBS, after conducting reasonable address verification efforts consistent with the customary practices in the settlement administration industry. Unless a Notice Packet is returned to the Administrator by U.S. Postal Service as undeliverable, each Notice shall be deemed received by the Class Member to whom it was sent, and the date of mailing shall control calculation of the Claim Deadline. With regard to any settlement documents that are returned to the Administrator as undeliverable, the Administrator will perform customary database searches or skip traces to locate a current address and, if a current address is located, shall promptly re-mail the settlement documents, and Defendant agrees to provide promptly all information within its possession and requested by the Administrator to research a correct address.

   (c) <u>Claim Form</u>. To receive a Settlement Payment, Named Plaintiffs and FLSA Class Members need not submit a Claim Form. To receive a Settlement Payment, all other Class Members must properly complete and submit a Claim Form to the Administrator no later than the Claim Deadline, as defined below.

      (i) In order to be valid and effective, a Claim Form must be signed, dated, and postmarked or otherwise returned to the Administrator within sixty (60) days after the first mailing of the Notice Packets by the Administrator described in Section 8(b). Upon receipt of an unsigned, untimely, incomplete or altered form, the Administrator shall apprise the individual who returned the form of its deficiency and provide such individual with a substitute form that the individual may use to cure the deficiency within twenty (20) days. A Claim Form that remains unsigned, untimely, incomplete or altered after the sixty (60) day time period set forth herein shall be void, absent a showing of good cause made more than ten (10) days prior to the date of the final approval hearing. The Parties agree to

allow the Administrator to resolve any challenges regarding the validity of any Claim Form made pursuant to this Section and to make a final and binding determination on all issues presented by any such challenges without hearing or right of appeal.

(ii)     The Claim Form will also include a specific release consistent with the Release contained in Section 15.

(iii)     Any Rule 23 Class Member who (a) does not return a Claim Form to the Administrator in compliance with the preceding paragraph, and (b) does not seek to be excluded from the Parties' settlement prior to the date of the Court order resulting in Final Approval, shall be deemed to release all Released Claims against KMBS as described in Section 13 and shall be deemed to have waived any right to receive a payment in conjunction with the Parties' settlement.

Upon the expiration of the sixty-day period in which members of the Rule 23 Classes may return Claim Forms, the Administrator shall compile and transmit the Claim Forms it has received to Class Counsel and KMBS. Class Counsel shall, within fourteen (14) days thereafter, file all valid and timely Claim Forms submitted by Claimants as notices of such Claimants' consent to join this Action.

(d)     <u>Procedures for Objecting to the Settlement</u>.  In conjunction with the Joint Motion, the Parties shall request that the Court adopt the following procedures relative to objections to the Parties' settlement.

(i)     Class Members seeking to object to the settlement must timely file and serve such objection twenty-one (21) days prior to the Final Approval Hearing.  The Notices shall contain the requirements and information set forth in this subsection.

(ii)     To object, Class Members must file with the Court and serve on counsel for the Parties a written statement describing their reasons for objecting to the settlement.  No person shall be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel) or to object to the settlement, and no written objections or briefs submitted by any person shall be received or considered by the Court at the Final Approval Hearing, unless such written statement of objections and supporting materials are timely filed and served as set forth herein.

(iii)     Only Class Members may object to the Settlement Agreement.  Persons who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the settlement.

*KMBS Wage and Hour Litigation*
**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 14

(e)  <u>Procedure for Opting Out of the Settlement</u>.  In conjunction with the Joint Motion, the Parties shall request that the Court adopt the following procedures relative to Class Members  opting out of the Parties' settlement.

 (i) Members of the Rule 23 Classes who wish to opt out of the Settlement must submit to the Administrator a written Request for Exclusion that includes their full name, the KMBS location(s) in which they worked, their job title(s) while employed by KMBS, and their dates of employment by KMBS.  The Class Member must also include his or her address and telephone number, and must personally sign the letter.  All Requests for Exclusion must be received by the Administrator by the Claim Deadline.  No Settlement Class member may exclude themselves by telephone, fax or e-mail.

 (ii) Any Class Member who submits a timely and valid Request for Exclusion Form shall NOT: (i) be bound by any orders or judgments entered in this Action; (ii) be entitled to benefits or relief under this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to the settlement or appeal from any order of the Court.

 (iii) Upon receipt of a Request for Exclusion, the Administrator shall promptly notify and send a copy of the Request for Exclusion to both counsel for the Class and Defendant.  If, however, the Class Member submits both a Request for Exclusion and a timely Claim Form, his or her Request for Exclusion will be void.

 (iv) If a fully completed and properly executed Request for Exclusion is not received by the Administrator from a Class Member timely, that Class Member will be deemed to have forever waived his or her right to opt out of the Class.

 (v) The Notices shall contain the requirements and information set forth in this subsection.

(f)  <u>Administrator's Report</u>.  No later than ten calendar days (10) days following the Claim Deadline, the Administrator shall prepare and tender a report to Class Counsel and Defendant's counsel ("Report") containing the following information: (1) the name and last-known address (as updated through the claims administration process) of each Claimant; (2) the name, last-known address, and last-known telephone number of each Class Member who submitted a valid Request for Exclusion; (3) the overall percentage of Class Members who submitted Requests for Exclusion; and (4) the amount of the Claims Made Settlement Fund.  For each Claimant, the report shall further provide: (a) the gross Settlement Payment to be made to that Class Member, before deduction of the employee's share of taxes and withholding; (b) the amount of the Settlement Payment attributed to wages; (c) the amount of the Settlement Payment attributed

to interest, penalties and non-wage recovery; and (d) the Class Member's total weeks worked.

11. **Funding of Settlement Account**.

(a)   No later than seven (7) calendar days after the Effective Date, Defendant shall deposit the Class Settlement Fund amount into the Settlement Account.

(b)   With respect to the Settlement Account, the Administrator shall:  (1) open and administer the Settlement Account in such a manner as to qualify and maintain the qualification of the Settlement Account as a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. § 1.468B-1; (2) calculate, withhold, remit, and report each Claimant's share of applicable payroll taxes in connection with the Settlement Payment; (3) satisfy all tax reporting, return and filing requirements with respect to the Settlement Account and any interest or other income earned by the Settlement Account; and (4) satisfy out of the Settlement Account all taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the Settlement Account. Fees, expenses and costs incurred in connection with the opening and administration of the Settlement Account shall be treated as and included in the costs of administering the Settlement Account and as Administrative Costs.  The Parties and the Administrator shall elect to treat the Settlement Account as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 CFR § 1.468B-1(j)(2)(i), and such election statement shall be attached to the appropriate returns as required by 26 CFR § 1.468B-1(j)(2)(ii).  The Parties agree to cooperate with the Administrator and one another as necessary to effectuate the terms of this Settlement Agreement.   In no event shall the Administrator withdraw, transfer, pledge, impair or otherwise make use of the funds in the Settlement Account except as expressly provided in this Agreement.

(c)   The Settlement Account shall be used to pay:

(i)      the Claims Made Settlement Fund;

(ii)     Attorneys' Fees and Costs, as awarded to Class Counsel by the Court;

(iii)    Incentive Payments, as awarded by the Court;

(iv)    Administrative Costs; and

(v)     any other additional expenses incurred in connection with the administration of this Agreement (other than the employer's share of payroll taxes for the Claimants and only to the extent funds remain available after Settlement Payments, Attorneys' Fees and Costs, and Incentive Payments).

(d) The total amounts owing and paid in Settlement may be less than the Maximum Settlement Amount, but may not exceed the Maximum Settlement Amount. In the event that KMBS advances funds into the Settlement Account that are in excess of the aggregate amounts to be paid in Settlement and remain in the Settlement Account, after the Administrator makes all payments in Settlement of the Action and State Law Cases as described above, such funds shall remain the property of KMBS and be retained by or returned to KMBS.

12. **Calculation of Individual Settlement Payments**.  The amount of a Claimant's Settlement Payment will be based upon the number of workweeks the Claimant worked during the Class Period, pursuant to the following formula.  The administrator will determine the "Total Number of Workweeks Worked by Class Members," which shall include one workweek for every workweek worked by Class Members during the Class Period (with decimals used to account for initial or final weeks of employment or periods of leave).  The Administrator will then calculate the Per Workweek Settlement Amount by dividing the Maximum Settlement Class Payment Amount by the Total Number of Workweeks Worked by Class Members.  Each Claimant's Settlement Payment will be calculated by multiplying the number of workweeks the Claimant worked during the Class Period by the Per Workweek Settlement Amount.  For all purposes relating to this calculation, the number of workweek worked by Massachusetts Class Members shall be multiplied by 1.3 to account for the Massachusetts treble damages provision, which is unique among the state laws at issue.

13. **Payments to Class Members**.

(a) No later than fourteen (14) calendar days following the Effective Date, the Administrator shall mail to each Claimant, at his or her last-known address as reflected in the Report, a check representing that Claimant's net Settlement Payment listed in the Report.  In the event that any Settlement Payment check is returned to the Administrator as undeliverable, the Administrator will use reasonable efforts to locate a current address for the Claimant and, if a current address is found, re-mail the check.

(b) Checks issued pursuant to the preceding paragraph shall expire ninety (90) days after they are issued, but a failure by a Claimant to deposit or cash a check within the time period allotted shall have no effect on that individual's release of claims pursuant to Sections 14 and 15.

(c) The Settlement Administrator shall withhold from payments to Claimants taxes and other sums as required by state or federal law.  For income and payroll tax purposes, the Parties agree that fifty percent (50%) of each Claimant's Settlement Payment shall be allocated as wages (which shall be subject to required withholdings and deductions and reported as wage income as required by law), and the remaining fifty percent (50%) of each Settlement Payment shall be allocated as penalties, interest, and other non-wage recovery (which shall not be subject to required withholdings and deductions and shall be reported as non-

wage income as required by law). Other than the withholding and reporting requirements herein, Claimants shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Settlement.

(d)     The payment of any awards to Class Members shall have no impact on their entitlement to or receipt of any benefits under any KMBS policy, practice, or welfare or benefit plan; or, as allowable by law, to their entitlement or receipt of workers compensation benefits or unemployment compensation.

(e)     The employer's share of any taxes will be paid by KMBS and will not count toward the Maximum Settlement Amount. The Administrator shall calculate the employer's share of payroll employment taxes on Settlement Payments to Claimants, and shall communicate such amount to KMBS with a detailed explanation of the calculations. In the event of any dispute as to the calculation of employer's share of payroll taxes, the Parties and Administrator shall meet and confer in good faith in an attempt to resolve the dispute. If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. Within fourteen (14) calendar days of the date the Administrator notifies KMBS of the amount of the employer's share of payroll taxes, notification of such amount, or within fourteen (14) calendar days after any dispute related to the amount is finally resolved, KMBS shall make any additional payment to the Settlement Account for payroll taxes as may be necessary. The Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings. KMBS agrees to reasonably cooperate with the Administrator to the extent necessary to determine the amount of the payroll tax payment required under this Section.

(f)     In the event that the Maximum Settlement Amount is not distributed in full pursuant to this Agreement, the difference between the Maximum Settlement Amount and actual payments under this Agreement shall remain the property of KMBS and shall not be subject to any rights of third parties. Such amounts shall be retained by or returned to KMBS.

<u>**RELEASES**</u>

14.     <u>**Release by Named Plaintiffs**</u>

(a)     Upon the Effective Date, in further consideration of the promises made by KMBS in this Agreement, Named Plaintiffs together with their heirs, beneficiaries, executors, administrators, successors, attorneys, and assigns (collectively referred to as the "Releasing Parties"), each shall be deemed, except as provided below, to fully, forever, irrevocably and unconditionally release, remise, and discharge KMBS and its past and present parents, affiliates, divisions, subsidiaries, predecessors, successors, directors, officers, fiduciaries, insurers, employees,

attorneys and agents (each in their individual and corporate capacities) (collectively referred to as the "Released Parties"), from any and all suits, actions, causes of action, claims, or demands against the Released Parties including without limitation any claim arising out of Named Plaintiffs' employment with KMBS.  The claims Named Plaintiffs release and forever discharge the Released Parties from include but are not limited to:

(i)     all claims asserted in the Action, *Glass* or the State Law Cases or that could have been asserted in any such case based on the factual allegations in those cases;

(ii)    all claims, charges, actions, causes of action, demands, damages (including compensatory, punitive, liquidated or treble damages), costs, attorneys' fees, loss of wages and benefits, loss of earning capacity, mental anguish, pain and suffering, or other relief permitted to be recovered upon, in law or in equity, known or unknown, suspected or unsuspected, matured or unmatured, of any kind whatsoever, now existing or arising in the future, based on any act, omission, event, occurrence or non-occurrence from the beginning of time to the Effective Date, including but not limited to any claims arising out of Named Plaintiffs' employment with KMBS;

(iii)   all claims based on occurrences through the Effective Date arising under any state or the federal constitution; Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967, as amended; the National Labor Relations Act, as amended; the Equal Pay Act; the Fair Labor Standards Act, as amended; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Family and Medical Leave Act and any other laws regarding medical or family leave; 42 U.S.C. § 1981; the Genetic Information Nondiscrimination Act of 2008, the Employee Retirement Income Security Act, as amended; the Worker Adjustment and Retraining Notification Act and any state plant closing laws; the New York Labor Law; the New York State Worker Adjustment and Retraining Notification Act; the New York State Human Rights Law; the Administrative Code of the City of New York; the New York Wage Payment Law;  the Texas Commission on Human Rights Act/Texas Employment Discrimination Law; the Texas Disability Discrimination Law; the Texas whistleblower protection statute; the Texas Minimum Wage Act; the Texas Wage Payment Law;  the Illinois Human Rights Act; the Illinois Equal Pay Act; the Illinois Equal Wage Act; the Illinois Wages for Women and Minors Act; the Illinois WARN Act; the Illinois Religious Freedom Restoration Act; the Illinois Wage Payment and Collection Act; the Illinois Whistleblower Act; the Illinois Minimum Wage Law;  the Massachusetts Fair Employment Practices Act (Mass. Gen. Laws ch. 151B); the

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Massachusetts Minimum Fair Wages Act (Mass. Gen. Laws ch. 151); the Massachusetts Payment of Wages Act (Mass. Gen. Laws ch. 149); and the Massachusetts Equal Rights Act (Mass. Gen. Laws ch. 93, §§ 102-103); and any other federal, state, or municipal statute, order, regulation, or ordinance, including without limitation any fair employment practices, anti-discrimination, or civil rights laws, state or federal laws for wages, bonuses, incentive compensation, stock payments or appraisal rights, phantom stock payments or any other compensation or benefits; and

(iv)    all claims arising under common law, including but not limited to breach of contract (express or implied), breach of the covenant of good faith and fair dealing, intentional interference with contract, intentional infliction of emotional distress, negligence, defamation, invasion of privacy, violation of public policy, wrongful or retaliatory discharge, tortious interference with contract, and promissory estoppel, on account of, or any inquiry related to or in any way growing out of their employment by KMBS through the Effective Date, whether presently asserted or otherwise, known or unknown.

(b)    Each Party expressly agrees and understands that the release of claims contained in this Section 14 is a General Release and that any references to specific claims arising out of or in connection with Named Plaintiffs' employment are not intended to limit the release of claims.    Each Party expressly agrees and understands that this General Release means that the Releasing Parties are releasing, remising, and discharging the Releasees from and with respect to all claims, whether known or unknown, asserted or unasserted, and whether or not the claims arise out of or in connection with each Named Plaintiff's employment, or otherwise, to the extent permitted by law.    In exchange for providing this General Release, Defendant shall pay the Named Plaintiffs the Incentive Payments and their additional Settlement Payments as calculated in accordance with Sections 6 and 12.

15.    **Release by Settlement Class Members**.

(a)    Upon the Effective Date, in further consideration of the promises made by KMBS in this Agreement, the Settlement Class Members, including but not limited to the Claimants, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to release and forever discharge any and all claims against any of the Released Parties (as defined in Section 14) pertaining to hours of work or payment of wages arising out of or related to employment in a Covered Position, related to the subject matter of the Action, *Glass* or State Law Cases that were or could have been asserted in the Action, *Glass* or State Law Cases based on putative violations of any federal, state or local laws based on events that occurred or are alleged to have occurred at any time through the Effective Date, including without limitation claims under Texas wage and hour law, including but not limited to the Texas Minimum Wage

Act and the Texas Wage Payment Law; claims under New York state wage and hour laws and all wage orders, including but not limited to the New York Labor Law and New York Wage Payment Law; claims under Illinois wage and hour laws, including but not limited to the Illinois Wage Payment and Collection Act and the Illinois Minimum Wage Law; claims under Massachusetts wage and hour laws, including but not limited to the Massachusetts Minimum Wage Law (Mass. Gen. Laws ch. 151) and Payment of Wages Law (Mass. Gen. Laws ch. 149); and claims under the federal Fair Labor Standards Act. Collectively, these claims are referred to as the "Released Claims." The Parties stipulate and agree for purposes of this Agreement only that the Court has jurisdiction over all applicable state and local law claims pursuant to 28 U.S.C. § 1332(d).

(b)  In addition, as of the Effective Date, Claimants, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to release and forever discharge any and all claims under the Fair Labor Standards Act and state wage and hour laws against any of the Released Parties related to the subject matter of the Action, *Glass* or State Law Cases that were or could have been asserted in the Action, *Glass* or State Law Cases.

(c)  For the avoidance of doubt, each party understands that the release of claims contained in this Section 15 is a Limited Release and is less broad than the General Release provided by Named Plaintiffs.

## OTHER PROVISIONS

16.  **Non-Waiver**. No delay or omission by any Party in exercising any right under this Agreement shall operate as a waiver of that or any other right. A waiver or consent given by a Party on any one occasion shall be effective only in that instance and shall not be construed as a bar or waiver of any right on any other occasion. This clause shall not affect Section 4(b)(iii) regarding the tolling of the applicable statute of limitations.

17.  **Complete Agreement**. Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

18.  **Knowing and Voluntary Agreement**. Named Plaintiffs and Class Counsel each agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Plaintiffs further affirm that none of them have been coerced, threatened, or intimidated into signing this Agreement; that they have been advised to consult with an attorney; and that each of them in fact has consulted with an attorney before signing this Agreement. Class Counsel represents that they have

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

conducted a thorough investigation into the facts of the Action, *Glass*, and the State Law Cases and have diligently pursued an investigation of the claims asserted on behalf of Class Members against KMBS. Based on their own independent investigation and evaluation, Class Counsel state that they are of the opinion that the settlement is fair, reasonable, and adequate and is in the best interest of the Class Members, in light of all known facts and circumstances, including the risks of significant delay and defenses asserted by KMBS.

19. **Notices.** Any notices issued pursuant to the terms of this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows.

For Plaintiffs and Class Members to:         For KMBS to:

    Richard J. (Rex) Burch, Esq.                    Loren Gesinsky, Esq.
    Bruckner Burch PLLC                        Seyfarth Shaw LLP
    8 Greenway Plaza                          620 Eighth Avenue
    Suite 1500                              New York, NY 10018-1405
    Houston, Texas 77046                  Ph:   212/218-5557
    Ph:   713/ 877-8788                  Fax:  917/344-1193
    Fax:  713/877-8065                   lgesinky@seyfarth.com
    rburch@brucknerburch.com

    Galvin B. Kennedy, Esq.
    Kennedy Hodges PLLC
    711 W Alabama Street
    Houston, TX 77006
    Ph:   713/523-0001
    Fax: 713/523-1116
    gkennedy@kennedyhodges.com

20. **Severability**. If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed and enforced to effect the purposes thereof to the fullest extent permitted by law. If one or more of the provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.

21. **Governing Law**. This Agreement shall be governed by Texas law, without regard to that state's choice of law provisions. The Parties also hereby submit to the jurisdiction of the Court for all purposes relating to the review, approval and enforcement of the terms of this Agreement.

22. **Execution in Counterparts.** This Agreement may be executed in one or more counterparts, all of which shall constitute one agreement. The language of all parts of

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties.  This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Gary Watson | Date | Laura Garza | Date |
| John Glass | Date | Michael Green | Date |
| Frederick Person | Date | James Outlaw | Date |
| Shawn Kraft | Date | Derwin Allison | Date |
| Michael Johnson | Date | George Schiess | Date |
| Zbignew Lesniak | Date | | |

**CLASS COUNSEL**

Richard J. (Rex) Burch
Bruckner Burch PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

Galvin B. Kennedy
Kennedy Hodges LLP
711 W Alabama Street
Houston, TX 77006

14592495v.9

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

**<u>KMBS</u>**

_____     _____
Konica Minolta Business              Date
Solutions U.S.A., Inc.
100 Williams Drive
Ramsey, NJ   07446

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 23

<u>**KMBS**</u>

_____        April 3, 2013
Konica Minolta Business                          Date
Solutions U.S.A., Inc.
100 Williams Drive
Ramsey, NJ   07446

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties.  This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| _____ | Date | _____ | Date |
| Gary Watson | | Laura Garza | |
| _____ | Date | _____ | Date |
| John Glass | | Michael Green | |
| _____ | Date | _____ | Date |
| Frederick Person | | James Outlaw | |
| _____ | Date | *Derwin Allison* | 04/01/2013 |
| Shawn Kraft | | Derwin Allison | Date |
| _____ | Date | _____ | Date |
| Michael Johnson | | George Schiess | |
| _____ | Date | | |
| Zbignew Lesniak | | | |

## CLASS COUNSEL

| | |
|---|---|
| _____ | _____ |
| Richard J. (Rex) Burch | Galvin B. Kennedy |
| Bruckner Burch PLLC | Kennedy Hodges PLLC |
| 8 Greenway Plaza, Suite 1500 | 711 W Alabama Street |
| Houston, Texas 77046 | Houston, TX 77006 |

*KMBS Wage and Hour Litigation*

## SETTLEMENT AGREEMENT AND RELEASE/WAIVER

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties.  This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

### PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| _____ | Date | _____ | Date |
| Gary Watson | | Laura Garza | |
| _____ | Date | _____ | Date |
| John Glass | | Michael Green | |
| *Frederick Person* | 04/01/2013 | _____ | Date |
| Frederick Person | Date | James Outlaw | |
| _____ | Date | _____ | Date |
| Shawn Kraft | | Derwin Allison | |
| _____ | Date | _____ | Date |
| Michael Johnson | | George Schiess | |
| _____ | Date | | |
| Zbignew Lesniak | | | |

### CLASS COUNSEL

| | |
|---|---|
| _____ | _____ |
| Richard J. (Rex) Burch | Galvin B. Kennedy |
| Bruckner Burch PLLC | Kennedy Hodges PLLC |
| 8 Greenway Plaza, Suite 1500 | 711 W Alabama Street |
| Houston, Texas 77046 | Houston, TX 77006 |

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties. This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

<u>**PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES**</u>

| | | | |
|---|---|---|---|
| *Gary Watson* | 4-2-13 | *Laura Garza* | 4-2-13 |
| Gary Watson | Date | Laura Garza | Date |
| John Glass | Date | Michael Green | Date |
| Frederick Person | Date | James Outlaw | Date |
| Shawn Kraft | Date | Derwin Allison | Date |
| Michael Johnson | Date | George Schiess | Date |
| Zbignew Lesniak | Date | | |

<u>**CLASS COUNSEL**</u>

Richard J. (Rex) Burch
Bruckner Burch PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

Galvin B. Kennedy
Kennedy Hodges PLLC
711 W Alabama Street
Houston, TX 77006

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties.  This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

**PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES**

| | | | |
|---|---|---|---|
| _____ | Date | _____ | Date |
| Gary Watson | | Laura Garza | |
| _____ | Date | _____ | Date |
| John Glass | | Michael Green | |
| _____ | Date | _____ | 04/01/2013 |
| Frederick Person | | James Outlaw | Date |
| _____ | Date | _____ | Date |
| Shawn Kraft | | Derwin Allison | |
| _____ | Date | _____ | Date |
| Michael Johnson | | George Schiess | |
| _____ | Date | | |
| Zbignew Lesniak | | | |

**CLASS COUNSEL**

| | |
|---|---|
| _____ | _____ |
| Richard J. (Rex) Burch | Galvin B. Kennedy |
| Bruckner Burch PLLC | Kennedy Hodges PLLC |
| 8 Greenway Plaza, Suite 1500 | 711 W Alabama Street |
| Houston, Texas 77046 | Houston, TX 77006 |

*KMBS Wage and Hour Litigation*

## SETTLEMENT AGREEMENT AND RELEASE/WAIVER

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties. This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

### PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Gary Watson | Date | Laura Garza | Date |
| _____ 4/2/13 | _____ | _____ | _____ |
| John Glass | Date | Michael Green | Date |
| _____ | _____ | _____ | _____ |
| Frederick Person | Date | James Outlaw | Date |
| _____ | _____ | _____ | _____ |
| Shawn Kraft | Date | Derwin Allison | Date |
| _____ | _____ | _____ | _____ |
| Michael Johnson | Date | George Schiess | Date |
| _____ | _____ | | |
| Zbignew Lesniak | Date | | |

### CLASS COUNSEL

| | |
|---|---|
| _____ | _____ |
| Richard J. (Rex) Burch | Galvin B. Kennedy |
| Bruckner Burch PLLC | Kennedy Hodges PLLC |
| 8 Greenway Plaza, Suite 1500 | 711 W Alabama Street |
| Houston, Texas 77046 | Houston, TX 77006 |

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties.  This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

### PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Gary Watson | Date | Laura Garza | Date |
| John Glass | Date | Michael Green *(signed)* | 04/01/2013 |
| Frederick Person | Date | James Outlaw | Date |
| Shawn Kraft | Date | Derwin Allison | Date |
| Michael Johnson | Date | George Schiess | Date |
| Zbignew Lesniak | Date | | |

### CLASS COUNSEL

Richard J. (Rex) Burch
Bruckner Burch PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

Galvin B. Kennedy
Kennedy Hodges PLLC
711 W Alabama Street
Houston, TX 77006

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties.  This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

## PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| _____ | Date | _____ | Date |
| Gary Watson | | Laura Garza | |
| _____ | Date | _____ | Date |
| John Glass | | Michael Green | |
| _____ | Date | _____ | Date |
| Frederick Person | | James Outlaw | |
| _____ | Date | _____ | Date |
| Shawn Kraft | | Derwin Allison | |
| *Michael Johnson* | 04/01/2013 | _____ | Date |
| Michael Johnson | Date | George Schiess | |
| _____ | Date | | |
| Zbignew Lesniak | | | |

## CLASS COUNSEL

| | |
|---|---|
| _____ | _____ |
| Richard J. (Rex) Burch | Galvin B. Kennedy |
| Bruckner Burch PLLC | Kennedy Hodges PLLC |
| 8 Greenway Plaza, Suite 1500 | 711 W Alabama Street |
| Houston, Texas 77046 | Houston, TX 77006 |

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties. This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

**PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES**

| | | | |
|---|---|---|---|
| Gary Watson | Date | Laura Garza | Date |
| John Glass | Date | Michael Green | Date |
| Frederick Person | Date | James Outlaw | Date |
| Shawn Kraft | Date 04/01/2013 | Derwin Allison | Date |
| Michael Johnson | Date | George Schiess | Date |
| Zbignew Lesniak | Date | | |

**CLASS COUNSEL**

Richard J. (Rex) Burch
Bruckner Burch PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

Galvin B. Kennedy
Kennedy Hodges PLLC
711 W Alabama Street
Houston, TX 77006

14592495v.9

*KMBS Wage and Hour Litigation*

**SETTLEMENT AGREEMENT AND RELEASE/WAIVER**

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties. This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

### PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Gary Watson | Date | Laura Garza | Date |
| John Glass | Date | Michael Green | Date |
| Frederick Person | Date | James Outlaw | Date |
| Shawn Kraft | Date | Derwin Allison | Date |
| Michael Johnson | Date | George Schiess | Date |
| *Zbigniew Lesniak* | 04/01/2013 | | |
| Zbignew Lesniak | Date | | |

### CLASS COUNSEL

Richard J. (Rex) Burch
Bruckner Burch PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

Galvin B. Kennedy
Kennedy Hodges PLLC
711 W Alabama Street
Houston, TX 77006

*KMBS Wage and Hour Litigation*

## SETTLEMENT AGREEMENT AND RELEASE/WAIVER

Page 22

this Agreement shall in all cases be considered as a whole, according to its fair meaning, and not strictly for or against any of the parties. This Agreement shall not be valid and effective unless and until it has been executed by each of the Parties, including all of the Named Plaintiffs.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

### PLAINTIFFS / SETTLEMENT CLASS REPRESENTATIVES

| | | | |
|---|---|---|---|
| Gary Watson | Date | Laura Garza | Date |
| John Glass | Date | Michael Green | Date |
| Frederick Person | Date | James Outlaw | Date |
| Shawn Kraft | Date | Derwin Allison | Date |
| Michael Johnson | Date | George Schiess | Date 4/4/13 |
| Zbignew Lesniak | Date | | |

### CLASS COUNSEL

Richard J. (Rex) Burch
Bruckner Burch PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

Galvin B. Kennedy
Kennedy Hodges PLLC
711 W Alabama Street
Houston, TX 77006

14592495v.9



**Settlement Administration Estimate**
**Konica Minolta Business Solutions Settlement**
**February 11, 2013**

Prepared by:
**Eric W Bishop**
**SVP, Client Services**
**612-359-2968**
ebishop@rustconsulting.com

## EXPERIENCE
With experience on more than 1,500 labor and employment cases, we are the nation's largest labor and employment settlement administrator. We have managed settlements with class sizes ranging from 17 to multi-million class members. In fact, we've been trusted to administer many of the nation's largest settlements, including the nation's top wage-and-hour cases in recent years.

## DATA SECURITY
Our internal data security practices meet or exceed today's exacting industry standards. Our enterprise-class data security measures are founded on standard business processes including a vigorous employee screening program, ongoing employee security training and a hardened production data center hosted at a Tier 1 network carrier, all designed for ensuring data integrity and security.

## DEDICATED SPECIALISTS
Our labor and employment case team is strictly dedicated to managing settlement administration for cases involving matters such as wage-and-hour, FLSA, discrimination and ERISA. They're specialists, not generalists, with an industry reputation for responsiveness and expertise in relevant areas such as the applicable banking and tax regulations. We are confident that Rust is the best choice for the administration of your settlement.

| Project Summary | | | |
|---|---|---|---|
| Estimated Class Size | 800 | | |
| Estimated Filing Rate | 65.0% | | |
| | | | |
| **Project Cost** | | | **Key Assumptions** |
| Print & Mail Notice | $ | 3,322 | |
| CAFA Notice | $ | 3,100 | **CAFA Notice Included** |
| Telephone Support | $ | 2,810 | **65% Claims Filing Rate** |
| Processing and Administration | $ | 2,600 | **Telephone Support Included** |
| Fund Distribution & Tax Reporting | $ | 6,063 | |
| Project Management | $ | 19,375 | |
| Other Out-of-pocket Expenses | $ | 1,250 | |
| Total Project Cost | $ | 38,521 | |
| | | | |
| Total Project Cost Not to Exceed | $ | 40,000 | |
| (Assuming Scope within and No Court Delays) | | | |

**Thank you for considering Rust Consulting, Inc. as your settlement administrator -- we appreciate the opportunity to submit this estimate.**



EXHIBIT 1
to Settlement Agreement

Privileged and Confidential
Ex. 1 - Administrator Agreement



**Settlement Administration Estimate**
**Konica Minolta Business Solutions Settlement**
**February 11, 2013**

Prepared by:
Eric W Bishop
SVP, Client Services
612-359-2988
ebishop@rustconsulting.com

| Key Assumptions Used to Prepare this Estimate | | | | | |
|---|---|---|---|---|---|
| Class Size | 800 | | **Standard Hourly Rates\*** | |
| | | | | |
| Initial Mailed Notice: | | | SVP | $175-$275 |
| Mailed Notice | 800 | 100.0% | Senior Project Administrator | $160-$180 |
| Forwarded Notices | 20 | 2.5% | Project Manager | $100-$140 |
| Undeliverable Notices | 120 | 15.0% | Technical Consultant | $110-$180 |
| Re-Mailed Notices after Trace | 96 | 80.0% | Call Center Manager | $125 |
| | | | CSR | $ 43-$ 50 |
| Telephone Support: | | | Processor | $ 43-$ 50 |
| Number of Telephone Contacts | 200 | 25.0% | Other | $ 43-$125 |
| Connect Minutes per Call - CSRs | 5.0 | | *Subject to change* | |
| | | | | |
| Claimant Communications: | | | | |
| Claim Forms Received | 520 | 65.0% | | |
| Payments | 520 | 100.0% | | |

Additional Administration Assumptions Used to Prepare this Estimate:

Database Development: Receive and Process Database assumes that the data provided is complete with respect to the data components needed to mail and calculate settlement payments. Data that includes multiple records for individuals or work history that needs to be accumulated and totaled by individual generally requires additional efforts to bring to a point where it is final settlement data. These additional efforts can take a significant amount of time and should be considered when setting key settlement dates, especially the mailed notice deadline. Data must be provided in a complete, consistent, standardized electronic format. Rust's standard format is ASCII fixed width complete with field layout. Other formats may be accepted at Rust's discretion. Resources used to enhance or further develop non-standardized data will be billed on a time and materials basis according to Rust's Current Standard Hourly Rates.

CASS/NCOA/LACS: CASS - Coding Accuracy Support System; NCOA - National Change of Address; LACS - Locatable Address Conversion System.

Notice Package: Print and Mail per unit price is estimated. Actual prices will be provided after form is finalized prior to mailing. Notice package includes notice, claim form and exclusion form.

Telephone Support: Live Customer Service Representatives ("CSRs") will be available from the notice mail date until 60 days after fund distribution. Sixty days after fund distribution, an Interactive Voice Response ("IVR") system will replace live CSR support and provide the caller with an option of leaving a message to have a CSR return the call. One hundred eighty days after fund distribution, case-specific telephone support will be discontinued and the caller will be instructed to call Rust's tax line with tax specific questions, and otherwise to call class counsel.

Processing & Administration: Receipt and Process Claim Forms includes open, date stamp, label and data capture a 1-page claim form with up to five fields. Validate Claim Forms includes the process of accepting or rejecting claims, handling disputes and curing deficient claims.

Project Management: Project Management fees are estimated and will be billed on actual time expended based on the rates found in the Current Standard Hourly Rates section above. The rates included in the estimate are a blended estimate of the rates listed above.

Out of Pocket Expenses: Includes post office box rental, overnight shipments, postage, labels, travel, long distance and other miscellaneous charges and expenses.

**Pricing good for 90 days.**

Privileged and Confidential

Ex. 1 - Administrator Agreement



**Settlement Administration Estimate**
**Konica Minolta Business Solutions Settlement**
**February 11, 2013**

Prepared by:
Eric W Bishop
SVP, Client Services
612-359-2988
ebishop@rustconsulting.com

| Administrative Task | Estimated Quantity | | Per Unit | | Task Amount | | Total | |
|---|---|---|---|---|---|---|---|---|
| **Database Development** | | | | | | | | |
| Receive and Process Database | | | | $ | 500 | | $ | 500 |
| Additional Efforts to Finalize Settlement Data | | | | | As Incurred | | | |
| **CAFA Notice** | | | | | | | | |
| Prepare CAFA Notice | | | | $ | 1,750 | | | |
| Prepare CAFA CDs | 50 | Notices @ | $ | 15.00 | $ | 750 | | |
| Postage | 50 | Notices @ | $ | 12.00 | $ | 600 | $ | 3,100 |
| **Initial Mailed Notice** | | | | | | | | |
| CASS / NCOA / LACS Processing | | | | $ | 275 | | | |
| Print and Mail Notice Package | 800 | Notices @ | $ | 1.75 | $ | 1,400 | | |
| Postage - 1 Ounce First Class | 800 | Notices @ | $ | 0.46 | $ | 368 | $ | 2,043 |
| **Follow-up to Initial Notice** | | | | | | | | |
| Receive Undeliverable Notices and Update Database | 120 | Notices @ | $ | 2.00 | $ | 240 | | |
| Address Trace | 120 | Traces @ | $ | 1.15 | $ | 138 | | |
| Remail Notice Package | 116 | Notices @ | $ | 3.00 | $ | 348 | | |
| Remail Postage - 1 Ounce First Class | 116 | Notices @ | $ | 0.46 | $ | 53 | $ | 779 |
| **Telephone Support** | | | | | | | | |
| Telephone Support | 9 | Months @ | $ | 300 | $ | 2,700 | | |
| 800# Charges | 1,000 | Minutes @ | $ | 0.11 | $ | 110 | $ | 2,810 |
| - a minimum of $300 per month will be charged for telephone support | | | | | | | | |
| **Claims Processing and Administration** | | | | | | | | |
| Receipt, Process, and Validate Claim Forms | 520 | Claims @ | $ | 5.00 | $ | 2,600 | $ | 2,600 |
| Additional Administrative Services Requested by Client | | | | | | | | As Incurred |
| **Fund Distribution** | | | | | | | | |
| Print and Mail Payments | 520 | Payments @ | $ | 4.75 | $ | 2,470 | | |
| Postage - 1 Ounce First Class | 520 | Payments @ | $ | 0.46 | $ | 239 | | |
| Check Processing | 520 | Payments @ | $ | 0.20 | $ | 104 | | |
| Monthly Bank Account Fee | 6 | Months @ | $ | 175 | $ | 1,050 | $ | 3,863 |
| **Tax Reporting** | | | | | | | | |
| Annual Fee -Qualified Settlement Fund | 1 | Year @ | $ | 1,450 | $ | 1,450 | | |
| Individual Income Tax Reporting (W2 & 1099) | 1 | Year @ | $ | 750 | $ | 750 | $ | 2,200 |
| **Project Management** | | | | | | | | |
| Senior Vice President | 1 | Hours @ | $ | 225 | $ | 225 | | |
| Project Management | 110 | Hours @ | $ | 145 | $ | 15,950 | | |
| Technical Consulting | 20 | Hours @ | $ | 160 | $ | 3,200 | $ | 19,375 |
| **Other Charges and Out-of-pocket Costs** | | | | | | | | |
| | | | | | | | $ | 1,250 |
| **Total Settlement Administration Estimate** | | | | | | | **$** | **38,521** |
| **Total Settlement Administration Not to Exceed (Assuming Scope Above and No Court Delays)** | | | | | | | **$** | **40,000** |

Privileged and Confidential
Ex. 1 - Administrator Agreement



**Settlement Administration Estimate**
**Konica Minolta Business Solutions Settlement**
**February 11, 2013**

Prepared by:
Eric W Bishop
SVP, Client Services
612-359-2988
ebishop@rustconsulting.com

## Terms and Conditions

All claims administration services to be provided by Rust Consulting to Customer shall be subject to the following terms and conditions:

1. Services.  Subject to the terms hereof, Rust Consulting agrees to provide the Customer with claims administration services (hereinafter, "Claims Services") as specified in the Proposal provided to Customer to which these Terms and Conditions are attached.

2. Term.  The terms of this agreement will remain in effect until completion of the Claims Services, unless earlier terminated in accordance with Section 10 hereof.

3. Charges for Services.  Charges to the Customer for Claims Services shall be on a time and materials basis at our prevailing rates, as the same may change from time to time.  Any fee estimates set forth in the proposal are estimates only, based on information provided by Customer to Rust Consulting.  Actual fees charged by Rust Consulting to Customer may be greater or less than such estimate, and Customer shall be responsible for the payment of all such charges and expenses in accordance with Section 4 hereof.  Furthermore, Customer will be responsible for payment of all state and local sales and use taxes, if any, levied upon the charges payable by the Customer hereunder. Rust Consulting may derive financial benefits from financial institutions in connection with the deposit and investment of settlement funds with such institutions, including without limitation, discounts on eligible banking services and fees, and loans at favorable rates.

4. Payment of Charges.  Payment by Customer of Rust Consulting's monthly invoices shall be due upon receipt thereof.  Amounts unpaid after thirty (30) days are subject to a service charge at the rate of 1.5% per month or, if less, the highest rate permitted by law.  Decisions of the court and actions of the parties, including disapproval or withdrawal of a settlement, do not affect the Customer's liability to Rust Consulting for payment of Claims Services.   Claims Services are not provided on a contingency fee basis.

5. Confidentiality.  Rust Consulting agrees to implement and maintain reasonable and appropriate security measures and safeguards to protect the security and confidentiality of Customer data provided to Rust Consulting by Customer in connection herewith.  Should Rust Consulting ever be notified of any judicial order or other proceedings in which a third party seeks to obtain access to the confidential data created by or for the Customer. Rust Consulting will promptly notify the Customer, unless prohibited by applicable law.  The Customer shall have the option to (1) provide legal representation at the Customer's expense to avoid such access or (2) promptly reimburse Rust Consulting for any of its costs, including attorneys' fees, reasonably incurred in avoiding, attempting to avoid or providing such access and not paid by the entity seeking the data.  If Rust Consulting is required, pursuant to a court order, to produce documents, disclose data, or otherwise act in contravention of the obligations imposed by this Agreement, or otherwise, with respect to maintaining the confidentiality, proprietary nature and secrecy of the produced documents or disclosed data, Rust Consulting will not be liable for breach of said obligation.

6. Standard Banking Procedures.  In accordance with Rust Consulting's standard banking procedures, Rust Consulting will establish a demand deposit checking account (i.e. non-interest bearing) for funds received related to a distribution, unless directed otherwise in writing by the parties or unless the settlement agreement stipulates otherwise.  When directed to invest funds in an interest bearing or investment accounts, Rust Consulting intends to invest all funds in U.S. government backed securities, unless directed by the parties in writing or the settlement agreement or distribution plan to invest in other types of securities; however, even in cases where funds are temporarily placed in interest bearing or investment accounts, funds will eventually be migrated to a demand deposit checking account prior to a fund distribution.

7. Rights in Data.  Rust Consulting does not convey nor does the Customer obtain any right in the programs, system data, or materials utilized or provided by Rust Consulting in the ordinary course of business in the performance of this Agreement.

8. Document Retention.  Unless directed otherwise in writing by Customer, Rust Consulting will destroy undeliverable notice mail on the effective date of the settlement or the date that the disposition of the case is no longer subject to appeal or review, whichever is later.  Rust will maintain claim forms and other correspondence for one year after final distribution of funds or benefits, or until the date that the disposition of the case is no longer subject to appeal or review, whichever is later.  Rust Consulting will retain all bank and tax documents for such period of time as it determines is required to maintain compliance with various federal and state requirements.

9. Limitation of Liability; Disclaimer of Warranty.  Rust Consulting warrants that our services will be performed with reasonable care in a diligent and competent matter.  Our sole obligation will be to correct any non-conformance with this warranty.  Rust Consulting shall not be liable, whether under theories of contract, negligence or other tort, statutory duty or other theories of liability in an amount exceeding the total charges to the Customer for the specific work affected by the error or omission.  Rust Consulting will not be liable for any incidental, special, indirect, consequential or exemplary damages of any kind; or for any lost profits, lost opportunities, business interruption or for any liability incurred by the Customer or others to any third party. THE WARRANTIES SET FORTH HEREIN ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED, IMPLIED, OR STATUTORY, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE FOR PARTICULAR PURPOSE.

10. Termination.  The Claims Services to be provided under this Agreement may be terminated, at will by the Customer upon at least 30 calendar days' prior written notice to Rust Consulting.  The Customer's obligation to pay for services or projects in progress at the time of notice of withdrawal shall continue throughout that 30 day period.  Rust Consulting may terminate this Agreement (i) with 10 calendar days' prior written notice, if the Customer is not current in payment of charges or (ii) in any event, upon at least 3 months' prior written notice to the Customer.

11. Notice.  Any notice required or permitted hereunder shall be in writing and shall be delivered personally, by, or sent by registered mail, postage prepaid, or overnight courier service to the responsible officer or principal of Rust Consulting or the Customer, as applicable, and shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in United States mail, or, if sent by courier, one business day after delivery to such courier service.

12. Force Majeure.  To the extent performance by Rust Consulting of any of its obligations hereunder is substantially prevented by reason of any act of God or by reason of any other matter beyond Rust Consulting's reasonable control, then such performance shall be excused and this Agreement, at Rust Consulting's option, be deemed suspended during the continuation of such condition and for a reasonable time thereafter.

13. Nonwaiver of Rights.  No failure or delay on the part of a party in exercising any right hereunder will operate as a waiver of, or impair, any such right.  No single or partial exercise of any such right will preclude any other or further exercise thereof or the exercise of any other right.  No waiver of any such right will be effective unless given in a signed writing.

14. Jurisdiction.  The parties hereto irrevocably and unconditionally submit to the jurisdiction of the Court of the applicable case for purposes of any suit, action or proceeding to enforce any provision of, or based on any right arising out of, this Agreement.  The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding in the Court.

15. Survival.  All accrued payment obligations hereunder, any remedies for breach of this Agreement, this Section and the following Sections will survive any expiration or termination of this Agreement: Section 7 (Rights in Data); Section 5 (Confidentiality); Section 9 (Limitation of Liability; Disclaimer of Warranty), and Section 14 (Jurisdiction).

16. Entire Agreement.  These Terms and Conditions and the proposal embody the entire agreement between the parties with respect to the subject matter hereof, and cancels and supersedes all prior negotiations, representations, and agreements related thereto, either written or oral, except to the extent they are expressly incorporated herein.  No changes in, additions to, or waivers of, the terms and conditions set forth herein will be binding upon any party, unless approved in writing by such party's authorized representative.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| GARY WATSON, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>KONICA    MINOLTA    BUSINESS )<br>SOLUTIONS U.S.A., INC. )<br><br>Defendant. ) | Case No. 4:10-cv-00986<br><br>JOINT MOTION FOR<br>APPROVAL OF SETTLEMENT<br>AND CERTIFICATION OF<br>SETTLEMENT CLASS |

Plaintiffs, on behalf of themselves and all others similarly situated, and Defendant have reached a settlement of this lawsuit ("Settlement"). Because it easily meets the applicable standard, the Plaintiffs and Defendant (together, the "Parties") respectfully move this Court for approval of the Settlement memorialized in the Settlement Agreement attached as Exhibit 1. At this preliminary stage of the settlement process, the Parties respectfully request that the Court:

(i) grant preliminary approval of the proposed Settlement;

(ii) certify a settlement class pursuant to the provisions of Fed. R. Civ. P. 23(b)(3);

(iii) schedule a fairness hearing to consider final approval;

(iv) direct that notice of the proposed settlement and hearing be provided in a manner consistent with the Settlement Agreement and the notice schedule; and

(v) enter the proposed Order for Preliminary Approval.

The Parties' proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under federal law and falls well within the range of reasonable

EXHIBIT 2
of Settlement Agreement

settlements of the claims at issue.  Accordingly, the Parties request that the Court grant the requested relief.

## I.   PROCEDURAL HISTORY

Plaintiffs filed this case in this Court on March 25, 2010, asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), arising out of alleged failure to pay overtime compensation for hours worked in excess of forty per workweek (Dkt. 1).   On May 18, 2010, Plaintiffs filed an Amended Complaint (Dkt. 16). Defendant filed an Answer denying liability on June 7, 2010 (Dkt. 18).  On July 9, 2010, Plaintiffs moved for conditional certification of a nationwide collective action pursuant to § 216(b) of the FLSA (Dkt. 22).   On November 22, 2010, Magistrate Judge Johnson recommended that notice be sent to "current and former technical support employees" who worked for Defendant from March 25, 2007 in all states other than California (Dkt. 42), and this Court adopted that recommendation on December 22, 2010 (Dkt. 50). Notice was sent to a conditionally certified class of approximately 2,300 current and former employees in positions responsible for servicing business equipment in the field, and approximately 250 filed consents to join the litigation.

Subsequently, Plaintiffs commenced a similar action before this Court.[1] Several class members also filed cases asserting state law claims based on the same underlying allegations in Illinois, New York, and Massachusetts (collectively, the "State Court Actions").[2]

---

[1] *Gary Watson, Laura Garza, and John Glass, et al., v. Konica Minolta Business Solutions U.S.A., Inc.*, U.S. District Court for the Southern District of Texas, Civil Action No. 10-cv-0986 ("*Glass*").

[2] *Green, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, U.S. District Court for the Northern District of Illinois, Eastern Division, Civil Action No. 11-cv-3745 (filed on June 2, 2011 asserting claims for alleged violations of the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act);

14964519v.5

Counsel for the parties prepared for and engaged in formal mediation, which involved pre-mediation conferences and a full-day mediation conference with Linda Singer, Esq. of JAMS, a respected mediator in complex-wage-and-hour-class-action litigation. The mediation covered all pending cases filed by Plaintiffs' counsel against Defendant.  Although the Parties did not settle that day (and, in fact, seemed quite far apart in their respective positions during that mediation), they continued their negotiations, ultimately reaching the Settlement addressed here.  During formal discovery and prior to the mediation, the Parties conducted written discovery and numerous depositions, and exchanged thousands of pages of documents, data, and information, including electronically stored information with hundreds of thousands or more entries related to the dates of employment, weeks and hours worked in the class period, work activities, and compensation data of Class Members.

In sum, Plaintiffs and their counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in this litigation. In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to the Class, Plaintiffs and their counsel believe that the Settlement is in the best interests of the Class and represents a fair resolution of the claims brought in this litigation.

---

*Allison, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, U.S. District Court for the Southern District of New York, Civil Action No. 11-cv-4192 (filed on June 20, 2011, asserting claims for alleged violations of the New York Labor Law); and *Lesniak, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, Hampden County Superior Court, Civil Action No. 2011-00873 (filed on October 17, 2011 asserting claims for alleged violations of Massachusetts laws pertaining to payment of wages and hours of work; removed by KMBS to U.S. District Court for the District of Massachusetts, Civil Action No. 11-cv-12100, on November 28, 2011).

On February 15, 2013, Plaintiffs filed their Third Amended Complaint in this case, which asserts claims under the laws of Illinois, New York, and Massachusetts, in addition to FLSA claims.   Concurrently, Plaintiffs' counsel ("Class Counsel") filed notices of withdrawal with prejudice in the State Court Actions.

## II.    SUMMARY OF SETTLEMENT

The following summarizes the Settlement Agreement's terms:

### A.    The Settlement Classes

The Settlement includes two Settlement Classes, the "FLSA Class" and the "Rule 23 Class."  The FLSA Class includes individuals who filed consents to join the *Watson* or *Glass* Actions as of the date of the Settlement Agreement and who worked for KMBS in a "Covered Position,"[3] within the three (3) years prior to filing such consent.

The Rule 23 Class includes all individuals employed by KMBS in a Covered Position:

    i.       In Illinois at any time from April 1, 2004, through Preliminary Approval;

    ii.      In New York at any time from June 20, 2005, through Preliminary Approval; and

---

[3] "Covered Position" refers to any position responsible for servicing business equipment in the field, including without limitation job positions entitled BSC Tech II, BSC Tech IV, Color Imaging Specialist, Color Imaging Technician, Color Technician, Customer Imaging Integrator, Customer Imaging Specialist, Customer Imaging Specialist-GL, Customer Imaging Technician, Customer Technician, Digital Product Specialist, Doc Imaging Specialist, Field Tech, Imaging Integrator, Imaging Technician, Network Imaging Integrator, Network Integrator Specialist I, Production Imaging Print Specialist - Black &White, Production Imaging Print Specialist-Color/Black &White, Production Imaging Print Technician - BW, Production Imaging Print Spec-Color/BW-GL, Senior Customer Technician, Sr. Document Imaging Specialist, Sr. Color Imaging Specialist, Sr. Customer Imaging Specialist, Sr. Customer Imaging Specialist-GL, Sr. Network Imaging Integrator, System Integration Engineer, Systems Engineer, Tech Specialist I, Tech Specialist II, Office Services Associate 1, Office Services Associate 2, Office Systems Associate , Office Systems Associate 2, Office Systems Specialist, Office Systems Professional, Office Systems Expert, Solution Services Associate 1, Solution Services Associate 2, Solutions Specialist, Sr. Solutions Specialist, Solutions Integrator, Production Systems Technician, Production Systems Specialist, Production Systems Professional, Production Systems Expert , Shop Technician, In-House Technician, In-House Specialist, Sr. In-House Specialist , Service Team Lead, Manager-in-Training, and Technician.

iii.     In Massachusetts at any time from October 17, 2008, through Preliminary Approval.

The Parties seek certification of a class for purposes of settlement only.   The Parties' Settlement Agreement provides that the present request for certification of such class shall be null and void and shall not be used for any purpose, including any evidentiary purpose, if the Court does not approve the Settlement at any stage of the proceedings, including any denial of the parties requests for preliminary or final approval of the Settlement.

B.     Payments to Class Members

Defendant has agreed to establish a Settlement Fund of up to $4,350,000 to resolve the wage and hour claims of all Class Members. The Settlement Fund will be distributed to Class Members who have joined or will join this Settlement based on a detailed formula that accounts for the number of weeks each Class Member worked for Defendant during the class period in a covered position.  *See* Ex. 1 at § 12.

C.     Incentive Payments

The Settlement Agreement also contemplates incentive payments totaling $85,000 to the eleven Named Plaintiffs to acknowledge their service to the class.   The proposed incentive amounts are as follows: (1) Gary Watson $10,000; (2) John Glass $5,000; (4) Laura Garza $20,000; (5) Michael Green $7,500; (6) Shawn Kraft $7,500; (7) Fred Person $7,500; (8) James Outlaw $7,500; (9) Derwin Allison $5,000; (10) George Schiess $5,000; (11) Michael Johnson $5,000; and (12) Zbignew Lesniak $5,000.  Ex. 1 at § 6.  These payments would be in addition to any Settlement Payment that Plaintiffs receive as a Claimant in this matter.  In light of their efforts resulting in this settlement on behalf of the Settlement Classes, Plaintiffs are entitled to the Incentive Payment sought.

*See McClain v. Lufkin Ind., Inc.*, No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009).

      D.      <u>Settlement Administration and Notice</u>

      The Parties have agreed to use Rust Consulting, Inc. as the Settlement Administrator in this matter. The duties of the Settlement Administrator are set forth in Sections 8 through 13 of the Settlement Agreement. The cost of administering the Settlement is capped at $40,000. KMBS agrees to cooperate with the Settlement Administrator to ensure that it has all of the information reasonably necessary to perform its tasks. The Parties will provide the Court with a declaration from the Settlement Administrator of due diligence and proof of mailing with regard to the mailing of the Notice Packet prior to the Final Approval Hearing.

      The Parties' proposed notice and claims process provides that each Class Member would be informed of and given the opportunity to participate in this Settlement by receiving the following documents by first-class mail: (i) a Notice of Class Action Settlement which explains the terms and conditions of the Settlement, the proposed form of which is attached as Exhibit 1-A; (ii) a Claim Form which the Class Member may submit to participate in the Settlement, the proposed form of which is attached as Exhibit 1-B; and (iii) an envelope addressed to the Claims Administrator, which will assist the Class Member in returning the Claim Form to the Administrator.

      The proposed notice and claim form include all essential information about the lawsuit required under Rule 23, including the persons affected, the class definition, the nature of the action, the possibility of, and method for, excluding him or herself from the

Settlement, and an explanation of how to obtain additional information relating to the Settlement from the Claims Administrator and Class Counsel.

      E.      <u>Attorneys' Fees and Costs</u>

The Settlement Agreement provides that Class Counsel will move the Court for an award of attorneys' fees and costs.  Under the Settlement Agreement, Class Counsel will seek attorneys' fees not to exceed thirty-two and 14434/100000 percent (32.14434%) of the Maximum Settlement Amount plus reimbursement of costs not to exceed $157,438.10.  Ex. 1 at § 5.  KMBS will not object to Class Counsel's request for fees and costs up to that amount.

      F.    <u>John Glass Retaliation Claim</u>

The Settlement Agreement provides for payment to John Glass of $106,721.23 in consideration for him releasing his claim for retaliation.  Ex. 1 at § 6(d). Glass is the only class representative or class member who has a claim for retaliation.

## III.    PRELIMINARY SETTLEMENT APPROVAL

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *In re Chicken Antitrust Litigation American Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (noting "strong judicial policy favoring settlements" and "realization that compromise is the essence of settlement"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); 2 Herbert

B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992) (collecting cases). The proposed Settlement, therefore, is the best vehicle for Class Members to receive the relief they seek in a prompt and efficient manner.

For FLSA claims in particular, a court should approve a settlement that is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States, U.S. Dep't. of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982). If a settlement in an FLSA suit does reflect such "a reasonable compromise over issues," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. In this case, the Parties have reached a fair and reasonable resolution for the reasons explained below, and the Court thus should approve the settlement of the FLSA claims.

Approval of the settlement of plaintiffs' class-action-state-law claims should be considered pursuant to Fed. R. Civ. P. 23 in a three-step procedure:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Litigation (Fourth)* at §§ 21.632-34 (2004). This procedure, used by courts in this Circuit and endorsed by the leading class-action treatise, safeguards the due-process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22 *et seq.*

The decision to approve a proposed settlement is committed to the district court's sound discretion.  *See In re Chicken Antitrust Litigation American Poultry*, 669 F.2d at 238.  With this motion, the Parties request that the Court take the first step in the settlement-approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class-action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile.  2 Newberg & Conte, § 11.25 at 11-36, 11-37.  At the formal fairness hearing, class members may be heard and further evidence concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

A.    The Criteria for Preliminary Settlement Approval Are Satisfied.

A proposed class settlement should be preliminarily approved if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Parker v. Anderson*, 667 F.2d 1204 (5th Cir.1982); *see also  Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004).   To determine whether a settlement meets these criteria and should be preliminarily approved, courts in the Fifth Circuit use a six-factor test, in which they consider:

> (1) evidence that the settlement was obtained by fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the stage of the litigation and the amount of discovery completed;
> (4) the probability of plaintiffs' prevailing on the merits;
> (5) the range of possible recovery and certainty of damages; and
> (6) the opinions of class counsel, class representatives, and absent class members.

*See, e.g., Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir.1983); *In re Enron Corp. Securities, Derivative &*

*"ERISA" Litigation*,  228 F.R.D. 541, 554 (S.D. Tex. 2005).   The Parties' Settlement meets all of these criteria for the reasons explained below.

### 1.   The Settlement Is the Product of Bona Fide Negotiations.

There is no evidence of any collusion whatsoever between counsel for Plaintiffs and Defendant in this case.   To the contrary, counsel for each Party has vigorously advocated their respective positions.   The fact that a class-action settlement is reached after arms-length negotiations by experienced counsel generally gives rise to a presumption that the settlement is fair, reasonable, and adequate.   *See, e.g., In re: Trail Derailment Near Amite, La.*, 2006 WL 1561470 at *19 (E.D. La. May 24, 2006) (*citing Newberg on Class Actions, 3d ed.* (1992) § 11.41); *Manual for Complex Litigation¸* § 30.41 (1995)).   Settlement here was reached only after considerable litigation of the underlying cases including, as described further below, after the Parties engaged in substantial discovery.   The negotiation of this settlement was contentious and conducted at arms-length.   Counsel for both parties relied on their respective substantial litigation experiences in similar wage-and-hour class actions and thorough analysis of the legal and factual issues presented in this case.

The Parties prepared for and engaged in formal mediation in New York with experienced mediator Linda Singer, Esq. After the scheduled mediation, the Parties continued to negotiate, exchanging numerous post-mediation communications, including many with the mediator.   Since reaching a settlement in principle, the Parties' counsel have continued to engage in arms-length, informed negotiations regarding the terms of the settlement and the content of the Settlement Agreement, the proposed notice and claim forms, and this joint motion.

### 2.   *Continued Litigation Would Be Complex, Expensive, and Lengthy.*

The time and cost of further litigation in this case also favors settlement.  *See In re: Enron Corp. Securities, Derivative & ERISA Litigation*, 228 F.R.D. 541 at 565 (S.D. Tex. 2005 (approving class-action settlement because "the settlement avoids the risks and additional great expense inherent in these challenges in a vigorously litigated action"). This case is now over two years old and, with continued litigation, motion practice, and appeals, could easily last additional years.

Indeed, absent this settlement, the Parties would continue, as they have throughout, to vigorously litigate this case.  Continued litigation would require that the Parties engage in additional extensive and expensive discovery in three of the underlying actions, including numerous depositions.  Thereafter, the Parties would be required to undertake the burden and expense of briefing class certification and summary judgment and potentially of preparing for one or more complex trials.  Post-trial litigation, including appeals, would likely follow.  While additional litigation would inevitably be costly, it would not inevitably reduce the risks the litigation holds for the Class.  When balanced against the tremendous time and cost associated with continued litigation, the immediate recovery provided for with this Settlement favors a determination that the settlement is fair, reasonable and adequate.

### 3.   *Significant Discovery and Other Litigation Has Occurred.*

The significant amount of litigation and discovery conducted in the underlying cases prior to settlement being reached favors a finding that the settlement is fair.  This litigation has progressed to a stage where the parties are able to evaluate the merits of the case and the probable course for future litigation.  *See In re: Combustion, Inc.*, 968 F.

11

Supp. 116, 1127 (W.D. La. 1997) (holding that after years of motion practice and discovery, the parties "were in an excellent position to assess their respective positions"). As explained above, this complex class action was resolved only after more than two years of hard-fought litigation involving extensive research, analysis, discovery, and motion practice. The Parties have exchanged documents and data and conducted numerous depositions. Accordingly, the Parties have completed sufficient discovery to understand the strengths and weaknesses of their case before a settlement was reached.

4. *The Settlement is Fair In Relation to the Strength of Plaintiffs' Case.*

Balancing the strength of Plaintiffs' case against the amount offered in settlement favors a finding that the proposed settlement is fair, reasonable and adequate. When assessing this factor, "the district court's 'evaluation is not and cannot involve a trial on the merits,' because the policy of encouraging settlements is effected by 'the very uncertainty of the outcome of the litigation and the avoidance of wasteful litigation and expense.'" *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 228 F.R.D. at 553 (citing *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195 (5th Cir. 1981)); *see also Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (court should avoid "try[ing] the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial.") (internal quotations and citations omitted). Instead, the Court should consider "the various risks and costs that accompany continu[ed] litigation." *Donovan v. Int'l Brd. Of Teamsters*, 778 F.2d 298, 309 (7th Cir. 1985). As one court has explained,

> It is not necessary, nor expected, that plaintiffs obtain through settlement all that would have been realized through a victorious trial. It is the intrinsic nature of a settlement that no party will completely fulfill its absolute goals, *Fox v. Glickman Corp.*, 253 F. Supp. 1005, 1012 (S.D.N.Y. 1968), but rather that, after considering all the relevant

12

> circumstances, it is resolved by all involved that it is in their best interests to terminate the litigation on the basis of a fair and reasonable compromise.

*Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976).  This settlement is a fair and reasonable compromise.

Defendant vigorously asserts that Plaintiffs' claims are meritless, already filed a summary-judgment motion in the *Green* case, and intended to file similar motions and otherwise pursue its defenses in all of the related cases if a settlement in principle had not been reached.  Plaintiffs, of course, dispute Defendant's position, but recognize the legal and evidentiary risks they would face at a protracted trial.  To establish liability and damages for the allegations at issue here, individual testimony would be required concerning the particular circumstances of each employee.  This would boil down to testimony from individual employees and rebuttal testimony from Defendant's supervisors and managers.  Putting aside the significant time and expense of putting on possibly hundreds of witnesses, it is impossible to guarantee whose witnesses a jury would find more persuasive.  *See Parker v. Anderson*, 667 F.2d 1204, 1209-10 (5th Cir. 1982) (upholding settlement class and finding that district court properly considered conflicting testimony as risk to plaintiffs' chances of prevailing on merits); *In re Compustion*, 968 F. Supp. 116, 1128 (W.D. La. 1997) (recognizing that class settlement was proper where plaintiffs would face significant legal and evidentiary hurdles if case was not resolved).  The Settlement Agreement, by contrast, provides an immediate award to all Class Members.

Moreover, the terms of the settlement are fair to Class Members.  The consideration to be paid by Defendant to the Class Members is considerable and the plan of allocation is reasonable.  The Settlement provides for an amount of up to $4,350,000 to

13

be paid to and on behalf of Class Members. The share of the settlement amount for each Class Member is proportionate to the total number of weeks worked by him or her during their employment with KMBS.

Ultimately, Class Counsel believes that the proposed settlement is fair, reasonable and adequate when balanced against the strength of their clients' case. Defendant's Counsel does not dispute this determination.

5. *The Range of Possible Recovery Supports the Settlement.*

Additionally, the range of recovery for Plaintiffs' action supports the Settlement. Courts consider "the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point that is fair to the plaintiff settlors." *Neff v. By Metropolitan Transit Auth.,* 179 F.R.D. 185, 210 (W.D. Tex. 1998) (quoting *In Re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 213 (5th Cir. 1981)). "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Parker v. Anderson,* 667 F.2d 1204, 1210 n.6 (5th Cir.), *cert. denied,* 459 U.S. 828 (1982) (internal quotation omitted). As explained above, Plaintiffs and Class Members are not certain to recover any damages if this case is litigated further, whereas settlement provides an immediate award to all Class Members. Moreover, the settlement amount of up to $4,350,000 represents a reasonable compromise based upon Class Counsel's assessment of the damages at issue.

14

6.   *Class Counsel and Class Representatives Support the Settlement.*

Class Counsel are very experienced in class-action litigation, and had a substantial amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the Settlement.   In Class Counsel's opinion, the Settlement is fair, reasonable, and adequate.   In appraising the fairness of a proposed settlement, the opinion of experienced counsel is entitled to great weight.   *See Cotton v. Hinton*, 559 F.2d 1236, 1330 (5th Cir. 1977) ("the trial judge, absent fraud, collusion or the like, should be hesitant to substitute its own judgment for that of counsel").   "Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of fraud or over-reaching."   *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Col. 1974); *accord Zerkle v. Cleveland Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971).   Such considerations support approval of the Settlement here.

At this preliminary stage, the Parties are unaware of any opposition to the Settlement.   Class Counsel and the named Plaintiffs believe that this settlement is fair, equitable, and reasonable to all members of the putative Class.   The Named Plaintiffs were kept informed of the settlement negotiations and have directed their counsel to settle the case in accordance with the terms in the Settlement Agreement.   After receiving Preliminary Approval from this Court, Notice is to be sent to the Class Members.   A further in-depth inquiry into this element may be conducted by the Parties and this Court after assessing the response of the Class to that Notice.

B.   The Parties' Proposed Notice and Claims Process Is Fair and Adequate.

The notice and claims process set forth in the Settlement Agreement provides proper notice to affected individuals.   "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed

settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

The Parties here propose to send each Class Member the Notice and Claim Form attached as Exhibits 1-A and 1-B by first class U.S. mail, with the Claims Administrator to take appropriate follow-up steps regarding notices that are returned as undeliverable. Rule 23 requires that a court facilitate the "best notice" to class members that conveys the needed information "clearly and concisely in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). The short but thorough notice proposed by the Parties is likely to be read by Class Members, and if it is read it is likely to be understood. In addition, if the Class Members have any questions regarding the case or the Settlement, they are provided and encouraged to use the contact information for both the Claims Administrator and Class Counsel. Accordingly, the Parties' proposed notice and claims procedure meets the requirements of Rule 23, and they request that this Court approve the attached forms.

C.    Scheduling a Final Approval Hearing Is Appropriate.

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence, objections, and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval. In addition,

Class Members, or their independent counsel, may be heard in support of or in opposition to the Settlement.  The Court can determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e).  Pursuant to 28 U.S.C. § 1715, the Final Approval Hearing must occur not less than one hundred (100) days after the Court enters the Preliminary Approval Order.

      D.     The Proposed Attorneys' Fees Are Reasonable.

The proposed attorneys' fees, which will be at most one-third of the maximum settlement amount, are fair and reasonable.  *See, e.g., In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (awarding 35.1%).  Defendant has agreed not to object to such a request.  Class Counsel's support for the award of attorneys' fees and costs will be more fully set forth in their attorneys' fee application to the Court.

      E.     The Proposed Incentive Payments Are Reasonable.

The proposed Incentive Payments are intended to recognize the named Plaintiffs' initiative and efforts on behalf of the Class, as well as their execution of general releases (as opposed to the limited releases executed by the remainder of the Class Members). Each named Plaintiff agreed to pursue litigation on behalf of the Class, and each participated in the investigation and prosecution of this matter.  Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incur during class action litigation. *See, e.g., McClain v. Lufkin Ind., Inc.*, No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009); Herr, Manual for Complex Litigation, §30.42 (West Group 2001).  Moreover, the proposed incentive payments to all 12 named Plaintiffs, which total $85,000, are reasonable.  *Camp v.*

*Progressive Corp.,* 2004 WL 2149079, at 7 (E.D. La. 2004) (authorizing payment of $102,000 as incentive awards to class representatives for work done benefiting the class and risks incurred for serving as class representatives) Plaintiffs were instrumental in assisting counsel in developing case strategies, reviewing evidence, gathering support from co-workers in support of class certification, attending vigorous and full-day depositions in many cases, reviewing pleadings and motions, keeping in contact with class counsel, running the risk of retaliation and generally championing the rights of the class members who did not actively participate in this contentious litigation over three years.

F.   The consideration paid to John Glass for his retaliation claim is reasonable

KMBS or its predecessor hired John Glass in approximately December 1999. Glass was the first technician to contact Plaintiffs' counsel to investigate potential claims against KMBS for violation of wage and hour laws.  Without his initial participation, no class member would have ever made recovery in this case.   He was instrumental in developing the case theories, gathering evidence to support those theories and gathering support from former co-workers.  Of the 12 class representatives, Glass was the only one who was a current employee at the time he became part of the lawsuit as a class representative.   He was the only class representative who ran the risk of retaliation by KMBS through termination, reduction in hours, reduction in pay, etc.

He became a class representative on May 18, 2010.  Six days later, on May 24, 2010, KMBS terminated his employment after having worked with the company for approximately 10 years.   Thereafter, Plaintiffs filed their Second Amended Complaint alleging John Glass was terminated in retaliation for exercising his rights under the

18

FLSA.  KMBS vigorously disputes that its decision to terminate Glass was motivated in any way by his participation in this lawsuit as a class representative or otherwise.  KMBS claims it terminated Glass for reasons wholly unrelated to his claim under the FLSA.

Shortly after his termination, Glass developed cancer and had to undergo chemical and radiation therapy.  He did not have the benefits of the KMBS medical insurance plan and had to purchase his own policy, which had a substantially higher deductible and premium charges.  He remained unemployed for the vast majority of the three-year period since his termination in May 2010. If Glass prevails on his claim, Plaintiffs contend he would be entitled to recover more than $200,000 in lost wages, lost benefits, attorneys' fees and liquidated damages.

As part of the settlement Agreement, KMBS has agreed to pay Glass $106,721.23 to resolve his retaliation claim and all other causes of action not covered by the class settlement. While all of the consideration is being paid by KMBS, Plaintiffs' counsel have agreed to reduce the maximum fee they may apply for from 33.33333% to 32.14434% (a 1.18899% or $51,721.23 reduction in attorney's fees) to make more funds available to Glass.  That is, $51,721.23 of the $106,721.23 paid by KMBS to Glass for his retaliation claim is made available from a reduction in attorneys' fees paid to class counsel, and the balance is made available from the Maximum Settlement Class Payment Amount.   Payment of the retaliation claim is fair to the class members because approximately half of the total consideration paid to Glass comes from a reduction in fees, instead of from a reduction from the funds available to the class. Indeed, case law supports having the entire consideration come from funds available to the class. *See Sand v. Greenberg*, 2011 WL 7842602, at 3 (S.D.N.Y. 2011) (approving incentive awards of

$10,000 each totaling 9.5% of total class action settlement fund as incentive awards and an additional $7,500 as compensation for retaliation claims and release of such claims by a class representative); *Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at 7-8 (S.D.N.Y. 2010) (approving $15,000 incentive award payments to each of the fifteen class representatives and a separate payment of $40,000 to two class representatives to resolve their retaliation claims, all of which came from the total settlement fund.)

## IV.   PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

The Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *See, e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 591 (1997); *In re Beef Industry Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979) ("tentative or temporary settlement classes are favored"); *In re: the Prudential Insurance Company of America Salespractices Litigation* ("*Prudential II*"), 148 F.3d 283 (3d Cir. 1998); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998);. Certification of a settlement class is warranted here because all the elements of a Rule 23 class are met with respect to the proposed settlement.

A.   The Elements of Rule 23(a) are Satisfied in the Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, named plaintiffs must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also, e.g., Prudential II,* 148 F.3d at 308-09. Here, all four elements easily are satisfied.

      B.    <u>Numerosity Under Rule 23(a)(i)</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."   Plaintiffs "may demonstrate numerosity by some evidence of a reasonable estimate of the number of members of the putative class, but need not provide a precise number. *James v. City of Dallas, Tex.,* 254 F.3d 551, 570 (5th Cir. 2001) "Impracticability does not mean impossibility."   Courts generally treat a proposed class of at least forty (40) members as meeting the numerosity requirement of Rule 23(a)(1). *See, e.g., Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001) ("generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"); *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed at level of forty class members). Numerosity is indisputable here, where the proposed class includes approximately 800 individuals.

      C.    <u>Commonality Under Rule 23(a)(2)</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."   The commonality requirement is met if the putative class members share "at least one issue, the resolution of which would affect all or a substantial number of class members."   *In re Enron Corp. Securities, Derivative & "ERISA" Litigation,* 228 F.R.D. at 555 (internal citation omitted); *see also Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982) (rule requires only that resolution of common questions affect all or substantial number of class members).   Rather than requiring that all questions of law or fact be

common, Rule 23 only requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See* Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10, at 3-50 (3d Ed. 1992); *accord In re Enron Corp. Securities, Derivative & "ERISA" Litigation,* 228 F.R.D. at 555. Certification is appropriate where the class claims arise "from a 'common nucleus of operative fact' regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *In re Asbestos Sch. Litig,,* 104 F.R.D. at 429. Here, commonality is met inasmuch as the claims of the Class Representatives and all Class Members are predicated on the core common issue of whether KMBS paid them all wages owed. This is the paradigm, particularly in a settlement context, of a common issue sufficient to meet the 23(a)(2) standard.

> D.     Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiffs' claims be "typical" of those of other class members. The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.l3 (1982). The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative. *Id.*; *Prudential II,* 148 F.3d at 311. "Typicality refers to similarity, but not complete identity, between plaintiffs" legal and remedial theories and those of the class members; it does not require identity of claims, but only that the class representatives claims share

essentially the same characteristics as those of the class members." *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 228 F.R.D. at 555; *see also Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (typicality "focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims"). "Where the claims arise from the same course of conduct and are brought under the same legal theory, factual differences are inconsequential." *Id.* (citing *James*, 254 F.3d at 571). Here, too, this requirement is met by the proposed Settlement Class inasmuch as the claims present all arise from a common alleged course of conduct by Defendant.

E.     Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." "Adequacy is weighed by examining" two factors: "the zeal and competence of representative plaintiffs' counsel and the willingness and ability of the class representatives to take an active and controlling role in the litigation to protect the absent class members, who will be conclusively bound by a judgment in the class action." *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 228 F.R.D. at 556 (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)). The class representatives "are inadequate only if the differences between them and the putative class members create conflicts between the plaintiffs' interests and the class members' interests." *Id.* (citing *James*, 254 F.3d at 571). These two components are designed to ensure that absentee class members' interests are fully pursued. The existence of the elements of  adequate representation are presumed in the absence of evidence to the

contrary.  *See, e.g., In re Asbestos Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984) (citing *Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982)); *Cook v. Rockwell Int'l Corp.*, 151 F.RD. 378, 386 (D. Colo. 1993).   Adequacy is easily met here.   Plaintiffs' attorneys, the proposed Class Counsel, are experienced and competent in complex litigation and have an established track record in employment law, including, specifically, wage-and-hour cases.  In turn, the class representatives have no interests that are antagonistic to the class and they have fully demonstrated their allegiance to this litigation through their testimony and responses to discovery.

F.   The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

In this Motion, the parties seek certification of classes for settlement purposes only.   The requirements for a certifying a settlement class under (b)(3) are lessened compared to a litigation class.  *See Borcea v. Carnival Corp.*, 2006 WL 3458174 (S.D. Fla. 2006) ("because a settlement class action obviates a trial, the [trial] court judge deciding whether to certify a settlement class action 'need not inquire whether the case, if tried, would present intractable management problems'") (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).   The Parties' Settlement Agreement expressly provides that the class certification sought by this motion shall be of no effect if the Court does not ultimately approve the settlement, and no party will rely on the Court's provisional certification of classes for settlement purposes if any part of the case survives.

Even if the Court were to analyze the proposed settlement classes under Rule 23(b), it is clear that the proposed settlement classes meet the requirements of Rule 23(b)(3). Under 23(b)(3), a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U. S. at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *In re Sugar Industry Antitrust Litig.,* 73 F.RD. 322, 344 (E.D. Pa. 1976). The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339 (N.D. Ill. 1978); *Dietrich, 192* F.R.D. 119 (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. *See In re Telectronics Pacing Sys.,* 172 F.RD. 271, 287-88 (S.D. Ohio 1997). In this regard, courts generally focus on the liability issues and if these issues are common to the class, common questions are held to predominate over individual questions. *See id.*

For purposes of the Settlement, common questions of law and fact predominate. The Settlement relates to alleged corporate-wide compensation practices pursuant to which employees in positions responsible for servicing business equipment in the field have not been paid for all hours worked. Moreover, the merits of Defendant's defense

25

that it has fully compensated all such employees is not relevant to the disposition of this motion because the Parties' Settlement will provide compensation to all individuals.  This presents common operative facts and common questions of law which predominate over any factual variations in the hours worked and application of Defendant's policies to individual Class Members.

The Rule 23(b)(3) superiority requirement is also met because this Settlement will resolve the pending off-the-clock lawsuits against Defendant in a single, consolidated proceeding, thereby obviating the need for multiple, parallel lawsuits. Given the commonality of claims relating to an alleged standard policy of Defendant, there would be little or no interest for each Class Member to proceed with their own case.  Indeed, the plan for distribution of the settlement proceeds treats all equitably by providing payments based upon weeks of employment.  Accordingly, there is no danger that individual variations, type or magnitude of damage suffered by individual class members will affect predominance, as the Class Representatives claim to have suffered the same type of damages — and seek the same type of relief — as members of the proposed classes. Moreover, the settlement provides Class Members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the injured plaintiff will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials, including trials in each of the lawsuits being settled herein.

Accordingly, in the settlement posture in which the case now stands, the matter should be conditionally certified for settlement purposes.

## Conclusion

For the foregoing reasons, the parties respectfully request that this Court enter an Order: (1) conditionally certifying a class action for purposes of settlement pursuant to Fed. R. Civ. P. 23(b)(3); (2) preliminarily approving the parties' proposed settlement; (3) directing notice to class members regarding settlement on a final and complete basis; and (4) scheduling a final fairness hearing for the purpose of determining final approval of the

Respectfully submitted,

KENNEDY HODGES, L.L.P.

By:  /s/ *Galvin B. Kennedy*
    Galvin B. Kennedy
    Federal Bar No. 00796870
    Don J. Foty
    Federal Bar No. 24050022
    711 W. Alabama St.
    Houston, Texas 77006
    Telephone: 713-523-0001
    Facsimile:  713-523-1116

*Lead Counsel for Plaintiffs and* **Class Members**

And

SEYFARTH SHAW LLP

By:  /s/ *Loren Gesinsky*
    Loren Gesinsky
    620 Eighth Avenue
    New York, NY 10018
    Telephone: 212-218-5500
    Facsimile: 212-218-5526

*Lead Counsel for Defendant*

27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all opposing parties pursuant to the Federal Rules of Civil Procedure on April 4, 2013.

*Via ECF*
Loren Gesinsky
SEYFARTH SHAW L.L.P.
620 Eighth Ave., 32nd Fl
New York, NY 10018
*Attorney for Defendant*

*Via ECF*
Timothy M. Watson
SEYFARTH SHAW L.L.P.
700 Loiusuana St., Ste. 3700
Houston, TX 77002
*Attorney for Defendant*

/s/ *Galvin B. Kennedy*
Galvin B. Kennedy

28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GARY WATSON, et al., on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.<br><br>Defendant. | Case No. 4:10-cv-00986<br><br>[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT |

Upon consideration of the Parties' Joint Motion for Approval of Settlement and Certification of Settlement Class (the "Joint Motion"), together with the parties' proposed Class Action Settlement Agreement, the proposed Notice of Class Action Settlement, Claim Form, and other attachments thereto, the Court hereby ORDERS as follows:

1.    The Court grants preliminary approval of the settlement based upon the terms set forth in the Settlement Agreement, Release, and Waiver ("Settlement Agreement") filed with the Court.  The settlement appears to be fair, adequate, and reasonable to the class;

2.    The settlement falls within the range of reasonableness and appears to be presumptively valid, subject only to any objections that may be raised at the final hearing;

3.    The Court approves, as to form and content, the Notice of Class Action Settlement, Proposed Settlement Agreement, and Hearing Date ("Notice"), attached as Exhibit 2(B) to the Settlement Agreement, and the Claim Form, attached as Exhibit 2(C).

4.    The Court directs the mailing of the Notice and Claim Form by first class mail to the Settlement Class Members in accordance with the schedule set forth in the

EXHIBIT 2(A)
of Settlement Agreement

Ex. 2a - Preliminary Approval Order

Settlement Agreement.  The Court finds that the dates selected for the mailing and distribution of the Notice and Claim Form meet the requirements of due process and provide the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto;

5.      The Court orders that the settlement class is preliminarily certified for settlement purposes only;

6.      The Court confirms Richard J. (Rex) Burch and Galvin B. Kennedy as Class Counsel, subject to final approval by the Court following a further motion by Class Counsel;

7.      The Court hereby approves Rust Consulting, Inc. as the settlement administrator; and

8.      The Court enjoins Class Members from filing or prosecuting any claims, suits or administrative proceedings regarding claims released by the Settlement unless and until such Class Members have filed valid Request for Exclusions with the Settlement Administrator and the time for filing claims with the Settlement Administrator has elapsed.

So Ordered,

_____

The Honorable Sim Lake
United States District Court
Southern District of Texas

Dated: _____

2

*Watson, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*
**U.S. District Court for the Southern District of Texas**
**Case No. 10-cv-0986**

# NOTICE OF CLASS ACTION SETTLEMENT

**If you were employed by Konica Minolta Business Solutions U.S.A., Inc. as an hourly employee in a position responsible for servicing business equipment in the field in Illinois, New York, or Massachusetts between April 1, 2004 and ___[preliminary approval]__, a proposed Class Action Settlement could affect your rights**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The proposed agreement will provide up to $4,350,000 to settle claims of employees who worked in certain positions during their employment.

- To qualify, you must have worked at Konica Minolta Business Solutions U.S.A., Inc. ("KMBS") as an hourly employee in a position responsible for servicing business equipment in the field and meet the criteria described below.

- Your legal rights may be affected by this proposed settlement.

- Your rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

## Read this notice carefully.

**What is this Notice About?**
A settlement has been proposed in a class-action lawsuit that affects a group or "Class" of people and KMBS. The lawsuit claims that some of KMBS's hourly employees performed work for which they were not compensated. KMBS denies these allegations. The parties have now reached a proposed resolution of their dispute.

This Notice informs you of your rights and options regarding the Settlement.

**Am I a Member of the Class?**
You are a Class Member if you were employed by Konica Minolta Business Solutions U.S.A., Inc.

("KMBS") as an hourly employee in a position responsible for servicing business equipment in the field, including without limitation job positions entitled BSC Tech II, BSC Tech IV, Color Imaging Specialist, Color Imaging Technician, Color Technician, Customer Imaging Integrator, Customer Imaging Specialist, Customer Imaging Specialist-GL, Customer Imaging Technician, Customer Technician, Digital Product Specialist, Doc Imaging Specialist, Field Tech, Imaging Integrator, Imaging Technician, Network Imaging Integrator, Network Integrator Specialist I, Production Imaging Print Specialist - Black &White, Production Imaging Print Specialist-Color/Black &White, Production Imaging Print Technician - BW, Production Imaging Print Spec-

EXHIBIT 2(B)
to Settlement Agreement

Color/BW-GL, Senior Customer Technician, Sr. Document Imaging Specialist, Sr. Color Imaging Specialist, Sr. Customer Imaging Specialist, Sr. Customer Imaging Specialist-GL, Sr. Network Imaging Integrator, System Integration Engineer, Systems Engineer, Tech Specialist I, Tech Specialist II, Office Services Associate 1, Office Services Associate 2, Office Systems Associate , Office Systems Associate 2, Office Systems Specialist, Office Systems Professional, Office Systems Expert, Solution Services Associate 1, Solution Services Associate 2, Solutions Specialist, Sr. Solutions Specialist, Solutions Integrator, Production Systems Technician, Production Systems Specialist, Production Systems Professional, Production Systems Expert , Shop Technician, In-House Technician, In-House Specialist, Sr. In-House Specialist , Service Team Lead, Manager-in-Training, Technician in one or more of the following locations and time periods:

- In Illinois between April 1, 2004, and [Preliminary Approval date];

- In New York between June 20, 2005, and [Preliminary Approval date]; and/or

- In Massachusetts between October 17, 2008, and [Preliminary Approval date].

**What Are the Settlement Benefits?**
Subject to final approval by the Court, KMBS has agreed to pay up to $4,350,000 to settle this matter. Included in this amount are: Class Members' claims; $85,000 incentive payments to the twelve Named Plaintiffs and Class Representatives; a reimbursement to Class Counsel for certain of its attorneys' fees no greater than $1,398,278.77; costs incurred in an amount no greater than $157,438.10; payment of $106,721.23 to the first Class Representative, John Glass, for his retaliation claim after being terminated by KMBS; and claims administration costs, not to exceed $40,000. Class Counsel are reducing their claim for attorneys' fees by at least $51,721.23 and up to $63,246.43 to make more funds available to pay John Glass for his retaliation claim and outstanding medical bills. The amount of money you will receive from the Settlement will be determined based on the number of workweeks you worked for KMBS in a relevant position during the relevant period.

**What Are My Rights?**
You have four options:

*Remain a Class Member and Make A Claim.* You will receive money from the Settlement only if you make a claim, by submitting a valid Claim Form. The Claims Process is described in more detail below.

*Do Nothing and Remain a Class Member.* If you do nothing, and you are a Class Member, you will remain in the Class, but you will get no money from this Settlement. All of the Court's orders will apply to you, and you will not be able to file your own lawsuit about the claims in this case, but you will still be bound by the Settlement and by the Release set forth on the enclosed Claim Form.

*Exclude yourself.* If you do not wish to be a part of the Settlement and want to retain the right to sue KMBS for alleged wage payment violations on your own, you must exclude yourself from the Settlement by mailing a written request to the Claims Administrator postmarked by _____ [60 days]. Your request for exclusion must state that you wish to be excluded from the settlement in *Watson, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*, and must include your full name, the KMBS location(s) in which you worked, your job title(s) while employed by KMBS, and your dates of employment by KMBS. You must also include your address and telephone number and personally sign the letter. If you exclude yourself, you will not receive a Settlement Payment and you will not be bound by the Settlement.

*Object.* If you do not exclude yourself, you may object to the Settlement by mailing a written objection postmarked no later than _____ [21 days prior to final approval hearing]. Your objection must be in writing, and include a statement of the objection, as well as the specific reasons you are objecting to the Settlement. Such objection must be filed with the Court, and mailed to lawyers for the Class and for KMBS, at the following addresses:

David J. Bradley
Clerk of Court
United States Federal Courthouse
P. O. Box 61010
Houston, TX 77208

Galvin B. Kennedy
Kennedy Hodges PLLC
711 W Alabama Street

Houston, TX 77006

Loren Gesinsky (Attorney for KMBS)
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018

**Do I Have a Lawyer in This Case?**
The Court has provisionally appointed the law firms listed at the end of this notice as Class Counsel in this lawsuit, and they currently represent you as a Class Representative in this case. These lawyers will not charge you for their services. If you want to be represented by your own lawyer, you may hire one at your own expense.

**How Do I Make A Claim
and Receive a Settlement Payment?**
You can make a Claim to receive a Settlement Payment by filling out the enclosed Claim Form. You must review the information on the Claim Form, and then sign and date the Claim Form and submit it to the Claims Administrator in the enclosed envelope. **Your completed Claim Form must be postmarked no later than _____ [60 days].**

If you submit a timely, proper, and valid Claim Form, you will receive your Settlement Payment after the Court enters Final Approval of the Settlement, and all appeals have been resolved.

**When Will the Settlement Approval Hearing Occur?**
The Court will hold a Settlement Fairness and Final Approval Hearing at \_\_\_\_\_ on _____ to consider whether to approve the settlement. The Hearing will be in Room \_\_\_\_ of the United States Federal Courthouse, Houston, Texas. You do not have to attend the Final Approval Hearing, though you are welcome to do so. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. If the Court finds that the Settlement is fair, reasonable, and adequate, it will enter Final Approval of the Settlement.

**DO NOT TELEPHONE THE COURT. PLEASE DO NOT CONTACT KMBS'S CORPORATE OFFICE, MANAGERS, OR ATTORNEYS FOR INFORMATION ABOUT THE SETTLEMENT OR CLAIMS PROCESS. IF YOU HAVE**

**QUESTIONS, YOU MAY DIRECT THEM TO THE CLAIMS ADMINISTRATOR AT:**

NAME
Rust Consulting, Inc.
625 Marquette Avenue, Suite 880
Minneapolis, MN 55402

**OR TO CLASS COUNSEL AT:**

Galvin B. Kennedy
Kennedy Hodges PLLC
711 W Alabama Street
Houston, TX 77006
(713)523-0001
gkennedy@kennedyhodges.com

Richard J. (Rex) Burch
Bruckner Burch PLLC
8 Greenway Plaza
Suite 1500
Houston, Texas 77046
(713) 877-8788
frontdesk@brucknerburch.com

3

*Watson, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*
**U.S. District Court for the Southern District of Texas**
**Case No. 10-cv-0986**

## CLAIM FORM

Claim ID:  [Claim ID]
[Class Member Name]
[Mailing Address 1]
[Mailing Address 2]
[City, State  ZIP]

To receive money from the Settlement, you must complete, sign, and return this two-page Claim Form **postmarked no later than** _____**, 2013**, by U.S. Mail to the following address:

[NAME]
Rust Consulting, Inc.
625 Marquette Avenue, Suite 880
Minneapolis, MN  55402

**Claimant Information:**

| | | |
|---|---|---|
| First | MI | Last |

Other Names (if any) used while employed by Konica Minolta Business Solutions U.S.A., Inc. ("KMBS")

| | |
|---|---|
| Current Mailing Address (if different from above) | Apt / Suite |

| | | |
|---|---|---|
| City | State | Zip Code |

xxx - xx -                                ( ) -
Social Security Number (last 4 digits)     Daytime Phone Number

If the Settlement is approved, your Settlement Payment will be based upon the number of workweeks that you worked for KMBS during the relevant time period and a formula included in the parties' proposed agreement.

EXHIBIT 2(C)
to Settlement Agreement

*Watson, et al. v. Konica Minolta Business Solutions U.S.A., Inc.*
**U.S. District Court for the Southern District of Texas**
**Case No. 10-cv-0986**

**Release of Claims**:

By signing below, *you agree to release and forever discharge,* on behalf of yourself and each of your heirs, representatives, successors, assigns and attorneys, any and all any and all claims against KMBS and its past and present parents, affiliates, divisions, subsidiaries, predecessors, successors, directors, officers, fiduciaries, insurers, employees, attorneys and agents (each in their individual and corporate capacities), pertaining to hours of work or payment of wages arising out of or related to your employment with KMBS as an hourly employee in a position responsible for servicing business equipment related to the subject matter of *Watson, et al. v. Konica Minolta Business Solutions U.S.A., Inc.* that were or could have been asserted in the case based on putative violations of any federal, state or local laws pertaining to events that occurred or are alleged to have occurred at any time through the Effective Date, which is defined in the Settlement Agreement as the date that is thirty-five (35) calendar days after the entry of Final Approval by the Court and dismissal of the case with prejudice (and, in case of an appeal, five (5) calendar days after the exhaustion of appeals). This release includes without limitation claims under Texas wage and hour law, including but not limited to the Texas Minimum Wage Act and the Texas Wage Payment Law; claims under New York state wage and hour laws and all wage orders, including but not limited to the New York Labor Law and New York Wage Payment Law; claims under Illinois wage and hour laws, including but not limited to the Illinois Wage Payment and Collection Act and the Illinois Minimum Wage Law; claims under Massachusetts wage and hour laws, including but not limited to the Massachusetts Minimum Wage Law; and Payment of Wages Law; and claims under the federal Fair Labor Standards Act.

**Consent to Join**:

By returning this Claim Form, pursuant to 29 U.S.C. § 216(b), you consent to join the case of *Watson, et al. v. Konica Minolta Business Solutions U.S.A., Inc.,* as a party plaintiff for purposes of the Settlement and request that this consent be filed with the Court.

**By signing below, I declare and verify that I have read this Claim Form, that I agree to participate in the Settlement on the terms described herein, including the Release of Claims set forth above, and that I consent to join the above-referenced action as a party plaintiff for purposes of participating in the Settlement.**


_____          _____
            Signature                                            Date

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GARY WATSON, et al., on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:10-cv-00986<br><br>[PROPOSED] ORDER ON THE PARTIES' JOINT MOTION FOR APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS |

Upon consideration of the Parties' Joint Motion for Approval of Settlement and

Certification of Settlement Class (the "Joint Motion"), and after a hearing in open Court

at which any and all objections to the proposed settlement could be heard, it is hereby

ORDERED:

1.  A Settlement Class is hereby CERTIFIED pursuant to Fed. R. Civ. P. 23 for
    settlement purposes only consisting of all individuals who worked for Defendant
    in any position responsible for servicing business equipment in the field,
    including without limitation job positions entitled BSC Tech II, BSC Tech IV,
    Color Imaging Specialist, Color Imaging Technician, Color Technician, Customer
    Imaging Integrator, Customer Imaging Specialist, Customer Imaging Specialist-
    GL, Customer Imaging Technician, Customer Technician, Digital Product
    Specialist, Doc Imaging Specialist, Field Tech, Imaging Integrator, Imaging
    Technician, Network Imaging Integrator, Network Integrator Specialist I,
    Production Imaging Print Specialist - Black &White, Production Imaging Print
    Specialist-Color/Black &White, Production Imaging Print Technician - BW,
    Production Imaging Print Spec-Color/BW-GL, Senior Customer Technician, Sr.
    Document Imaging Specialist, Sr. Color Imaging Specialist, Sr. Customer
    Imaging Specialist, Sr. Customer Imaging Specialist-GL, Sr. Network Imaging
    Integrator, System Integration Engineer, Systems Engineer, Tech Specialist I,
    Tech Specialist II, Office Services Associate 1, Office Services Associate 2,
    Office Systems Associate, Office Systems Associate 2, Office Systems Specialist,
    Office Systems Professional, Office Systems Expert, Solution Services Associate
    1, Solution Services Associate 2, Solutions Specialist, Sr. Solutions Specialist,
    Solutions Integrator, Production Systems Technician, Production Systems
    Specialist, Production Systems Professional, Production Systems Expert, Shop

<table>
<tr><td>EXHIBIT 3<br>to Settlement Agreement</td></tr>
</table>

Technician, In-House Technician, In-House Specialist, Sr. In-House Specialist, Service Team Lead, Manager-in-Training, Technician  and  other job titles/positions with similar job duties and responsibilities in one or more of the following locations and time periods:

a.      In Illinois between April 1, 2004, and [Preliminary Approval date];

b.      In New York between June 20, 2005, and [Preliminary Approval date]; and/or

c.      In Massachusetts between October 17, 2008, and [Preliminary Approval date].

2.      Richard J. (Rex) Burch and Galvin B. Kennedy ("Class Counsel") are hereby appointed counsel for the Settlement Class and Plaintiffs Gary Watson, Laura Garza, John Glass, Michael Green, Frederick Person, James Outlaw, Shawn Kraft, Derwin Allison, Michael Johnson, George Schiess, and Zbignew Lesniak are hereby appointed as the representatives of the Settlement Class.

3.      The Parties' proposed settlement is hereby fully and finally APPROVED pursuant to Fed. R. Civ. P. 23(c).  Class Counsel's fee petition as described in the Joint Motion is hereby APPROVED, and the Incentive Payments to the Named Plaintiffs as described in the Joint Motion are hereby APPROVED.

4.      Defendant shall make available funds not to exceed $4,350,000.00, as described in the Parties' settlement agreement, in settlement of all claims against Defendant as described in the Parties' settlement agreement based on putative violations of any federal, state or local law pertaining to hours of work or payment of wages, including without limitation all claims that were or could have been asserted by or on behalf of any or all members of the Settlement Class in the Third Amended Complaint regarding events that occurred or are alleged to have occurred prior to the date of this Order, including without limitation all claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; claims under Texas wage and hour law, including but not limited to the Texas Minimum Wage Act and the Texas Wage Payment Law; claims under New York State wage and hour laws and all wage orders, including but not limited to the New York Labor Law and New York Wage Payment Law; claims under Illinois wage and hour laws, including but not limited to the Illinois Wage Payment and Collection Act and the Illinois Minimum Wage Law; and claims under Massachusetts wage and hour laws, including but not limited to the Massachusetts Minimum Wage Law and Payment of Wages Law.

5.      The settlement proceeds shall be distributed within the time period set forth in the Parties settlement agreement according to the formula and the procedures agreed upon by the Parties and described in the Joint Motion.  Any portion of the Maximum Settlement Amount not distributed to Claimants remains the property of Defendant and shall be retained by or returned to Defendant.

6.      Upon the distribution of the settlement proceeds as described above, all members of the Settlement Class shall be deemed to have irrevocably released and are barred from instituting or prosecuting any claim or cause of action arising prior to the date of this Order against Defendant under any state or federal law relating to the payment of wages, benefits, and any other form of compensation, including without limitation overtime pay claims and minimum wage claims.

7.      This action is hereby dismissed without prejudice and subject to reopening to the extent necessary to address any issue related to the administration of the Parties' settlement.  Upon the distribution of the Settlement Proceeds as described above, the action shall be deemed dismissed with prejudice, with all parties to bear their own respective attorneys' fees and costs of suit, except as expressly ordered herein, and with all rights of appeal waived.

So Ordered,

_____
The Honorable Sim Lake
United States District Court
Southern District of Texas

Dated: _____

3



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| GARY WATSON, et al., on behalf of themselves and on behalf of all others similarly situated, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:10-cv-00986 |
| v. | § § | JURY TRIAL DEMANDED |
| KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC. | § § § | |
| Defendant. | § § | |

## THIRD AMENDED COMPLAINT

### SUMMARY

1.    Defendant, Konica Minolta Business Solutions U.S.A., Inc., (hereafter referred to as "Konica") is a foreign for-profit corporation doing business in Texas and throughout the United States.  Konica has made an appearance in this case.

2.    Konica requires and/or permits various employees to work in excess of forty (40) hours per week, but refuses to compensate them for such hours.

3.    Consequently, Konica's conduct violates the Fair Labor Standards Act (FLSA), which requires non-exempt employees to be compensated for their overtime work.  See 29 U.S.C. § 207(a).  In addition, Konica's conduct violates the state wage and hour laws of the states of Illinois, Massachusetts and New York.

4.    Plaintiffs Gary Watson, Laura Garza, John Glass, and Mark Mingo, Derwin Allison, Michael Johnson, George Schiess, Michael Green, James Outlaw, Frederick Person, Shawn Kraft, and Zbignew Lesniak are workers that were formerly employed with Konica.  Konica has and continues to violate the FLSA by failing to compensate Plaintiffs for all hours over forty at the

EXHIBIT 4
to Settlement Agreement

FLSA mandated rate of time and one half their regular rate of pay.

5.    Plaintiffs bring this collective action to recover unpaid overtime compensation owed to them and on behalf of all other similarly situated employees, current and former, of Konica (hereinafter referred to as "Class Members").

6.    Counsel for Plaintiffs are experienced in representing large groups of employees in class and collective action proceedings and in particular in wage and hour litigation

## SUBJECT MATTER JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the state law causes of action pursuant to  28 U.S.C. § 1332(d) and 28 U.S.C. § 1367.

8.    Venue is proper in the Southern District of Texas because a substantial portion of the events forming the basis of this suit occurred in this District.

## PARTIES AND PERSONAL JURISDICTION

9.    Plaintiff, Gary Watson, is an individual residing in Harris County, Texas.  Said Plaintiff's written consent form has been previously filed with the Court.

10.    Plaintiff, Laura Garza, is an individual residing in Harris County, Texas.  Said Plaintiff's written consent form has been previously filed with the Court.

11.    Plaintiff, John Glass, is an individual residing in Harris County, Texas.  Said Plaintiff's written consent form has been filed with the Court.

12.    Plaintiff, Mark Mingo, is an individual residing in Harris County, Texas.  Said Plaintiff's written consent form has been previously filed with the Court.

13.    Plaintiff, Derwin Allison, is an individual residing in the State of New York.  Said Plaintiff's written consent form has been previously filed with the Court.

14.    Plaintiff, Michael Johnson, is an individual residing in the State of New York.  Said Plaintiff's written consent form has been previously filed with the Court.

15. Plaintiff, George Schiess, is an individual residing in the State of New York. Said Plaintiff's written consent form has been previously filed with the Court.

16. Plaintiff, Michael Green, is an individual residing in Cook County, Illinois. Said Plaintiff's written consent form has been filed with the Court.

17. Plaintiff, James Outlaw, is an individual residing in Cook County, Illinois. Said Plaintiff's written consent form has been filed with the Court.

18. Plaintiff, Frederick Person, is an individual residing in Cook County, Illinois. Said Plaintiff's written consent form has been filed with the Court.

19. Plaintiff, Shawn Kraft, is an individual residing in Cook County, Illinois. Said Plaintiff's written consent form has been filed with the Court.

20. Plaintiff, Zbignew Lesniak, is an individual residing in Hampden County, Massachusetts. Said Plaintiff's written consent form has been filed with the Court.

21. As used herein, the term "Covered Position" refers to any position responsible for servicing business equipment in the field, including without limitation job positions entitled BSC Tech II, BSC Tech IV, Color Imaging Specialist, Color Imaging Technician, Color Technician, Customer Imaging Integrator, Customer Imaging Specialist, Customer Imaging Specialist-GL, Customer Imaging Technician, Customer Technician, Digital Product Specialist, Doc Imaging Specialist, Field Tech, Imaging Integrator, Imaging Technician, Network Imaging Integrator, Network Integrator Specialist I, Production Imaging Print Specialist - Black & White, Production Imaging Print Specialist-Color/Black & White, Production Imaging Print Technician - BW, Production Imaging Print Spec-Color/BW-GL, Senior Customer Technician, Sr. Document Imaging Specialist, Sr. Color Imaging Specialist, Sr. Customer Imaging Specialist, Sr. Customer Imaging Specialist-GL, Sr. Network Imaging Integrator, System Integration Engineer, Systems Engineer, Tech Specialist I, Tech Specialist II, Office Services Associate 1, Office Services Associate 2, Office Systems Associate, Office Systems Associate 2, Office Systems Specialist, Office Systems Professional, Office Systems Expert, Solution Services Associate 1, Solution Services Associate 2, Solutions Specialist, Sr. Solutions Specialist, Solutions Integrator,

Production Systems Technician, Production Systems Specialist, Production Systems Professional, Production Systems Expert, Shop Technician, In-House Technician, In-House Specialist, Sr. In-House Specialist, Service Team Lead, Manager-in-Training, Technician and other job titles/positions with similar job duties and responsibilities.

22.     With respect to the Rule 23 class action claims, the Class Members include all individuals employed by Konica in a Covered Position:

    a.  In Illinois at any time from April 1, 2004 through Preliminary Approval;

    b.  In New York at any time from June 20, 2005 through Preliminary Approval; and

    c.  In Massachusetts at any time from October 17, 2008 through Preliminary Approval.

23.     With respect to the collective action asserted under the Fair Labor Standards Act, the Class Members include all individuals employed by Konica in a Covered Position who have filed a consent to join this action.

## COVERAGE

24.     At all material times, Konica has been an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).  In addition, Konica has been an "employer" within in the meaning of Illinois, Massachusetts, and New York's wage and hour laws at all relevant times.

25.     At all material times, Konica has been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

26.     At all material times, Konica has been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because it has had employees engaged in commerce.  29 U.S.C. § 203(s)(1).

27.     At all material times, Plaintiffs were employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 206-207.

## FACTS

28.     Konica provides printing, digital imaging, and scanning machines and services to

4

various businesses located throughout the United States of America.

29.      Konica    employs     and has employed individuals who service business equipment in the field, including without limitation in job positions entitled BSC Tech II, BSC Tech IV, Color Imaging Specialist, Color Imaging Technician, Color Technician, Customer Imaging Integrator, Customer Imaging Specialist, Customer Imaging Specialist-GL, Customer Imaging Technician, Customer Technician, Digital Product Specialist, Doc Imaging Specialist, Field Tech, Imaging Integrator, Imaging Technician, Network Imaging Integrator, Network Integrator Specialist I, Production Imaging Print Specialist - Black &White, Production Imaging Print Specialist-Color/Black &White, Production Imaging Print Technician - BW, Production Imaging Print Spec-Color/BW-GL, Senior Customer Technician, Sr. Document Imaging Specialist, Sr. Color Imaging Specialist, Sr. Customer Imaging Specialist, Sr. Customer Imaging Specialist-GL, Sr. Network Imaging Integrator, System Integration Engineer, Systems Engineer, Tech Specialist I, Tech Specialist II, Office Services Associate 1, Office Services Associate 2, Office Systems Associate, Office Systems Associate 2, Office Systems Specialist, Office Systems Professional, Office Systems Expert, Solution Services Associate 1, Solution Services Associate 2, Solutions Specialist, Sr. Solutions Specialist, Solutions Integrator, Production Systems Technician, Production Systems Specialist, Production Systems Professional, Production Systems Expert , Shop Technician, In-House Technician, In-House Specialist, Sr. In-House Specialist, Service Team Lead, Manager-in-Training, Technician.

30.      These technical support workers are classified by Konica as hourly, non-exempt employees.

31.      These technical support workers typically work more than forty (40) hours in  a workweek.

32.     Konica's technical support workers perform maintenance and repair work on digital and mechanical products sold by Konica.

33.     Konica periodically releases new products and new software for its existing line of products.

34.     In order to perform their job, Konica's technical support workers must keep up to date regarding the latest software and hardware sold by the company.

35.     Konica, as part of its company-wide policy, requires its technical support workers to attend online training sessions.

36.     Konica's managers routinely send out emails and other communication to its technical support workers informing them of the classes that are available on line through Konica's Internet-based training classes.

37.     Technical support workers access Konica's website on the Internet.

38.     Technical support workers from Texas can access this Internet based training system.

39.     More than one-hundred (100) technical support workers from Texas have used this Internet based training system.

40.     More than one-hundred (100) technical support workers from outside of Texas have used this Internet based training system.

41.     Technical support workers who access the Internet based training system are not compensated for such training time.

42.     Other technical support workers located throughout the United States of America were subject to the same payroll practice.

43.     Konica uses a nationwide network of sales offices, dealers and authorized resellers to sell, support and service its products.

44.     Konica has employees in every State in the United States of America.

45.     During the last three years, Konica has employed over 3,000 technical support workers in the United States of America.

46.     Konica has technical support workers in most major cities in the United States of America.

47.     Konica employs technical support workers in every State in the United States of America.

48.     Konica's technical support workers in every State in the United States have access to Konica's Internet based training system.

49.     At least one technical support worker in every State in the United States has access Konica's Internet based training system.

50.     At least one technical support worker in every State in the United States has used Konica's Internet based training system.

51.     At least one technical support worker from ten different States in the United States have access to Konica's Internet based training system.

52.     At least one technical support worker from ten different States in the United States have used Konica's Internet based training system.

53.     At least one technical support worker from three different States in the United States have access to Konica's Internet based training system.

54.     At least one technical support worker from three different States in the United States have used Konica's Internet based training system.

55.     At least one technical support worker from two different States in the United States have access to Konica's Internet based training system.

56.     At least one technical support worker from two different States in the United States have used Konica's Internet based training system.

57.     Konica maintains a record of the classes taken by its technical support workers on Konica's Internet based training system.

58.     Konica's website allows access to a record of the classes taken by its technical support workers on Konica's Internet based training system.

59.     Konica's technical support workers in every State in the United States can access their training record using Konica's Internet based training system.

60.     Konica's technical support workers in every State in the United States have accessed their training records using Konica's Internet based training system.

61.     At least one technical support worker in every State in the United States can access their training records using Konica's Internet based training system.

62.     At least one technical support worker in every State in the United States has accessed their training records using Konica's Internet based training system.

63.     At least one technical support worker from ten different States in the United States can access their training records using Konica's Internet based training system.

64.     At least one technical support worker from ten different States in the United States have accessed their training records using Konica's Internet based training system.

65.     At least one technical support worker from three different States in the United States can access their training records using Konica's Internet based training system.

66.     At least one technical support worker from three different States in the United States have accessed their training records using Konica's Internet based training system.

67.     At least one technical support worker from two different States in the United States can access their training records using Konica's Internet based training system.

68.    At least one technical support worker from two different States in the United States have accessed their training records using Konica's Internet based training system.

69.    The Internet based training sessions are required of all of Konica's technical support workers.

70.    The Internet based training sessions are related to equipment and machinery that Konica sells or leases.

71.    The Internet based training sessions are tailored to Konica's equipment and machinery.

72.    The Internet based training sessions do not involve equipment or machinery sold by an entity other than Konica.

73.    The Internet based training sessions are not voluntary.

74.    Konica's managers and supervisors have lead the technical support workers, including Plaintiffs and Class Members, to believe that their present working conditions would  be adversely affected if they did not complete the online training sessions.

75.    The Internet based training sessions are directly related to the work of the technical support workers, including Plaintiffs and Class Members.

76.    Konica maintains in digital format the email addresses for a majority of its technical support workers.

77.    However, Konica refuses to compensate any of its technical support workers for the time spent completing the training sessions.

78.    Additionally, Konica refuses to compensate any of its technical support workers for the time spent completing additional activities that are directly related to their job, such  as performing a mandatory inventory and attending required training outside their home State.

9

79.     Further, the technical support workers perform significant amounts of work that is directly related to their jobs for Konica, but for which they receive no compensation all.

80.     For example, prior to arriving at their first jobsite, technical support workers log into Konica's website while at home and perform required work on the website.

81.     After performing such work at home, the technical support workers travel to their first job site and are not compensated for such travel time.

82.     Konica begins compensating technical support workers after the technical support worker reaches his first jobsite.

83.     Konica does not compensate technical support workers for the time spent working at home or for the drive time to their first site.

84.     Upon completion of the last job for the day, technical support workers routinely log back onto their computers and access the Konica website to perform additional required work. This is done with the knowledge, permission, and/or acquiescence of Konica.

85.     The technical support workers are not compensated for the time spent performing necessary and required work at home after their last job or for the travel time back home to perform such work.

86.     Additionally, Konica requires its technical support workers to travel to offsite training locations on working and non-working days.

87.     Such travel to offsite training locations occurs during the normal work hours for Konica.

88.     Technical support workers were not and are not compensated for this travel time.

89.     Also, Konica requires its technical support workers to perform significant amounts of homework after classroom work hours while at the offsite training locations, but refuses to

10

compensate the technical support workers for such time.

90.     Although Konica's technical support workers frequently worked more than forty (40) hours per week, they were not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) hours.

91.     Further, for a Konica employee to become a manager or supervisor over other technical support workers, the employees are required to undergo a prolonged course of training by Konica.

92.     The employees are given job titles, such as "Manger-in-Training," during the required training period.

93.     The training period for those employees seeking to become managers and/or supervisors typically lasts at least one month.

94.     The training period for those employees seeking to become managers and/or supervisors typically lasts at least two months.

95.     In the alternative, the training period for those employees seeking to become managers and/or supervisors typically lasts at least six months.

96.     In the alternative, the training period for those employees seeking to become managers and/or supervisors typically lasts at least twelve months.

97.     During the training period, the employees seeking to become managers and/or supervisors are paid a flat salary regardless of the number of hours that they worked.

98.     Konica has a company-wide policy that during the training period, the employees seeking to become managers and/or supervisors are paid a flat salary regardless of the number of hours that they worked.

99.     Konica's policy, that during the training period, the employees seeking to become managers and/or supervisors are paid a flat salary regardless of the number of hours that they worked, exists in Texas.

100.    Konica's policy, that during the training period, the employees seeking to become managers and/or supervisors are paid a flat salary regardless of the number of hours that they worked, exists in Texas and at least one State other than Texas.

101.    Konica's policy, that during the training period, the employees seeking to become managers and/or supervisors are paid a flat salary regardless of the number of hours that they worked, exists in Texas, California, and at least one State other than Texas and California.

102.    The employees undergoing training to become managers and/or supervisors do not have the primary duty of managing an enterprise, department, or subdivision of a department of Konica.

103.    The employees undergoing training to become managers and/or supervisors do not customarily and regularly direct the work of two or more full time employees.

104.    The employees undergoing training to become managers and/or supervisors do not have authority to hire or fire other employees.

105.    The employees undergoing training to become managers and/or supervisors do not make suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees.

106.    To the extent that the employees undergoing training to become managers and/or supervisors do make suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees, such suggestions and recommendations are not given particular weight.

12

107.   The employees undergoing training to become managers and/or supervisors do not have the primary duty of performing office or non-manual work directly related to the management or general business operations of Konica or Konica's customers.

108.   The employees undergoing training to become managers and/or supervisors do not exercise discretion and independent judgment with respect to matters of significance.

109.   The employees undergoing training to become managers and/or supervisors do not perform work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

110.   The employees undergoing training to become managers and/or supervisors do not perform work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

111.   The employees undergoing training to become managers and/or supervisors do not perform work requiring advanced knowledge.

112.   The employees undergoing training to become managers and/or supervisors do not perform work requiring advanced knowledge in a field of science or learning.

113.   The employees undergoing training to become managers and/or supervisors do not perform work requiring advanced knowledge that is customarily acquired by a prolonged course of specialized intellectual instruction.

114.   Although Konica's  employees that undergo training to become managers and/or supervisors frequently work over 40 hours per week, they were not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) hours.

115.   Konica's method of paying Plaintiffs and Class Members was willful and was not based on a good faith and reasonable belief that its conduct did not violate the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

116. Plaintiffs have actual knowledge that Class Members have also been denied overtime pay for hours worked over forty (40) in a week and want to join this collective action.

117. Other employees completed online training sessions, but were not paid for such time.

118. Other employees worked over forty (40) hours per week during the time period that they received training to become managers and/or supervisors.

119. Other employees worked over forty (40) hours per week.

120. Other employees were not paid overtime at the rate of one and one-half times their regular rate when those hours exceeded 40 in a workweek.

121. Consequently, Konica has denied Class Members full compensation for their hours worked over forty (40).

122. The Class Members perform or have performed the same or similar work as Plaintiffs.

123. Class Members are not exempt from receiving overtime under the FLSA.

124. As such, Class Members are similarly situated to Plaintiffs in terms of work similarities, pay structure and/or the denial of overtime.

125. Konica's failure to pay overtime compensation at the rates required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Class Members.

126. Plaintiffs' experiences, with respect to their pay, are typical of the experience of the Class Members.

127. The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment.

128.  All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

129.  Although the issue of damages may be individual in character, there remains a common nucleus of liability facts.

As such, the class of similarly situated plaintiffs is properly defined any position responsible for servicing business equipment in the field, including without limitation job positions entitled BSC Tech II, BSC Tech IV, Color Imaging Specialist, Color Imaging Technician, Color Technician, Customer Imaging Integrator, Customer Imaging Specialist, Customer Imaging Specialist-GL, Customer Imaging Technician, Customer Technician, Digital Product Specialist, Doc Imaging Specialist, Field Tech, Imaging Integrator, Imaging Technician, Network Imaging Integrator, Network Integrator Specialist I, Production Imaging Print Specialist - Black &White, Production Imaging Print Specialist-Color/Black &White, Production Imaging Print Technician - BW, Production Imaging Print Spec-Color/BW-GL, Senior Customer Technician, Sr. Document Imaging Specialist, Sr. Color Imaging Specialist, Sr. Customer Imaging Specialist, Sr. Customer Imaging Specialist-GL, Sr. Network Imaging Integrator, System Integration Engineer, Systems Engineer, Tech Specialist I, Tech Specialist II, Office Services Associate 1, Office Services Associate 2, Office Systems Associate , Office Systems Associate 2, Office Systems Specialist, Office Systems Professional, Office Systems Expert, Solution Services Associate 1, Solution Services Associate 2, Solutions Specialist, Sr. Solutions Specialist, Solutions Integrator, Production Systems Technician, Production Systems Specialist, Production Systems Professional, Production Systems Expert , Shop Technician, In-House Technician, In-House Specialist, Sr. In-House Specialist , Service Team Lead, Manager-in-Training, and Technician.

15

## PLAINTIFFS' OVERTIME WAGE CLAIM

130. Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

131. Konica's practice of failing to pay Plaintiffs for all hours violates the FLSA. 29 U.S.C. § 207.

132. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Konica or Plaintiffs.

## VIOLATION OF 29 U.S.C § 211(C)

133. Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

134. Konica failed to keep adequate records of Plaintiffs' and Class Members work hours in violation of section 211(c) of the Fair Labor Standards Act. See 29 U.S.C. § 211(c).

135. Konica failed to keep records showing the amount of time Plaintiffs and Class Members spent performing online training, inventory, out of state training, and other tasks that are directly related to their work for Konica.

136. Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

    (i)    time of day and day of week on which the employee's work week begins;

    (ii)    (1) regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

        (2) explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis; and

        (3) the amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate."

    (iii)    hours worked each workday and total hours worked each workweek;

(iv)    total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

(v)    total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

(vi)    total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

(vii)    Also, in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions;

(viii)    total wages paid each pay period; and

(ix)    date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

137.    Konica has not complied with federal law and has failed to maintain such records with respect to Plaintiffs.

138.    Because Konica's records are inaccurate and/or inadequate, Plaintiffs can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference."

### ANTI-RETALIATION PROVISIONS OF THE FLSA

139.    Konica is aware that Section 15(a)(3) of the FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

140.    John Glass was employed by Konica at the time Plaintiffs filed this lawsuit.

141. John Glass had worked for Konica for over ten years prior to the filing of this lawsuit.

142. John Glass was one of two current employees that filed consent forms to join this lawsuit.

143. John Glass was the only current employee to be named a Class Representative.

144. Within days of Plaintiffs filing their First Amended Complaint naming John Glass as a Class Representative, Konica took adverse employment action against him.

145. Konica suspended John Glass and later terminated him.

146. Federal law makes it unlawful to terminate an employee that has filed a complaint to recover unpaid wages under the Fair Labor Standards Act. See 29 U.S.C. § 215(a)(3).

147. Konica's act of terminating John Glass is an act of retaliation prohibited by Federal law.

148. Konica's discharge of John Glass was done with a retaliatory motive despite the fact that John Glass engaged in statutorily protected conduct under sections 207 and 215(a)(3) of the Fair Labor Standards Act.

149. John Glass has suffered as a result of Konica's retaliation.

150. John Glass has lost wages that he would have earned and has suffered mental anguish, distress, and anxiety.

151. A causal link exists between the filing of this lawsuit and Konica's discharge of John Glass.

## VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### (Class Action)

152.     Plaintiffs incorporate the preceding paragraphs by reference.

153.     This cause of action arises from Konica's violation of the IWPCA, 820 ILCS 105/1, et seq., for its failure to pay Plaintiffs and the Class all hours worked.  For all the time worked, Plaintiffs and the IWPCA Class members were entitled to be paid their agreed upon hourly rates of pay.

154.     Konica violated the IWPCA by failing to compensate Plaintiffs and the members of the IWPCA Class for all hours worked.

155.     Plaintiffs will seek to certify this cause of action, violation of the provisions of the IWPCA, as a class action and ask the Court to determine the rights of the classes pursuant to the IWPCA, award all damages due, and to direct Konica to account for all back wages, prejudgment interest and all other damages due to the Plaintiffs and the class that they represent.  Plaintiffs also seek an injunction requiring Konica to comply with the terms of the IWPCA.

## VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW – OVERTIME
### (Class Action)

156.     Plaintiffs incorporate the preceding paragraphs by reference.

157.     This cause of action arises from Konica's violation of the IMWL, 820 ILCS 105/1, et seq., for its failure to pay Plaintiffs and the members of the IMWL Class all their earned overtime pay for the time worked in excess of 40 hours in individual workweeks.  For all the time worked in excess of 40 hours in individual workweeks, Plaintiffs and the IMWL Class members were entitled to be paid one and one half times their regular rates of pay.

158.     Konica violated the IMWL by failing to compensate Plaintiffs and the IMWL Class members consistent with the maximum hour provisions.

159. Plaintiffs will seek to certify this cause of action, violation of the overtime provisions of the IMWL, as a class action and ask the Court to determine the rights of the IMWL class pursuant to the IMWL, determine any damages due, and to direct Konica to account for all back wages, penalties and prejudgment interest thereon due to the Plaintiffs and the class that they represent.

### VIOLATION OF THE MASSACHUSETTS WAGE AND HOUR LAW
### Mass. Gen. Laws Ch. 151 § 1 – Minimum Wage Violation
### (Class Action)

160. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs. Konica has engaged in a widespread pattern, policy, and practice of violating the Massachusetts Wage Laws.

161. The foregoing conduct, as alleged, violates the Massachusetts Wage and Hour Law, Mass. Gen. Laws Ch. 151 § 1 for paying Plaintiff and Class Members at a rate less than the applicable minimum wage rate under Massachusetts law.

162. Plaintiff will seek to certify this cause of action, violation of the minimum wage provision of the Massachusetts Wage and Hour law as a class action and ask the Court to determine the rights of the Minimum Wage class pursuant to Mass. Gen. Laws Ch. 151 § 1, determine any damages due, and to direct Konica to account for all back wages, treble damages, penalties, costs of court, attorney's fees and prejudgment interest thereon due to the Plaintiff and the class that he represents.

### VIOLATION OF THE MASSACHUSETTS WAGE AND HOUR LAW
### Mass. Gen. Laws Ch. 151 § 1A – Overtime Violation
### (Class Action)

163. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs. Konica has engaged in a widespread pattern, policy, and practice of violating the Massachusetts Wage Laws.

164.     The foregoing conduct, as alleged, violates the Massachusetts Wage and Hour Law, Mass. Gen. Laws Ch. 151 § 1A for the failure to pay Plaintiff and Class Members at a rate of one and one half their regular rate of pay for all hours over forty in a workweek.

165.     Plaintiff will seek to certify this cause of action, violation of the overtime provision of the Massachusetts Wage and Hour law as a class action and ask the Court to determine the rights of the Overtime class pursuant to Mass. Gen. Laws Ch. 151 § 1A, determine any damages due, and to direct Konica to account for all back wages, treble damages, penalties, costs of court, attorney's fees and prejudgment interest thereon due to the Plaintiff and the class that he represents.

### VIOLATION OF THE NYLL "AGREED RATE" PROVISIONS
### (Class Action)

166.     Plaintiffs incorporate the preceding paragraphs by reference.

167.     This cause of action arises from Konica's violation of the NYLL Art. 6, Section 191, for its failure to pay Plaintiffs and the Class all hours worked.  Plaintiffs and the NYLL Class members were entitled to be paid their agreed upon hourly rates of pay for all time worked.

168.     Konica violated the NYLL by failing to compensate Plaintiffs and the members of the NYLL Class for all hours worked.

169.     Plaintiffs will seek to certify this cause of action, violation of the provisions of NYLL Section 191, as a class action and ask the Court to determine the rights of the classes pursuant to the NYLL, award all damages due (including, but not limited to, liquidated damages), and to direct Konica to account for all back wages, prejudgment interest and all other damages due to the Plaintiffs and the class that they represent.

### VIOLATION OF THE NEW YORK MINIMUM WAGE LAW – OVERTIME
### (Class Action)

170.     Plaintiffs incorporate the preceding paragraphs by reference.

21

171. This cause of action arises from Konica's violation of the NYLL Art. 19, Section 650 *et seq.* (and any supporting regulations), for its failure to pay Plaintiffs and the members of the NYLL Class all their earned overtime pay for the time worked in excess of 40 hours in individual workweeks. For all the time worked in excess of 40 hours in individual workweeks, Plaintiffs and the NYLL Class members were entitled to be paid one and one half times their regular rates of pay. In addition, the NYLL Class is entitled to receive liquidated damages

172. Konica violated the NYLL by failing to compensate Plaintiffs and the NYLL Class members consistent with the maximum hour provisions.

173. Plaintiffs will seek to certify this cause of action, violation of the overtime provisions of the NYLL, as a class action and ask the Court to determine the rights of the classes pursuant to the NYLL, award all damages due (including, but not limited to, liquidated damages), and to direct Konica to account for all back wages, prejudgment interest and all other damages due to the Plaintiffs and the class that they represent.

## DAMAGES SOUGHT

174. Plaintiffs are entitled to recover their unpaid overtime compensation.

175. Plaintiffs are entitled to an amount equal to all of their unpaid wages as liquidated damages. 29 U.S.C. § 216(b).

176. Plaintiffs are entitled to recover attorney's fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

177. Plaintiff John Glass is entitled to all lost wages and benefits in the past and future as a result of the violation of Konica's acts of retaliation.

178. Plaintiff John Glass is entitled to mental anguish damages as a result of Konica's acts of retaliation. See 29 U.S.C. § 215(a)(3).

179. Plaintiff John Glass is also entitled to reinstatement to the same position that he

22

held prior to Konica's acts of retaliation.

180.     Plaintiff John Glass seeks the recovery of punitive damages against Konica for the acts of retaliation. See 29 U.S.C. § 215(a)(3)

## JURY DEMAND

181.     Plaintiffs hereby demand trial by jury.

## PRAYER

For these reasons, Plaintiffs respectfully request judgment to be entered in their favor awarding them and the Class Members:

A.     overtime compensation for all unpaid hours worked in excess of forty (40) at the rate of one and one-half times their regular rates;

B.     an equal amount as liquidated damages as allowed under the FLSA;

C.     reasonable attorney's fees, costs and expenses of this action as provided by the FLSA;

D.     mental anguish damages for John Glass in the past and future as a result of Konica's acts of retaliation;

E.     punitive damages for John Glass as a result of Konica's acts of retaliation;

F.     lost wages and benefits in the past and future for John Glass as a result of Konica's acts of retaliation;

G.     reinstatement for Plaintiff John Glass;

H.     pre-judgment and post judgment interest at the highest rates allowed by law on all damages; and

I.     and such other relief to which Plaintiffs may be entitled.

Respectfully submitted,

KENNEDY HODGES, L.L.P.


By: /s/Galvin B. Kennedy
    Galvin B. Kennedy
    State Bar No. 00796870
    Federal Bar No. 20791
    711 W. Alabama St.
    Houston, Texas 77006
    Telephone: 713-523-0001
    Facsimile: 713-523-1116


ATTORNEY IN CHARGE FOR PLAINTIFFS


OF COUNSEL:

Don J. Foty
State Bar No. 24050022
Federal Id No. 711552
KENNEDY HODGES, L.L.P.
711 W. Alabama St.
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile: 713-523-1116

Richard J. (Rex) Burch
Federal Bar No. 24001807
Bruckner Burch PLLC
8 Greenway Plaza Suite 1500
Houston, TX 77046
Telephone: (713) 877-8788
Facsimile: (713) 877-8065


CERTIFICATE OF SERVICE

    I certify that this document was served on all parties on February 11, 2013 via the Southern District's CM/ECF system.

            /s/ Galvin B. Kennedy
            Galvin B. Kennedy